UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BARRY LEVINE | : | CIVIL ACTION NO. |
| | : | 3:03 CV 148 (SRU) |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| WEBSTER INSURANCE | : | |
| | : | |
| Defendant | : | JANUARY 17, 2004 |

**PLAINTIFF'S BRIEF IN REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION TO COMPEL DATED DECEMBER 29, 2003**

In its January 7, 2004 Objection to Plaintiff's Motion to Compel (the "Objection"), Webster submitted to the Court several flawed and unsubstantiated arguments in support of its belief that Levine is not entitled to a Stock Purchase Agreement (the "Agreement" or "Stock Agreement"), requested by Levine in his April 24, 2003 First Set of Interrogatories and Production Requests to Defendant Webster Insurance. As it had during Levine's earlier efforts to obtain the Agreement, Webster argued erroneously that the Agreement sought is irrelevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence in Levine's action. Webster then repeated its earlier-stated objection that the Agreement contains confidential business information of the Defendant, and boldly asserts that Levine "has not articulated, nor can he, any logical reason for the production of this confidential document." As demonstrated in his December 29, 2003 Memorandum in Support of Plaintiff's Motion to Compel Discovery (the "Memorandum"), Levine, in a good faith effort to resolve this dispute without the Court's intervention, clearly articulated the relevance of the Agreement and suggested to Webster that it produce the

documents pursuant to the terms of a confidentiality agreement already filed with the Court.  Levine submits this Reply Brief to further demonstrate that despite Webster's efforts to unreasonably deny him documents relevant to his action, he is entitled to the requested Agreement, executed February 1, 2000, and all earlier drafts thereof.

Levine's January 20, 2003 Complaint alleges clearly, in two separate instances, that, as successor in interest to the Levine Agency, Webster is liable for the actions and misrepresentations of which Levine has complained:

> This claim is being brought against Webster Insurance, Inc. ("Webster") *as successor in interest* to the Louis Levine Agency, Inc. (the "Levine Agency") in its capacity as a fiduciary of the Levine Plans.
> [. . . .]
> The defendant, Webster Insurance, Inc., is the *sole successor in interest* to the Levine Agency by virtue of its acquisitions of all Levine Agency assets and liabilities in 2001.
> (Complaint at p.1,3, emphasis added)

In its March 28, 2003 Answer, Webster addressed the allegations, respectively, as follows:

> [T]he defendant has insufficient knowledge upon which to form a belief as to the truth or falsity thereof and, therefore, *leaves the plaintiff to his proof.*
> [. . . .]
> Defendant *denies the allegations contained in paragraph 9* of Section III of plaintiff's complaint.
> (Answer at p.1,5, emphasis added)

Through its Answer, Webster has indeed "left Levine to his proof," giving him no choice but to employ customary discovery methods to attempt to establish that Webster is

2

the sole successor in interest to the Levine Agency's assets and liabilities. Levine believes that the Stock Agreement he seeks from Webster establishes not only the extent, but the very *existence* of Webster's successor liability, and hence reveals its liability for the actions and misrepresentations which are the basis of Levine's suit. Levine has therefore requested such documents, and has been met with a wall of unreasonable objections from Webster concerning the Agreement's relevance. Webster cannot withhold the Agreement, a document which undoubtedly "bears on, or that reasonably could lead to other matters that could bear on [. . . .]" the issue of its liability. Oppenheimer Finds, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Webster's argument that Levine's request for relevant documents which reveal the existence of defendant's liability is a "mere fishing expedition" is baseless.[1] Revealingly, Webster's only support for this argument is its attempt to manufacture the nonsensical burden of Levine's having to "explain how the evidence [he seeks] is different from, and not merely cumulative to, that which is already present in the record."[2]

     With respect to Webster's argument that the Agreement is "non-public, confidential business information," Levine has already proposed to Webster that it produce the Agreement subject to the terms of a previously executed Stipulated

---

[1] The Court in Smoothline LTD v. North American Trading Corp., 2000 WL 1015949 (S.D.N.Y. 2000), does, as Webster points out, find Smoothline's document request to be a "fishing expediiton," because the documents sought in that case were "grossly excessive [,] limitless in scope [and] unduly burdensome." Id. at *6. Webster dares not attempt to analogize the facts of the Smoothline discovery dispute to that of the instant case, in which Levine (unlike Smoothline) *has shown* "how the documents it seeks *might* relate to its claims [. . . .]" and has not requested an excessive or burdensome amount of documents. Id., emphasis added.

[2] In Drake v. L.A. Portuondo, 2001 WL 266021 (W.D.N.Y. 2001), the case Webster cites in support of this inapplicable proposition, the Court held that the *habeas corpus* petitioner was not entitled to discovery on the issue of alleged perjury by the prosecution's expert witness because a state court judge and U.S. Magistrate Judge had already ruled that the expert had not perjured himself. The District Judge held that the petitioner failed, in his third attempt to allege perjury, to explain how the evidence he sought through his most recent discovery requests differed from "that *already considered by any previous court* and already in the record." Id. at *2, emphasis added.

3

Confidentiality Agreement, filed with the Court on October 7, 2003. (12/29/03 e-mail to Attorney Aalberg, Exhibit 5, Levine's 12/29/03 Memorandum in Support of Plaintiff's Motion to Compel Discovery). Webster responded that it was taking a "hard position," and would not supply the Stock Agreement "even if it were protected by the confidentiality agreement." (12/29/03 e-mail from Attorney Aalberg, Exhibit 6, Levine's 12/29/03 Memorandum in Support of Plaintiff's Motion to Compel Discovery). Notably, in its Objection, Defendant repeats the confidentiality concerns it raised in its original objection to plaintiff's document request (and subsequent correspondence) concerning the Stock Agreement, but neglects to mention Levine's willingness to accept the Agreement under terms which would protect Webster and limit Levine's disclosure of the Agreement.

      Levine has made reasonable efforts to both express the relevance of the Agreement to his action and to address Webster's concerns over the Agreement's non-public nature. Webster asserts that Levine has failed to support his "personal belief" that the Agreement is relevant to his claims. Ironically, it is Webster who is unable to support its "hard position" in refusing to supply the requested Agreement.

By _____
Thomas G. Moukawsher (ct08940)
Ian O. Smith (ct24135)
Moukawsher & Walsh, LLC
328 Mitchell Street, PO Box 966
Groton, CT  06340
(860) 445-1809
His Attorneys

4

## CERTIFICATION:

A copy of the foregoing has been mailed, postage prepaid, to the following counsel and pro se parties of record.

Charles F. Corcoran, III
Carmody & Torrance LLP
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT  06721

Date:  January 17, 2003                                 _____
                                                                            Ian O. Smith