FILED

2004 SEP 17 P 4: 54

US DISTRICT COURT
BRIDGEPORT CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BARRY LEVINE                              :

        Plaintiff,                       :          CIVIL ACTION NO.
                              :          3:03CV148 (SRU)
V.                                        :
                              :
WEBSTER INSURANCE, INC.                   :
        Defendant.                       :          SEPTEMBER 17, 2004

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule of

Civil Procedure 7(a), the defendant, Webster Insurance, Inc. ("Webster") hereby

submits the following Memorandum of Law in Support of its Motion for Summary

Judgment.

As discussed in detail below, Webster is entitled to summary judgment as a

matter of law because there are no triable issues of material fact that would preclude

the Court from entering judgment in Webster's favor on all counts of the plaintiff's

Complaint dated January 23, 2003.

{W...}
CARMODY & TORRANCE LLP     50 Leavenworth Street
Attorneys at Law                          Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

# TABLE OF CONTENTS

TABLE OF AUTHORITIES

I.     INTRODUCTION

II.    STATEMENT OF UNDISPUTED FACTS

III.   SUMMARY JUDGMENT STANDARD

VI.    ARGUMENT

    A.   Webster may not be held liable for actions and obligations of its legally separate and distinct subsidiaries.

    B.   Webster is entitled to summary judgment as to Count One of the plaintiff's Complaint, which alleges breach of fiduciary duty.

        1.   The plaintiff's claim for breach of fiduciary duty is untimely and, thus, barred by the statute of limitations contained in ERISA § 413.

        2.   Daniel Carter did not have discretionary authority to administer the Profit Sharing Plan and, therefore, was not a Plan fiduciary for purposes of plaintiff's claims.

        3.   The statements allegedly made by Daniel Carter are not representations of material information and, consequently, do not rise to the level of fraud.

    C.   Webster is entitled to summary judgment as to plaintiff's claim for benefits under the 401(k) Plan.

        1.   Plaintiff was not a "participant" in the 401(k) Plan, and, therefore, does not have standing to bring such claim.

        2.   Plaintiff's claim for benefits is untimely and, thus, barred by the applicable statute of limitations.

    D.   Plaintiff's claim for relief under § 502(a)(3) is not equitable in nature and, as a result, is inappropriate under ERISA.

  V.   CONCLUSION

# TABLE OF AUTHORITIES

## U.S. Federal Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202
(1986) ................................................................................................................ 11

Ballone v. Eastman Kodak Co., 109 F.3d 117 (2d Cir. 1997) .................................... 23

Blatt v. Marshall & Lassman, 812 F.2d 810 (2d Cir. 1987) ...................................... 19

Bowen v. Massachusetts, 487 U.S. 879, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988)............... 29

Broga v. Northeast Util., 315 F. Supp. 2d 212 (D. Conn. 2004) ............................... 17

Caputo v. Pfizer, Inc., 267 F.3d 181 (2d Cir. 2001)........................................... 17,22,23

Chelates Corp. v. Citrate, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ................ 11

Cole v. Travelers Ins. Co., Inc., 208 F. Supp. 2d 248 (D. Conn. 2002)...................... 26

Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270 (2d Cir. 1992) ............................ 15

F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250 (2d Cir. 1987) ................... 20,21

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80

(1989) ............................................................................................................... 25

Gerosa v. Savasta & Co., Inc., 329 F.3d 317 (2d Cir. 2003), cert. denied 124 S. Ct.

435, 157 L. Ed. 2d 312 (2003), cert. denied 124 S. Ct. 929, 157 L. Ed. 2d 744

(2003) ............................................................................................................. 28,29

Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002).............................. 28,29

Kirk v. Liberty Mut. Ins. Co., 28 F.Supp.2d 696 (D. Conn. 1998)....................................... 15,16

Kuntz v. Reese, 785 F.2d 1410 (9th Cir. 1986), cert. denied 479 U.S. 916 (9th Cir.)................ 25

Lee v. Burkhart, 991 F.2d 1004 (2d Cir. 1993)........................................................ 28

Leigh v. Engle, 727 F.2d 113 (7th Cir.)................................................................... 20

Mertens v. Hewitt Assocs., 508 U.S. 248, 113 S. Ct. 2063 Led 2d (1993) .............. 28

Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee

Pension Benefit Plan, 698 F.2d 593 (2d Cir. 1983) ................................................ 27

Mullins v. Pfizer, Inc., 23 F.3d 663 (2d Cir. 1994)................................................. 26

Rush v. Martin Petersen Co., Inc., 83 F.3d 894 (7th Cir. 1996) ............................. 17

Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 122 S. Ct. 2151, 153 L. Ed. 2d

375 (2002) ........................................................................................................ 29

Saladino v. I.L.G.W.U. Nat'l Ret. Fund, 754 F.2d 473 (2d Cir. 1985) .................... 25


**State Cases**

Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc., 187 Conn. 544, 447 A.2d 406

(1982) ............................................................................................................... 12

SFA Folio Collections, Inc. v. Bannon, 217 Conn. 220, 585 A.2d 666 (1991), cert.
denied

501 U.S. 1223, 111 S. Ct. 2839, 115 L. Ed. 2d 1008 (1991) .............................. 12


**Statutes and Regulations**

29 U.S.C. § 1002(6) ............................................................................................. 25

29 U.S.C. § 1002(7) ............................................................................................. 25

29 U.S.C. § 1002(21)(A) ...................................................................................... 19

29 U.S.C. § 1102(1) ............................................................................................. 20

29 U.S.C. § 1113 .................................................................................................. 15

29 U.S.C. § 1132(a)(1)(B)................................................................................... 24

29 U.S.C. § 1132(a)(3)........................................................................................ 28

Dep't of Labor, Interpretive Bulletin, 29 C.F.R. § 2509.75-8 .......................... 19,20,21

Conn. Gen. Stat. § 52-576................................................................................... 27

**Federal and Local Rules**

Fed. R. Civ. P. 9(b) ........................................................................................... 15, 20

Fed. R. Civ. P. 56(c)............................................................................................. 9

## I.    INTRODUCTION

Webster submits this Memorandum of Law in support of its Motion for Summary Judgment, which it has filed herewith, and seeks an order granting its motion. Summary judgment in favor of Webster is appropriate in this case because there are no triable issues of fact that would preclude entry of judgment in Webster's favor. Therefore, summary judgment in favor of Webster must be entered as a matter of law.

The only disputed issues in this case are legal questions that can be answered based on the undisputed facts before the Court. As explained in more detail below, Webster is entitled to summary judgment because: (1) it cannot be held liable for the actions and obligations of its legally separate and distinct subsidiaries; (2) the plaintiff's claims are untimely, and, thus, is barred by the applicable statute of limitations; (3) at no point during the time period relevant to the plaintiff's claim was Daniel Carter, a similarly situated owner and employee of the Levine Companies along with the plaintiff, in a fiduciary position with respect to the plaintiff's benefits, nor do the statements allegedly made by Daniel Carter constitute representations of a material information rising to the level of fraud; (4) the plaintiff was not an employee of Webster, or of any subsidiary of Webster, at any time subsequent to the termination of his employment with Levine Companies in the fall of 1992 and was never an eligible participant under the Levine Companies Salary Savings Plan ("401(k) Plan"), and, therefore, neither the defendant, nor any of its subsidiaries, are liable to the plaintiff for any benefits under the 401(k) Plan; and (5) the plaintiff's claim for relief

under § 502(a)(3) is not truly equitable in nature and, thus, is not authorized by the Employment Retirement Income Security Act of 1974 ("ERISA").

Thus, neither Webster nor any of its subsidiaries are liable to the plaintiff for any of the allegations contained in his Complaint. The Court, therefore, must conclude that Webster is entitled to summary judgment as to all counts as a matter of law.

## II.    STATEMENT OF UNDISPUTED FACTS

The plaintiff's Complaint dated January 20, 2003 consists of two counts against Webster. See Compl. dated January 20, 2003 attached hereto as Ex. One. The Complaint first alleges that Daniel Carter told the plaintiff that all similarly situated Profit Sharing Plan participants were being asked to "waive off" their contributions to the Louis Levine Agency, Inc. Profit Sharing Plan & Trust ("Profit Sharing Plan"), and that all of such participants had agreed to the "waive off" and were not having contributions made to their Profit Sharing Plan accounts. See Ex. One at ¶ 13. The Complaint further alleges that such statements constituted a breach of fiduciary duty by Daniel Carter under § 404 of ERISA. Id. at ¶ 17. Next, the Complaint alleges that the plaintiff was eligible to participate in the 401(k) Plan but was denied such right, and, therefore, is entitled to relief in the form of benefits under § 502(a)(1)(B) of ERISA. Id. at ¶ 18.

All of the plaintiff's claims stem from his employment with and termination from the Levine Companies, an insurance and financial services conglomerate owned by various members of the Levine family. For purposes of this motion, the term

"Levine Companies" refers to LLIA, Inc., a holding company, and/or any one of its operating companies and affiliates which include, but are not limited to, the Louis Levine Agency, Inc., which sold and serviced casualty insurance, Retirement Planning Associates, Inc., which operated as a third party administrator of pension plans, and Levine Financial Services, Inc. (f/k/a Levine Life Associates, Inc.), which sold and serviced personal benefits insurance policies. See Aff. of Gerald U. Levine at ¶¶ 5-6 (a copy of said Aff. is attached to Def.'s Local Rule 56(a)(1) Statement as Ex. B).

It is undisputed that between 1980 and 1992, the time period relevant to plaintiff's claims for breach of fiduciary duty, Levine Companies was a family-owned business. Id. at ¶ 5. LLIA, Inc., which was the holding company for the stock of all of its subsidiaries, was owned in equal shares by three brothers, Michael Levine, Herbert Levine and Gerald Levine, until such time as the brothers recapitalized the stock and brought in the plaintiff, Michael's son, and Daniel Carter, who was related to the Levines by marriage, as common shareholders in 1982. After such recapitalization, Michael, Herbert, and Gerald held all of the preferred stock of LLIA, Inc. in equal shares, and the common stock was held by all five individuals equally. See Ex. C at pp. 27-28; see also Dep. of Barry Levine dated December 21, 2003 at p. 73 (a copy of said Tr. is attached to Def.'s Local Rule 56(a)(1) Statement as Ex. D). Ownership in LLIA, Inc. was held this way until 1989 when Andrew Levine, Herbert's son, became a minority stockholder. Id.

Although Levine Companies consisted of several corporations, that operated under a single roof, with all assets of the individual operating companies commingled.

See Dep. of Michael Levine dated December 19, 2003 at pp. 49-50 (a copy of said Tr. is attached to Def.'s Local Rule 56(a)(1) Statement as Ex. C); see also Ex. D at p. 80. In fact, in the words of Michael Levine, the plaintiff's father, it was a family-owned business that the Levines ran quite casually. See Ex. C at p. 95. For example, multiple entities filed joint tax returns. See id. at p. 49. Additionally, despite the fact that each of the owners worked for several of the different operating companies and affiliates, the salaries for the owners were paid either out of the Levine Financial Services, Inc. payroll or the Louis Levine Agency, Inc. payroll. See Ex. D at p. 80. Thus, although Daniel Carter worked for Retirement Planning Associates, Inc., he was paid out of the Levine Financial Services, Inc. payroll. See Ex. C at 108-9.

Despite the fact that Michael Levine, Herbert Levine and Gerald Levine owned equal shares of LLIA, Inc., and thus, were equal owners of the Levine Companies, it is undisputed that at all times between 1980 and 1992, Michael Levine, the plaintiff's father, was in charge of the operation of the Levine Companies. See id. at p. 33; see also Dep. of Michael Levine dated May 8, 1997 at pp. 108-11 (a copy of said Tr. is attached to Def.'s Local Rule 56(a) Statement as Ex. E). For all intents and purposes, Michael Levine was the "boss" of the Levine Companies. Id. It remains undisputed that at all relevant times, Michael Levine made all of the major business decisions for Levine Companies, including the financial decisions. See Ex. C at p. 50. Additionally, at all relevant times, it was Michael Levine who set the salaries and determined the bonuses for all of the agency owners, including the plaintiff. See Resp. to Req. No. 32 of Pl.'s Resps. to Def.'s February 20, 2004 Reqs. for Admiss. dated

March 25, 2004 (a copy of said Resps. is attached to Def.'s Local Rule 56(a) Statement as Ex. F); see also Ex. C at p. 50.

Between 1980 and 1992, Levine Companies maintained a Profit Sharing Plan for its employees. See Aff. of Daniel Carter at ¶¶ 6-8 (a copy of said Aff. is attached to Defendant's Local Rule 56(a) statement as Ex. G). Such Plan existed at all times relevant to the plaintiff's claims. Id. At all times between 1980 and 1992, the relevant time period of the plaintiff's claims, the Plan documents defined the "Plan Administrator" as the employer: Levine Companies. Id. at ¶ 14. The terms of the Profit Sharing Plan stated that the "Plan Administrator" had the right to make rules and decisions concerning the operation of the plan and eligibility for benefits. Id. at ¶ 15. As stated above, there is no doubt that it was Michael Levine who made such rules and decisions for the Levine Companies as Plan Administrator because he was the "boss". Importantly, it was Michael Levine who determined the amounts of the contributions to the Profit Sharing Plan for each agency owner, including the plaintiff. See Ex. C at p. 32-33. As such, it cannot be disputed that it was Michael Levine who directed Daniel Carter how to administer the Profit Sharing Plan.

Daniel Carter was responsible for the administration of the Plan in the technical and clerical sense only. Id. at ¶ 18. At no time prior to 1992, did Daniel Carter make any decision, or have any discretion or authority under the Plan or otherwise, to make any decision with regard to the operation of the Profit Sharing Plan or any individual's benefits under the Plan. Id. at ¶ 17. Based on the forgoing, it is unquestionable that Daniel Carter's ministerial duties with respect to the technical and

clerical administration of the Profit Sharing Plan were performed at the direction of Michael Levine.

The plaintiff claims that he became employed by Levine Companies on April 1, 1975. See Ex. One at ¶ 10; see also Ex. D at p. 67. During such employment, it is undisputed that at least for the period between 1981 and 1984, the plaintiff's duties and responsibilities at Levine Companies included general office duties such as answering the phones, opening the mail, and maintaining the payroll records. See Ex. D at pp. 179-80; see also Resps. to Rev. Req. Nos. 18-18C of Pl.'s Resps. to Def.'s Mod. and Suppl. Reqs. for Admiss. Directed to the Pl. dated May 12, 2004 (a copy of said Resps. is attached to Def.'s Local Rule 56(a) Statement as Ex. I). It is also undisputed that between 1981 and 1984, the plaintiff did, in fact, from time to time access, open, look at, read, review, analyze, conduct calculations, and make handwritten entries and notations in the payroll records for the Levine Companies for each of those years. Id. Additionally, the plaintiff admits that the Levine Life Associates, Inc. handwritten payroll records for 1983 reflect a handwritten entry dated December 28, 1983 for "Barry Levine" for check number 1548 in the amount of $1,740, which was labeled "Pension Moneys" directly to the right of the name "Barry Levine." See Resp. to Req. No. 23 of Ex. I.

At all times between 1980 and 1992, the plaintiff was eligible to receive a contribution made by the Levine Companies to the Profit Sharing Plan on his behalf. See Ex. G at ¶ 10. Importantly, the plaintiff does not dispute that he waived his participation in the Profit Sharing Plan for the 1980, 1981, 1982, 1983, 1984, 1985,

CARMODY & TORRANCE LLP
Attorneys at Law

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

6

and 1987 plan years by executing written waivers of participation. See Resps. to Req. Nos. 24-29 of Ex. F. The plaintiff's father, as the "boss" of the Plan Administrator, directed Daniel Carter to allow the plaintiff to "waive off" his contribution and to obtain such written waivers. See Dep. of Daniel Carter dated December 19, 2003 at pp. 43-45 (a copy of said Tr. is attached to Def.'s Local Rule 56(a) statement as Ex. H). Such waivers were allowed so the plaintiff could take the amount that would be contributed to the Profit Sharing Plan as taxable income. Id.

It is also undisputed that the plaintiff's waiver of participation for the 1982 plan year is evidenced by a handwritten chart, which the plaintiff personally handwrote, which sets forth a number representing each agency owner's contribution to the Profit Sharing Plan for the 1982 plan year. See Resp. to Rev. Req. No. 33 of Ex. I. On that chart, the plaintiff personally handwrote the word "Waived" by his name, as well as by the name of Andrew Levine, the plaintiff's cousin. See Resp. to Req. No. 34 of Ex. F. The plaintiff did not write the word waived by any other agency owner's name.

It is undisputed that the plaintiff's employment with the Levine Companies ended at a very stressful time in the plaintiff's life and for very emotional reasons. In July of 1992, the plaintiff was required to take a leave of absence from the Levine Companies, as a direct response to allegations that the plaintiff was engaging in sexually harassing or other inappropriate behavior in the offices of the Levine Companies. See Resps. to Req. Nos. 1 and 2 of Ex. F. Subsequent to this leave of absence, the plaintiff was not allowed to return to work at the Levine Companies and

at no time following this leave of absence did the plaintiff perform any services in the office of the Levine Companies or behalf of the Levine Companies. See Ex. D at pp. 53 and 99; see also Resp. to Req. No. 4 of Ex. F; see also Dep. of Barry Levine dated March 28, 1997 at p. 237 (a copy of said Tr. is attached to Def.'s Local Rule 56(a) Statement as Ex. J).

The plaintiff's termination from Levine Companies was evidenced by an agreement captioned "Employment Agreement" dated January 1, 1993. See Resp. to Req. No. 6 of Ex. F; see also copy of said Agreement attached to Def's Local Rule 56(a) Statement as Ex. K. As part of the consideration of that Agreement, the plaintiff sold his stock in LLIA, Inc. to his father, who in turn, sold the stock back to LLIA, Inc. See Resp. to Req. No. 7 of Ex. F; see also Resp. to Req. No. 9A of Ex. I. The so-called "Employment Agreement" did not require the plaintiff to perform any services in order to receive the compensation recited therein. See Ex. C at pp. 63-65; see also Ex. D at pp. 99-107. Although not bona fide contract for employment, the agreement was purposely called an "Employment Agreement" for the advantageous tax consequences to Levine Companies. See Ex. E at pp. 57-58; see also Ex. J at 247-51. Thus, in reality, the agreement was a severance or a buy-out agreement, and not an agreement to employ the plaintiff.

This practice of labeling agreements "Employment Agreement", despite the actual content and purpose of the specific agreement, was typical of the Levine Companies. When the plaintiff's father retired from Levine Companies in 1994, his departure was evidenced by an agreement entitled "Employment Agreement" also.

CARMODY & TORRANCE LLP
{W1288604} Attorneys at Law

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

8

See Ex. C at pp. 34-35, 37-38; see also copy of Agreement attached to Def.'s Local Rule 56(a) as Ex. K. That written agreement, although entitled "Employment Agreement", should not have been called "Employment Agreement" because it was a buy out agreement or a deferred compensation agreement. Id. Additionally, when the plaintiff's uncle, Herbert Levine, retired from the Levine Companies, the agreement evidencing his retirement was also called "Employment Agreement", despite it being a buy-out or a deferred compensation agreement. In fact, the plaintiff admitted that he understood such contract to be a something other than a contract for employment, and in fact viewed himself as unemployed when he applied for and received compensation from the Connecticut Unemployment Compensation Commission in July of 1994. See Resps. to Req. No. 13 of Ex. I; see also Ex. J at pp. 261.

Regarding the 401(k) Plan, the plaintiff has stated that, in 1996, his father informed him that Levine Companies had established a 401(k) Plan. See Ex. D at p. 187. The plaintiff has also indicated that at that time, his father, acting on the plaintiff's behalf, made a claim for benefits under that Plan to Levine Companies. Id. at 187-88. At that time, such claim was denied. Id.

Despite having been terminated from Levine Companies more than ten years ago, and never having been an employee of Webster, the plaintiff now brings this action against Webster as the sole successor in interest to Louis Levine Agency, Inc. by virtue of the acquisitions of its assets and liabilities by Webster. See Ex. One at ¶ 9. Webster, however, did not acquire all assets and liabilities of Louis Levine Agency, Inc. in 2001. At that time, Webster acquired the stock of LLIA, Inc. See Aff. of John

J. Queirolo at ¶ 9 (a copy of said Aff. is attached to Def.'s Local Rule 56(a) Statement as Ex. A). It is undisputed that Webster currently holds the stock of LLIA, Inc., the direct parent corporation to, and holding company of the stock of Louis Levine Agency, Inc. Id. at ¶ 8. It is also undisputed that Louis Levine Agency, Inc. is currently an active Connecticut corporation that continues to recognize and follow all corporate formalities. Id. at ¶ 10-11. At all times since Webster's purchase of the stock of LLIA, Inc., Webster and all of its subsidiaries, including LLIA, Inc., Louis Levine Agency, Inc. and Retirement Planning Associates, Inc., have maintained separate and distinct corporate identities, following all corporate formalities. See id.

## III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith, if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." An issue is "genuine" only if there is sufficient evidence upon which a reasonable jury could base a finding for the non-moving party, and a fact is "material" if a dispute about it might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Chelates Corp. v. Citrate, 477 U.S. 317, 322-3, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d

265 (1986).  The summary judgment standard "mirrors the standard for a directed

verdict . . . which is that the trial judge must direct a verdict if under the governing law

there can be but one reasonable conclusion as to the verdict."  <u>Anderson v. Liberty

Lobby</u>, 477 U.S. at 248.

The non-moving party must produce more than a "mere scintilla" of evidence

in its favor, and cannot simply reassert factually unsupported allegations contained in

its pleadings.  <u>Id</u>. at 249.  In other words, after the moving party has met its initial

burden, summary judgment is appropriate if the non-moving party fails to rebut by

making an actual showing "sufficient to establish an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  <u>Id</u>. at 250.

Here, no material fact is in dispute, and based on such undisputed facts,

Webster is entitled to summary judgment as a matter of law.

## IV.    ARGUMENT

### A.    Webster may not be held liable for the actions and obligations of its legally separate and distinct subsidiaries.

In his Complaint dated January 1, 2003, the plaintiff states that his claims are

brought against Webster as the sole successor in interest to the Louis Levine Agency,

Inc. by virtue of the acquisition of all assets and liabilities of the Louis Levine

Agency, Inc. by Webster in 2001.  <u>See</u> Ex. One at ¶ 9.  The plaintiff, however, makes

no other allegations as to the basis of Webster's liability for the actions and

obligations of Louis Levine Agency, Inc.

Yet, Webster did not acquire all assets and liabilities of Louis Levine Agency,

Inc. in 2001.  At that time, Webster Financial Corporation, the parent corporation to

the defendant, Webster, acquired the stock of LLIA, Inc. It is undisputed that Webster currently holds the stock of LLIA, Inc., the direct parent corporation to, and holding company of the stock of Louis Levine Agency, Inc., which in and of itself remains an active operating company that continues to recognize and follow all corporate formalities. It is also undisputed that at all times since the purchase of the stock of LLIA, Inc. by Webster Financial Corporation, Webster and all of its direct and indirect subsidiaries, including LLIA, Inc. and the Louis Levine Agency, Inc., have maintained separate and distinct corporate identities, following all corporate formalities. See Ex. A. Based on the foregoing undisputed facts, Webster is therefore entitled to summary judgment because, under general principles of Connecticut corporate law, is not liable as a distant parent to Louis Levine Agency, Inc. for the plaintiff's claims.

It is a well-settled principle of Connecticut law that parent corporations and their subsidiaries have separate legal existences, even where the parent corporation wholly owns the stock of the subsidiary. See SFA Folio Collections, Inc. v. Bannon, 217 Conn. 220, 222-23, 585 A.2d 666, cert. denied, 501 U.S. 1223, 111 S. Ct. 2839, 115 L. Ed. 2d 1008 (1991)(noting that "it is a fundamental principal of corporate law that the parent corporation and its subsidiary are treated as separate and distinct legal persons even thought the parent owns all the shares in the subsidiary and the two enterprises have identical officers."). Absent fraud or express assumptions, a parent is not liable for the debts or obligations of its subsidiary. Angelo Tomasso v. Armor Constr. & Paving, Inc., 187 Conn. 544, 537, 447 A.2d 406 (1982)(holding that the corporate veil is pierced only under "exceptional circumstances," such as where the

{W...}
CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
12

corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice). Here, the plaintiff has failed to make any allegation to pierce the corporate veil and effectively assert liability against Webster.

Not only has the plaintiff failed to allege any facts to hold Webster liable as the indirect parent of the Louis Levine Agency, Inc., under no set of circumstances could the plaintiff succeed with such a claim. Webster and LLIA, Inc., as well as all of the distant subsidiaries, including Louis Levine Agency, Inc. and Retirement Planning Associates, Inc., are now and always have been separate and distinct legal entities. LLIA, Inc. and its subsidiaries all continue to be active Connecticut corporations, in good standing, and all maintain liability for claims against themselves. All corporate formalities are followed for all of the companies, including the filing of annual reports with the Connecticut Secretary of the State and separate federal and state tax returns. Webster has never shared bank accounts with LLIA, Inc. or its other subsidiaries, nor has it ever guaranteed any obligations of those subsidiaries. Moreover, Webster had no role in the actions alleged by the plaintiff to have occurred at Louis Levine Agency, Inc. some twenty years ago. Under such circumstances, one cannot conclude that Webster or any of its subsidiaries are merely corporate shells, or that Webster is using corporate forms in a manner that perpetuates fraud or an injustice.

Therefore, there is no basis that liability be assigned to Webster for any of the plaintiff's claims in this matter, where the Louis Levine Agency, Inc. remains an

active, operating corporation. For that reason, Webster is entitled to summary judgment on all claims brought by the plaintiff, as a matter of law.

**B.**    **Webster is entitled to summary judgment as to Count One of the plaintiff's Complaint, which alleges breach of fiduciary duty.**

Webster is entitled to summary judgment on Count One of the plaintiff's Complaint, which alleges breach of fiduciary duty in violation of § 404 of ERISA, because the plaintiff's claim is untimely and, thus, barred by the statute of limitations contained in § 413 of ERISA. Additionally, it is undisputed that Daniel Carter did not have the discretionary authority over any matters at Levine Companies and that Michael Levine was in complete control of Levine Companies. Consequently, it is not possible that Daniel Carter had the discretion required by ERISA to make him a fiduciary for purposes of plaintiff's claims, and, therefore, neither Webster, nor any of its subsidiaries may be held liable for breach of fiduciary duty. Finally, even if Daniel Carter is held to be a fiduciary under ERISA, as alleged by the plaintiff, the alleged representations made to the plaintiff are not representations of "material" information sufficient to constitute fraud. As such, Webster is entitled to summary judgment on Count One as a matter of law.

**1.**    **The plaintiff's claim for breach of fiduciary duty is untimely and, thus, is barred by ERISA § 413.**

The plaintiff's claim in Count One of his Complaint stems from alleged representations made to the plaintiff between 1980 and 1992, more than a decade or two prior to the date of the plaintiff's Complaint. Although the plaintiff claims in his Complaint that he did not discover that the alleged representations were false until

February 2002, the undisputed facts contained in the record indicate that the plaintiff

knew as early as 1982 and 1983 that no other similarly situated agency owner, besides

himself, had "waived off" of the Profit Sharing Plan contributions.  Since the plaintiff

had such knowledge at that time, claim for breach of fiduciary is untimely and, thus,

barred by the statute of limitations contained in ERISA § 413.

ERISA § 413 applies to actions arising from breaches of fiduciary duties or

any other violations of ERISA's general fiduciary obligations and prohibited

transactions.   Section 413 states:

> No action may be commenced . . . with respect to a fiduciary's
> breach of any . . . obligation . . . after the earlier of – (1) six
> years after (A) the date of the last action which constituted a
> part of the breach or violation . . . or . . . (2) three years after the
> earliest date on which the plaintiff had actual knowledge of the
> breach or violation; except that in the case of fraud or
> concealment, such action may be commenced not later than six
> years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (West 2004).

"In order to warrant application of [the] six year statute of limitations, a

plaintiff must allege facts sufficient to establish common law fraud." Kirk v. Liberty

Mut. Ins. Co., 28 F. Supp. 2d 696, 700 (D. Conn. 1998).  Under Federal Rule of Civil

Procedure 9(b), the plaintiff, therefore, must "establish (1) that a material false

representation or omission of an existing fact was intentionally and knowingly made;

(2) that he or she reasonably relied on the misrepresentation or omission; and (3) that

he or she suffered damages as a result of the misrepresentation or omission." See

Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 276 (2d Cir. 1992).  Rule

9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting

fraud or mistake shall be stated with particularity." "To comply with this rule, the plaintiff must 'allege specifically when and where the misrepresentations took place, the content of those misrepresentations, and the identity of the person or persons making them'", and must "specifically plead those events which give rise to a strong inference that the defendant [] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." Kirk, 28 F. Supp. 2d at 700.

In this case, the plaintiff baldly asserts that the plaintiff "became a victim of fraudulent conduct." He states "on or about the month of December each year (except in 1985 when it occurred in March), at the Levine [Companies] offices in Waterford, Connecticut, Carter, the Levine [Companies'] agent for retirement plan issues, knowingly, intentionally and falsely told Levine that all of the agency owners had agreed to "waive off" their contributions to the Profit Sharing Plan and that, for this reason, [the plaintiff] should do the same." See Ex. One. Like the plaintiff in Kirk, the plaintiff in this matter has failed to allege how such representation is fraudulent.

Since the plaintiff has not plead his claim for fraud with particularity, as required by Federal Rule of Civil Procedure 9(b), the statute of limitations applicable to his claim for breach of fiduciary duty is three years. However, regardless of whether the plaintiff's claim is measured against the three-year statute of limitations or the more lenient limitation of six years, his claim for breach of fiduciary duty is time-barred since the plaintiff had actual knowledge of the essential material facts of the alleged breach as early as 1982 and 1983, some twenty years ago.

The statutory period begins to run, not when a violation or breach occurs, but when the person harmed acquires "actual knowledge" of the occurrence. The Second Circuit has defined "actual knowledge" as "when [the plaintiff] has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his...duty or otherwise violated the Act." Broga v. Northeast Util., 315 F. Supp. 2d 212, 221 (D. Conn. 2004). "Actual knowledge" has been defined as knowledge of the "essential facts of the transaction or conduct constituting the violation," and has been explained to mean "it is not necessary for a potential plaintiff to have knowledge of every last detail of the transaction, or knowledge of its illegality." Rush v. Martin Petersen Co., Inc., 83 F.3d 894 (7th Cir. 1996). "While a plaintiff need not have knowledge of the relevant law . . . he must have knowledge of all facts necessary to constitute a claim." Caputo v. Pfizer, Inc., 267 F.3d 181, 193 (2d Cir. 2001). "When a plaintiff has actual knowledge that facts were misrepresented to him, he has actual knowledge of a claim." Id.

In this case, the essential facts of the plaintiff's claim are the alleged statements and their falsity, which the plaintiff had actual knowledge of as early as 1982 and 1983. At that time, the plaintiff had knowledge that he, and his cousin Andrew Levine, were the only two "waiving off" their pension contributions and that no other similarly situated participants had "waived off." It is undisputed that with respect to the contributions allocated to each owner and employee of Levine Companies for the 1982 plan year, the plaintiff personally handwrote a spreadsheet containing the calculated contributions for each individual. He personally wrote the

word "WAIVED" by his name and by his cousin Andrew's name, but by no other similarly situated owner or employee. See Ex. I.

It is also undisputed that between 1981 and 1984, the plaintiff's employment duties included accessing, reviewing, analyzing, calculating, and making handwritten entries in the payroll ledgers for both Levine Financial Services, Inc. and Louis Levine Agency, Inc. and that from time to time the plaintiff had accessed such payroll records. See id. In fact, based upon the record it cannot be undisputed that the substantial majority of the payroll records from 1981 through 1983 for both Levine Financial Service, Inc. and Louis Levine Agency, Inc. had been handwritten by the plaintiff. Similar to the plaintiff in Rush, supra, it would have been difficult for the plaintiff in this case, as the person who handwrote the spreadsheet containing the word "Waived" by only his name and his cousin Andrew's, and as the person responsible for maintaining the payroll records at that time which contained at least one payment clearly labeled "pension moneys", to avoid knowing that not all agency owners were "waiving off" their contributions.

Assuming for purposes of this argument, that Daniel Carter in fact told the plaintiff that all similarly situated owners were "waiving off" their contribution, which is strenuously denied, the undisputed facts of record show that the plaintiff knew as early as 1982 and 1983 that only he and his cousin Andrew Levine were "waiving off" their contributions. Since the plaintiff had actual knowledge that the statements allegedly made by Daniel Carter were false at that time, the plaintiff is clearly barred

CARMODY & TORRANCE LLP
{W...}Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
18

by § 413 of ERISA from bringing a claim for breach of fiduciary duty at this time.

Thus, Webster is entitled to summary judgment as a matter of law on Count One.

> **2.    Webster is entitled to summary judgment on Count One of the plaintiff's Complaint because Daniel Carter did not have discretionary authority to administer the Profit Sharing Plan and, therefore, was not a Plan fiduciary for purposes of plaintiff's claims.**

Under ERISA § 3(21)(A), a person is a fiduciary with respect to a plan

to the extent that "(1) he exercises discretionary authority or discretionary control

respecting management of such plan or exercises any authority or control respecting

management or disposition of the plan assets; (ii) he renders investment advice for a

fee or other compensation, direct or indirect, with respect to any moneys or other

property of such plan, or has any authority or responsibility to do so; or (iii) he has any

discretionary authority or discretionary responsibility in the administration of such

plan." 29 U.S.C. § 1002(21)(A) (West 2004); see also Dep't of Labor, Interpretive

Bulletin, 29 C.F.R. § 2509.75-8. In this case, Daniel Carter is a named trustee, a

position that carries with it the sole responsibility and authority as the Profit Sharing

Plan assets. That, however, is the extent of the discretionary authority and control

held by Daniel Carter with respect to such Plan.

Formal titles are not dispositive of whether a person is a fiduciary or not. See

Blatt v. Marshall & Lassman, 812 F. 2d 810, 812 (2d Cir. 1987). Whether or not a

person is a fiduciary is determined by the functions performed by that person, not by

his or her title. See id. The individual must have discretion and control. 29 C.F.R.

§2509.75-8

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
19