```
                                              FILED

                                              2004 SEP 17  P 4:54

         UNITED STATES DISTRICT COURT   US DISTRICT COURT
              DISTRICT OF CONNECTICUT    BRIDGEPORT CT
```

| | | |
|---|---|---|
| BARRY LEVINE | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:03CV148 (SRU) |
| V. | : | |
| | : | |
| WEBSTER INSURANCE, INC. | : | |
| | : | |
| Defendant. | : | SEPTEMBER 17, 2004 |

**WEBSTER INSURANCE, INC.'S LOCAL RULE 56(a)(1) STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56(a)(1), and in support of its Motion for Summary Judgment, the defendant, Webster Insurance, Inc. ("Webster"), hereby submits the following statement of material facts to which Webster contends there are no genuine issues to be tried.

1. Webster is a corporation organized, operating and existing, in good standing, under the laws of the state of Connecticut. See Aff. of John J. Queirolo, President and Chief Executive Officer of Webster Insurance, Inc. at ¶ 4. A copy of said Aff. is attached hereto as **Ex. A**.

2. Webster is a wholly owned subsidiary of Webster Financial Corporation, a holding company and publicly held stock corporation, organized, operating and existing under the laws of the state of Delaware. Id. at ¶ 5.

3. Webster is a corporate entity legally separate and distinct from its parent corporation and all of its subsidiaries, and follows all corporate formalities required by law. Id. at ¶ 6.

4. Webster's principal place of business is located in Wallingford, Connecticut. Id. at ¶ 7.

5. Webster was previously known as Damman Associates, Inc. ("Damman"), prior to a corporate name change dated February 26, 2002. Id. at ¶ 8.

6. Damman (n/k/a Webster) purchased all of the stock of LLIA, Inc. pursuant to a Stock Purchase Agreement dated February 1, 2000. Id. at ¶ 9.

7. LLIA, Inc. was incorporated in 1982 and is an active stock corporation organized and existing, in good standing, under the laws of the state of Connecticut. Id. at ¶ 10.

8. Louis Levine Agency, Inc. is a wholly owned subsidiary of LLIA, Inc. Id. at ¶ 11.

9. Louis Levine Agency, Inc. is an active stock corporation organized, operating and existing, in good standing, under the laws of the state of Connecticut. Id. at ¶ 12.

10. Louis Levine Agency, Inc. is a legally separate and distinct corporation from its distant parent, Webster, and follows all corporate formalities required by law. Id. at ¶ 13.

11. Retirement Planning Associates, Inc. is a wholly owned subsidiary of Louis Levine Agency, Inc. Id. at ¶ 14.

12. Retirement Planning Associates, Inc. is an active stock corporation organized, existing and operating, in good standing, under the laws of the state of Connecticut. Id. at ¶ 15.

13. Retirement Planning Associates, Inc. is a legally separate and distinct corporation from its distant parent, Webster, and follows all corporate formalities required by law. Id. at ¶ 16.

14. LLIA, Inc. owned all of the stock of Levine Financial Services, Inc. (f/k/a Levine Life Associates, Inc.) until approximately September of 2000, when Levine Financial Services, Inc. was merged with and into Louis Levine Agency, Inc. Id. at ¶ 17.

15. Prior to 1992, LLIA, Inc. and its subsidiaries and affiliates, including but not limited to Louis Levine Agency, Inc., Retirement Planning Associates, Inc., and Levine Financial Services, Inc., comprised a family-owned and primarily family-operated insurance and financial services business. See Aff. of Gerald Levine, Executive Vice President of Webster at ¶ 5. A copy of said Aff. is attached hereto as **Ex. B**.

16. LLIA, Inc. and its subsidiaries and affiliates, including but not limited to those subsidiaries and affiliates listed in Paragraph 15 above, are sometimes collectively referred to as the "Levine Companies." Id. at ¶ 6.

17. Between 1980 and 1992, Louis Levine Agency, Inc. was the entity of the Levine Companies that sold and serviced casualty insurance. Id. at ¶ 7.

{W0414560;9} CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

3

18. Between 1980 and 1992, Levine Financial Services, Inc. was the entity of the Levine Companies that sold and serviced life, group and disability insurance. Id. at ¶ 8.

19. Between 1980 and 1992, Retirement Planning Associates, Inc. was the entity of the Levine Companies that functioned solely as a third party administrator of pension plans, including the LLIA, Inc. retirement plan discussed below. Id. at ¶ 9; see also Dep. of Michael Levine dated December 19, 2003 at p. 34. A copy of said Tr. is attached hereto as **Ex. C**.

20. Between 1980 and 1992, the stock of LLIA, Inc. was owned in equal shares by Michael Levine, Herbert Levine and Gerald Levine, all of whom are brothers, until such time as the brothers recapitalized the stock and brought in Michael's son, Barry Levine, the plaintiff in this matter, and Daniel Carter, who was related to the Levines by marriage, as shareholders in 1982. After such recapitalization, Michael, Herbert and Gerald held all of the preferred stock in equal shares, and the common stock was held by all five individuals equally, until 1989 when the stock was recapitalized again, and Herbert Levine's son, Andrew Levine, was brought in as a common stockholder. See Ex. C at pp. 27-28; see also Dep. of Barry Levine dated December 23, 2003 at p. 80. A copy of said Tr. is attached hereto as **Ex. D**.

21. At all times between 1980 and 1992, the Levine Companies operated under a single roof, with all of the assets of the individual operating companies co-mingled, except that salaries for the owners of Levine Companies were paid either out

of the Levine Financial Services, Inc. payroll or the Louis Levine Agency, Inc. payroll. See Ex. C at pp. 49-50; see Ex. D at 73;

22. Although LLIA, Inc. and each of the operating companies and affiliates known as the Levine Companies were incorporated, Levine Companies was a family-owned business that the Levines ran in a very casual manner. See Ex. C at p. 95.

23. Despite the fact that Michael Levine, Herbert Levine, and Gerald Levine owned equal shares of LLIA, Inc. at all times between 1980 and 1992, Michael Levine, the plaintiff's father, was in charge of the operation of the Levine Companies; he was the boss. See Ex. C at p. 33; see also Dep. of Michael Levine dated May 8, 1997 at pp. 108-11. A copy of a portion of said Tr. is attached hereto as **Ex. E**.

24. At all times between 1980 and 1992, Michael Levine, the plaintiff's father, made all of the major business decisions for Levine Companies, including financial decisions. See Ex. C at p. 50.

25. At all times between 1980 and 1992, Michael Levine set the salaries for himself, Herbert Levine, Gerald Levine, Daniel Carter, Barry Levine, and Andrew Levine. See Resp. to Req. No. 32 of Pl.'s Resps. to Def.'s February 20, 2004 Reqs. for Admiss. Directed to Pl. dated March 25, 2004. A copy of said Resps. are attached hereto as **Ex. F**.

26. At all times between 1980 and 1992, Michael Levine determined the amount of any bonuses received by himself, Herbert Levine, Gerald Levine, Daniel Carter, Barry Levine, and Andrew Levine. Id.

{W1314515;2} CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
5

27. At all times between 1980 and 1992, in the course of his employment with Levine Companies, Daniel Carter took direction from Michael Levine. See Ex. C at pp. 98-99; see also Ex. E at pp. 108-11.

28. If the plaintiff took direction from anyone during the course of his employment with Levine Companies, it was direction from his father, Michael Levine. See Ex. C at p. 99.

29. At no time between April 1, 1975 and the fall of 1992, the period of the plaintiff's employment with Levine Companies, did Daniel Carter have any authority over the plaintiff. Id. at p. 98.

30. Between 1980 and 1982, the Levine Companies maintained two profit sharing plans for their employees, namely the Levine Life Associates, Inc. Profit Sharing Trust, as amended from time to time, and the Louis Levine Agency, Inc. Profit Sharing Plan & Trust, as amended from time to time. See Aff. of Daniel Carter, Senior Vice President of Webster at ¶ 6. A copy of said Aff. is attached hereto as **Ex. G**.

31. In approximately 1983, the two plans were merged and the Levine Companies then maintained a single plan for all employees under the name Louis Levine Agency, Inc. Profit Sharing Plan & Trust ("Profit Sharing Plan"). Id. at ¶ 7.

32. Levine Companies continued to maintain the Profit Sharing Plan under this name, as amended from time to time, from 1983 through 1996, when the Profit Sharing Plan was merged with and into the Levine Companies Salary Savings Plan ("401(k) Plan"), which was established in 1993 and terminated in 2002. Id. at ¶ 8.

33.     From approximately January 1983 through December 1989, Levine Agency also maintained the Louis Levine Agency, Inc. Defined Benefit Plan, which was a completely separate plan from the Profit Sharing Plan. Id. at ¶ 9.

34.     At all times between 1980 and 1992, Barry Levine was an eligible participant in the Profit Sharing Plan. Id. at ¶ 10.

35.     At all times between 1980 and 1992, the Profit Sharing Plan was administered in the technical and clerical sense by Retirement Planning Associates, Inc. Id. at ¶ 13.

36.     At all times between 1980 and 1992, the "Plan Administrator" of the Profit Sharing Plan, as defined by the plan documents, was the employer, namely one of the Levine Companies. Id. at ¶ 14.

37.     At all times between 1980 and 1992, the terms of the Profit Sharing Plan stated that the Plan Administrator had the right to make rules and decisions concerning the operation of the plan and eligibility for benefits. Id. at ¶ 15.

38.     At all times between 1980 and 1992, it was Michael Levine, the "boss" of the Levine Companies, the Plan Administrator, who had final approval of all of the decisions as to the operation of the plan and individual's benefits on behalf of the Profit Sharing Plan. Id. at ¶ 16.

39.     At all relevant times it was Michael Levine who determined the amount of Profit Sharing Plan contributions and it was Michael Levine who directed Daniel Carter to make such contributions. See Ex. C at pp. 32-33.

40. At no time prior to 1992 did Daniel Carter make any decision, or have any discretion or authority under the Plan, or otherwise, to make any decision, with regard to the operation of the Profit Sharing Plan or any individual's benefits under the Plan absent the direction and approval of Michael Levine. Id. at ¶ 17.

41. Daniel Carter's sole responsibility was to administer the Profit Sharing Plan in the technical and clerical sense according to the direction of the Plan Administrator, which was Levine Companies and, essentially, Michael Levine. Id. at ¶ 18.

42. The plaintiff waived his participation in the Profit Sharing Plan for the 1980, 1981, 1982, 1983, 1984, 1985, and 1987 plan years by executing written waivers of participation. See Resp. to Req. Nos. 24-29 of Ex. F.

43. The plaintiff received a $20,000 contribution to his Profit Sharing Plan account for the 1986 plan year and a $3,575.57 contribution to his Profit Sharing Plan account for the 1989 plan year. See Resps. to Req. No. 31 of Ex. F.

44. The plaintiff's father, as the boss of the Plan Administrator, directed Daniel Carter to allow the plaintiff to waive his right to a contribution and to obtain the written waivers mentioned in Paragraph 42 above. See Dep. of the Daniel Carter dated December 19, 2003 at pp. 48-49. A copy of said Tr. is attached hereto as **Ex. H**.

45. Such waivers were allowed so the plaintiff could take the amount that would be contributed to the Profit Sharing Plan as taxable income in that year. Id.

46. In addition to the executed waiver, the plaintiff's waiver of participation for the 1982 plan year is evidenced by a handwritten chart in which the

plaintiff personally handwrote a number representing each agency owner's contribution allocation to the Profit Sharing Plan for the 1982 plan year. See Resp. to Rev. Req. No. 33 of Pl.'s Resps. to Def.'s Mod. and Supp. Reqs. for Admiss. Directed to Pl. dated May 12, 2004. A copy of said Resps. is attached hereto as **Ex. I**.

47. On that same chart, the plaintiff personally handwrote the word "Waived" by his name, as well as by the name of Andrew Levine, but did not write "Waived" near any other similarly situated owner. See Resp. to Req. No. 34 of Ex. F.

48. The Levine Companies did not make any contributions to the Profit Sharing Plan on behalf of any owner or employee in 1990, 1991 or 1992. See Ex. G at ¶ 11.

49. The plaintiff commenced working for the Levine Companies on April 1, 1975. See Ex. D at p. 67.

50. Between 1980 and 1984, the plaintiff's duties and responsibilities at the Levine Companies included general office duties such as answering the phones and opening the mail. See Ex. D at pp. 179-80.

51. Between 1981 and 1984, the plaintiff's duties included maintaining the payroll records for the Levine Companies. See Resps. to Rev. Req. Nos. 18-18C of Ex. I.

52. Between 1981 and 1984, the plaintiff, from time to time, accessed, opened, looked at, read, reviewed, analyzed, conducted calculations, and made handwritten entries or notations in the payroll records for the Levine Agency for each of those years. Id.

53. The Levine Life Associates, Inc. handwritten payroll records for 1983 reflect a handwritten entry dated December 28, 1983 for "Barry Levine" for check number 1548 in the amount of $1,740, which represented a gross amount of $3,480 less $1,740 of withholdings and such entry lists the words "Pension Moneys" directly to the right of the name "Barry Levine." See Resp. to Req. No. 23 of Ex. I.

54. In July of 1992, the plaintiff was required to take a leave of absence from the Levine Companies. See Resp. to Req. No. 1 of Ex. F.

55. The plaintiff's leave of absence occurred subsequent to, and as a direct response to allegations that the plaintiff was engaging in sexually harassing or other inappropriate behavior in the offices of the Levine Companies. See Resp. to Req. No. 2 to Ex. F.

56. In the late summer or fall of 1992, while the plaintiff was on the above-mentioned leave of absence, the plaintiff learned that he was not allowed to return to work at the offices of the Levine Companies. See Resp. to Req. No. 4 of Ex. F.

57. Subsequent to learning that he would not be allowed to return to work in the late summer or early fall of 1992, the plaintiff never performed any services in the offices of the Levine Companies or on behalf of the Levine Companies. See Ex. D at pp. 53 and 99; see also Dep. of Barry Levine dated March 28, 1997 at p. 237. A copy of said Tr. is attached hereto as **Ex. J**.

58. The plaintiff and the Levine Agency executed an agreement entitled "Employment Agreement" dated January 1, 1993 which evidenced the plaintiff's

termination from the Levine Companies. See Resp. to Req. No. 6 of Ex. F; see also Ex. E at pp. 32-33. A copy of said agreement is attached hereto as **Ex. K**.

59. In reality, this so-called "Employment Agreement" was not a contract for employment at all, but was a severance or salary-continuation agreement. See Ex. E at pp. 57-58; see also Ex. J at pp. 247-51.

60. In or about 1990 and 1991, the plaintiff sold to his father, Michael Levine, all of the shares of stock in LLIA, Inc., which the plaintiff owned. See Resp. to Req. No. 7 of Ex. F.

61. The stock referenced above served as some of the consideration for the plaintiff's so-called "Employment Agreement". See Resp. to Req. No. 9A of Ex. I.

62. The stock referenced above was eventually sold back to LLIA, Inc. See Resp. No. 10 to Ex. F.

63. The so-called "Employment Agreement" did not require the plaintiff to perform any actual services in order to receive the compensation recited therein. See Ex. C at pp. 63-65; see also Ex. D at pp. 99-107.

64. Michael Levine, the plaintiff's father, retired from Levine Companies around 1994. See Ex. C at pp. 34-35.

65. His departure from the Levine Companies was evidenced by an agreement entitled "Employment Agreement". A copy of said agreement is attached hereto as

**Ex. L**.

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
11

66. In reality, that so-called "Employment Agreement" was not a contract for employment but was a buy-out agreement or a deferred compensation agreement. See Ex. C at pp. 37-38.

67. Herbert Levine, the plaintiff's uncle, also retired from the Levine Companies around 1994. Id. at p. 41.

68. His departure was also evidenced by an agreement entitled "Employment Agreement."

69. Like Michael Levine's agreement, Herbert Levine's so-called "Employment Agreement" was not a contract for employment but, rather, a buy-out or deferred compensation agreement. See Ex. C at p. 46.

70. In July of 1994, the plaintiff applied to the State of Connecticut Unemployment Compensation Commission for unemployment compensation. See Resp. to Req. No. 13 of Ex. I.

71. The plaintiff applied and received such unemployment compensation because, at that time, he was unemployed. See id.

72. In 1996, the plaintiff's father, Michael Levine, informed him that the Levine Companies had established the 401(k) Plan. See Ex. D at p. 187.

73. At that time, acting on the plaintiff's behalf, the plaintiff's father made a claim to the Levine Companies for benefits due the plaintiff under the 401(k) Plan. Id. at pp. 187-88.

74. At that time, such claim was denied. Id. at p. 188.

{W1314515;2}

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

12

THE DEFENDANT,
WEBSTER INSURANCE, INC.


BY: _/s/ Kristi D. Aalberg_
Charles F. Corcoran, Esq. (ct02499)
Kristi D. Aalberg, Esq. (ct23970)
Carmody & Torrance LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Telephone: (203) 777-5501
Facsimile:  (203) 784-3199

## CERTIFICATE OF SERVICE

      This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the above date, to:

Thomas G. Moukawsher, Esq.
Moukawsher & Walsh, L.L.C.
328 Mitchell Street
P.O. Box 966
Groton, CT 06340

Ian O. Smith, Esq.
Moukawsher & Walsh, L.L.C.
21 Oak Street
Suite 209
Hartford, CT 06106

                                                            */s/ Kristi D. Aalberg*
                                                            Kristi D. Aalberg, Esq.

{W1314515;2}
CARMODY & TORRANCE LLP    50 Leavenworth Street   14
Attorneys at Law    Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200