# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BARRY LEVINE              :

        Plaintiff,       :    CIVIL ACTION NO.

                  :    3:03CV148 (SRU)

V.                    :

WEBSTER INSURANCE, INC.   :

        Defendant.     :    SEPTEMBER 17, 2004

## AFFIDAVIT OF DANIEL M. CARTER IN SUPPORT OF DEFENDANT WEBSTER INSURANCE, INC.'S MOTION FOR SUMMARY JUDGMENT

I, Daniel M. Carter, after being duly sworn, depose and say the following:

1. I am over the age of 18.

2. I believe in the obligations of an oath and make the statements within this affidavit based upon my own personal knowledge.

3. I am currently employed by Webster Insurance, Inc. ("Webster") as Senior Vice President.

4. I am a former owner and director of LLIA, Inc., the holding company that wholly owns the stock of Louis Levine Agency, Inc.

5. LLIA, Inc. and its subsidiaries and affiliates, including but not limited to Louis Levine Agency, Inc., Levine Financial Services, Inc. (f/k/a Levine Life Associates, Inc.), and Retirement Planning Associates, Inc., are sometimes collectively referred to as the "Levine Companies."

{W13179 3}

6.    Between 1980 and approximately 1982, the Levine Companies maintained the Levine Life Associates, Inc. Profit Sharing Trust, as amended from time to time ("Profit Sharing Plan"), for its employees.

7.    In approximately 1983, the name of the Profit Sharing Plan was changed from the Levine Life Associates, Inc. Profit Sharing Trust to the Louis Levine Agency, Inc. Profit Sharing Plan & Trust.

8.    Levine Companies continued to maintain the Profit Sharing Plan under the new name, as amended from time to time, from approximately 1983 through 1996, when the Profit Sharing Plan was merged with and into the Levine Companies Salary Savings Plan ("401(k) Plan"), which was established in 1996 and terminated in 2002.

9.    Between January 1, 1983 and December 31, 1989, Levine Companies also maintained the Louis Levine Agency, Inc. Defined Benefit Plan, which was a completely separate plan from the Profit Sharing Plan.

10.    At all times between 1980 and 1992, Barry Levine was an eligible participant in the Profit Sharing Plan.

11.    The Levine Companies did not make any contributions to the Profit Sharing Plan on behalf of any participant in 1990, 1991 or 1992.

12.    At no time was the plaintiff was not eligible to participate in the 401(k) Plan because the plaintiff was not an employee of Levine Companies at any time after he was terminated in the fall of 1992.

13. At all times between 1980 and 1992, the Profit Sharing Plan was administered in the technical and clerical sense by Retirement Planning Associates, Inc.

14. At all times between 1980 and 1992, the "Plan Administrator" of the Profit Sharing Plan, as defined by the plan documents, was the employer, namely one of the Levine Companies. See Copy of the Profit Sharing Plan Summary Plan Descriptions attached hereto as Schedule A.

15. At all times between 1980 and 1992, the terms of the Profit Sharing Plan stated that the Plan Administrator had the discretion and authority to make rules and decisions concerning the operation of the plan and eligibility for benefits.

16. At all times between 1980 and 1992, it was Michael Levine, the "boss" of the Levine Companies, the Plan Administrator, who made all of the decisions as to the operation of the plan and individual's benefits on behalf of the Profit Sharing Plan.

17. At no time prior to the 1992 did I make any decision, or have any discretion or authority under the Plan or otherwise to make any decision with regard to the operation of the Profit Sharing Plan or any individual's benefits under the Plan.

18. My sole responsibility was to administer the Profit Sharing Plan in the technical and clerical sense according to the direction of the Plan Administrator, which was Levine Companies and, essentially, Michael Levine.

Dated at _Waterford_____, Connecticut, this _15_ day of September, 2004.

_Daniel M. Carter_

Daniel M. Carter

Subscribed and sworn to before me this _15_ day of September, 2004.

Notary Public
My Commission Expires: _____

THOMAS M. KILCOLLUM
*NOTARY PUBLIC*
MY COMMISSION EXPIRES FEB. 28, 2009

## SUMMARY PLAN DESCRIPTION

FOR:

Levine Life Associates, Inc.
Profit-sharing Trust

SUMMARY PLAN DESCRIPTION

TABLE OF CONTENTS

1.   Plan and Employer

2.   Benefit Insurance

3.   Type of Plan

4.   Plan Administration

5.   Trustees

6.   Collective-Bargaining Agreements

7.   Eligibility to Participate

8.   Normal Retirement

9.   Normal Form of Retirement Benefit

10.  Deferred Retirement

11.  Disability

12.  Death

13.  Claims

14.  Loss of Benefit

15.  Interruption of Service

16.  Funding of the Plan

17.  Plan Year

18.  Contributions

## SUPPLEMENT TO SUMMARY PLAN DESCRIPTION

## STATEMENT OF ERISA RIGHTS

As a Participant in   LEVINE LIFE ASSOCIATES, INC. PROFIT-SHARING PLAN

you are entitled to certain rights and protections under the Employee Retirement Security Act of 1974. ERISA provides that all plan participants shall be entitled to:

i) Examine, without charge, at the plan administrator's office and at other locations, all plan documents, including insurance contracts, collective bargaining agreements and copies of all documents filed by the plan with the U.S. Department of Labor, such as annual reports and plan descriptions.

ii) Obtain copies of all plan documents and other plan information upon written request to the plan administrator. The administrator may make a reasonable charge for the copies.

iii) Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary financial report.

iv) Obtain, once a year, a statement of the total pension benefits accrued and the nonforfeitable (vested) pension benefits (if any) or the earliest date on which benefits will become nonforfeitable (vested). The plan may require a written request for this statement, but it must provide the statement free of charge.

v) File suit in a federal court, if any materials requested are not received within 30 days of the participant's request, unless the materials were not sent because of matters beyond the control of the administrator. The court may require the plan administrator to pay up to $100.00 for each day's delay until the materials are received.

In addition to creating rights for plan participants, ERISA imposes obligations upon the persons who are responsible for the operation of the employee benefit plan.

These persons are referred to as "fiduciaries" in the law. Fiduciaries must act solely in the interest of the plan participants and they must exercise prudence in the performance of their plan duties. Fiduciaries who violate ERISA may be removed and required to make good any losses they have caused the plan.

-2-

Your employer may not fire you or discriminate against you to prevent you from obtaining a (pension, welfare) benefit or exercising your rights under ERISA.

If you are improperly denied a (pension, welfare) benefit in full or in part, you have a right to file suit in a federal or a state court. If plan fiduciaries are misusing the plan's money, you have a right to file suit in a federal court or request assistance from the U.S. Department of Labor. If you are successful in your lawsuit, the court may, if it so decides, require the other party to pay your legal costs, including attorney's fees.

If you have any question about this statement or your rights under ERISA, you should contact the plan administrator or the nearest Area Office of the U.S. Labor-Management Services Administration, Department of Labor.

<u>SUMMARY PLAN DESCRIPTION</u>
<u>FOR</u>
<u>LEVINE LIFE ASSOCIATES, INC.</u>
<u>PROFIT SHARING TRUST</u>

1.  <u>PLAN INFORMATION</u>

Name of Plan:        Levine Life Associates, Inc. Profit-sharing Trust

Start of Plan:       Plan started effective January 1, 1974
                     for eligible employees.

Your Employer:       Levine Life Associates, Inc.
                     203 Boston Post Road
                     Waterford, Connecticut 06385

Employer Tax Identification Number:  Number  06-0902614      has
                     been assigned by the Internal Revenue Service.

Plan Number:         Number  001    has been assigned to the plan
                     by your Employer.

2.   BENEFIT INSURANCE

The government does not require this Plan to buy insurance to cover participant account values in case of termination of the Plan. The 1974 pension law specifically exempts plans of this type from purchasing such insurance. In the event of such termination, every participant would be fully vested in his values under the Plan. Because retirement benefits are derived from accumulated contributions and are subject to investment gains and losses, such retirement benefits cannot be fully determined until actual retirement.

3.   TYPE OF PLAN

The Plan is a profit-sharing pension plan with individual accounts for each participating employee. Contributions are made to the Plan by the employer on behalf of participants and voluntarily by participants themselves. Portions of such contributions may be used to purchase life insurance contracts on behalf of participants. The remaining portions of contributions accumulate in an investment account for each participant. At retirement or termination, a participant is entitled to the vested accumulated values of such life insurance contracts, if any, and the vested accumulated values of contributions remaining in his investment account together with investment interest, gains or losses on each contributions.

4. <u>PLAN ADMINISTRATION</u>

The employer is the Administrator of the Plan. The Administrator is responsible for the operation of the Plan in a uniform and non-discriminatory manner. The Administrator has the rights to make rules and to make decisions concerning the operation of the plan and the eligibility for benefits. The Administrator is also designated to receive all legal papers concerning the plan. The employer's address is shown above and his telephone number is (203) 447-1735

5. <u>TRUSTEES</u>

Trustees have been designated to safeguard the assets of the Plan. They invest such assets according to policy instructions from the employer.

The Trustees are:

| <u>NAME</u> | <u>BUSINESS ADDRESS</u> |
|---|---|
| Michael Levine CLU | 203 Boston Post Road, Waterford, Conn. 06385 |
| Daniel Carter CLU | 203 Boston Post Road, Waterford, Conn. 06385 |

6. **COLLECTIVE-BARGAINING AGREEMENTS**

There are no collective-bargaining agreements which relate to the operation of the Plan.

7. **ELIGIBILITY TO PARTICIPATE**

All employees of your employer are eligible to participate in the Plan on the plan effective date, or on the first day of any subsequent month, they meet all of the following requirements:

(a) have attained age 25 (nearest birthday)

(b) have completed 1 year of full-time service. You are considered full-time if you can be expected to complete 1,000 hours of service during the first 12 months of service with your employer.

8. **NORMAL RETIREMENT**

Each participant is entitled to receive retirement benefits from this Plan on the first of the month following the attainment of age 65. Such benefits are derived from the accumulated values of life insurance contracts, if any, on his behalf and the accumulated values of contributions on his behalf remaining in an investment fund together with investment interest, gains or losses on such contributions.

9.   NORMAL FORM OF RETIREMENT BENEFIT

The normal form of retirement benefit is a monthly joint and survivor
income for the life of the participant and his spouse beginning at his
actual retirement date.  50% of such monthly income will be continued
to his surviving spouse if the participant dies while receiving such
monthly income.  In lieu of receiving monthly payments in the normal
form, the participant may elect another method to receive this benefit.
His election must be made at least 31 days prior to retirement.  Other
methods of receiving a retirement benefit are to receive accumulated
values as a lump sum or have values applied under any optional annuity
payment types provided by the insurance company.

10.   DEFERRED RETIREMENT

With the consent of the employer, an active participant may postpone
his retirement beyond his normal retirement date.  Contributions to the
Plan on behalf of such a participant are to be continued until his
actual retirement.

11.   DISABILITY

A participant will be considered disabled when such disability has
been certified by a physician and approved by the Trustees.  He
shall be 100% vested in the values under the Plan.  These values can
be paid to him in a lump sum or can be applied under any of the
annuity forms provided by the insurance contracts.

12.   DEATH

Should a participant die prior to actual retirement, the benefits
provided by the life insurance contracts, if any, shall become pay-
able to his beneficiary.  His beneficiaries shall also receive the
accumulated values of the remaining contributions and investment
interest, gains or losses on such contributions.

13.    CLAIMS

All claims for any benefits under the Plan should be presented in
writing to the Administrator. The Administrator shall provide the
claimant with any documents necessary for submission of a claim.
The Administrator shall forward any claims for life insurance con-
tracts to the life insurance company, which has sole responsibility
for approving such claims. Any appeal of a denied claim should be
presented to the Administrator.


14.    LOSS OF BENEFIT

Benefits are the result of accumulated contributions. Termination
of employment results in the loss of benefits from future contribu-
tions. In addition, part of current accumulated insurance values
and accumulated values of the remaining contributions and investment
interest, gains or losses on such contributions may be lost if not
100% vested. A Participant is always 100% fully vested in the ac-
cumulated values derived from his own voluntary contributions. For
accumulated values derived from employer contributions, a participant
is vested according to the following percentages:

| COMPLETED YEARS OF CREDITED SERVICE | VESTED PERCENTAGE OF VALUES |
|---|---|
| less than 3 years | 0% |
| 3 years but less than 4 years | 30% |
| 4 years but less than 5 years | 40% |
| 5 years but less than 6 years | 50% |
| 6 years but less than 7 years | 60% |
| 7 years but less than 8 years | 70% |
| 8 years but less than 9 years | 80% |
| 9 years but less than 10 years | 90% |
| 10 years or more | 100% |

Employees shall be credited with service from the date of their hire if they begin employment on or after the Effective Date of this Amendment (....January 1, 1976....). Those employees hired before the Effective Date of this Amendment ( January 1, 1976 ) shall be credited with service beginning with their entrance into the Prior Plan.

15. <u>INTERRUPTION OF SERVICE</u>

When a participant terminates employment for a reason other than death, disability or retirement, he shall be entitled to a distribution of his vested accumulated values on...December 31st... occurring on or after his termination. The percentage of vested values were shown in the preceding paragraph.

A participant will forfeit his non-vested values under the plan when a "one year break in service" has occurred. A "one year break in service" occurs if a participant does not return to work and complete 500 hours of service during the next 12 month period starting with the annual anniversary of his date of employment. If a former employee returns to work after such a "one year break in service" he shall be considered a new employee under the Plan.

For Example: Jack Smith will be hired June 1, 1977.    He will begin participating in the Plan    June 1,    1978.  He terminated employment February 15, 1982.      His "one year break in service" begins June 1, 1982.........and ends May 30, 1983.........at which time he losses any non-vested benefits to which he may have been entitled. However, as of December 31, 1982  he would receive his...50%... (based on..5.. years of service) vested values derived from employer contributions, and the full accumulated value of any voluntary contributions.

There are some special rules concerning a Leave of Absence, which can be granted for reasons such as illness, injury, disability, military service, illness in the family, temporary reduction of work force or training. A Leave of Absence can be granted for a period of up to six months and can be renewed for additional periods of up to six months each, such that the total Leave of Absence does not exceed three years.

The employer shall make required contributions to the Plan on behalf of a participant on Leave of Absence during the duration of his Leave of Absence based on his effective compensation as determined in the Plan. Should the participant not return to active full-time employment from a Leave of Absence for any reason other than his death, his employment shall have deemed to have ceased as of the date the Leave of Absence ends. At that date, he shall be treated as retired, disabled or terminated according to which status applies. His vested percentage and the values of his accumulated benefits shall be calculated as of the date it is determined that he is not returning to employment with the employer.

16.    FUNDING OF THE PLAN

The Administrator may direct the Trustees to purchase life insurance contracts on behalf of the participant.  Such contracts may be purchased from Continental Assurance Company, or any other subsidiary of CNA Financial Corporation, CNA Plaza, Chicago, Illinois 60685.  The amount of such life insurance may be based on the rates and underwriting practices of the insurance company and may be that purchased by upto 49% of the contributions on behalf of a participant according to the Plan.

The Trustee shall invest all monies not used to purchase Life Insurance in accordance with the provisions of the Trust.

17.    PLAN YEAR

Records of contributions and values shall be kept for each plan year. Each plan year ends December 31st of each calendear year.

18.    CONTRIBUTIONS

EMPLOYER CONTRIBUTIONS:

Employer contributions are determined by the Employer.  Employer contributions are first allocated among the effective compensation of all participants in excess of the wage base of $13,200.  Such allocation cannot exceed 7% of the effective compensation in excess of such wage base.  The remaining employer contributions are allocated among all participants in accordance with total effective compensation.

EMPLOYEE CONTRIBUTIONS:

Total employee contributions may not exceed 10% of the compensation less any voluntary contribution made to any other qualified plan since he became a participant.  The minimum annual voluntary contribution is $240.

LOUIS LEVINE AGENCY, INC.
PROFIT-SHARING PLAN & TRUST

SUMMARY PLAN DESCRIPTION

# TABLE OF CONTENTS

## I

## INTRODUCTION TO YOUR PROFIT SHARING PLAN

## II

## GENERAL INFORMATION ABOUT YOUR PROFIT SHARING PLAN

General Plan Information                          2

Employer Information                             2

Plan Administrator Information                   3

Plan Trustee Information                         3

Service of Legal Process                         3

## III

## PARTICIPATION IN YOUR PROFIT SHARING PLAN

Eligibility Requirements                         4

Participation Requirements                       5

Excluded Employees                               6

## IV

## CONTRIBUTIONS TO YOUR PROFIT SHARING PLAN

Employer Contributions to the Plan               6

Your Share of Employer Contributions             6

Compensation                                     7

Forfeitures                                       7

Your Voluntary Contributions to the Plan                                    8

Your Qualified Voluntary Employee Contributions ("QVECs")                   9

Transfers From Qualified Plans (Rollovers)                                  10

V

## BENEFITS UNDER YOUR PROFIT SHARING PLAN

Distribution of Benefits Upon Normal Retirement                            11

Distribution of Benefits Upon Late Retirement                              11

Distribution of Benefits Upon Death                                        11

Distribution of Benefits Upon Disability                                   13

Distribution of Benefits Upon Termination of Employment                    13

Vesting in Your Profit Sharing Plan                                        14

Benefit Payment Options                                                    15

Other Distributions From Your Plan                                         16

Treatment of Distributions From Your Plan                                  17

Domestic Relation Orders                                                   17

Pension Benefit Guaranty Corporation                                       18

VI

## YOUR PLAN'S 1-YEAR BREAK IN SERVICE RULES

1-Year Break in Service Rules                                             18

## VII

## YOUR PLAN'S "TOP HEAVY RULES"

Explanation of "Top Heavy Rules"                                    20


## VIII

## LOANS

Loan Requirements                                                  21


## IX

## CLAIMS BY PARTICIPANTS AND BENEFICIARIES

The Claims Review Procedure                                        22


## X

## STATEMENT OF ERISA RIGHTS

Explanation of Your ERISA Rights                                   24


## XI

## AMENDMENT AND TERMINATION OF YOUR PROFIT SHARING PLAN

Amendment                                                         26
Termination                                                       26

LOUIS LEVINE AGENCY, INC.
PROFIT-SHARING PLAN & TRUST

SUMMARY PLAN DESCRIPTION

I
INTRODUCTION TO YOUR PROFIT SHARING PLAN

Louis Levine Agency, Inc. has amended your Profit Sharing Plan as of January 1, 1984. Louis Levine Agency, Inc. continues to recognize the efforts you have made to its success. This amended Profit Sharing Plan is for the exclusive benefit of eligible employees and their beneficiaries.

The purpose of this Plan is to reward eligible employees for long and loyal service by providing them with retirement benefits.

Each year, between now and your retirement, Louis Levine Agency, Inc. intends to share a portion of its profits with you and other eligible employees. When you retire, you will be eligible to receive the value of the amounts which have accumulated in your account.

Your efforts, together with the efforts of all other employees, contribute to your Employer's profits each year. Contributions to the Plan will generally be made from these Employer profits.

Louis Levine Agency, Inc. may submit this Plan to the Internal Revenue Service for approval. The Internal Revenue Service will issue a "determination letter" to Louis Levine Agency, Inc. approving this Plan as a "qualified" retirement plan, if this Plan meets specific legal requirements.

This Summary Plan Description is a brief description of your Plan and your rights, obligations, and benefits under that Plan. Some of the statements made in this Summary Plan Description are dependent upon this Plan being "qualified" under the provisions of the Internal Revenue Code. This Summary Plan Description is not meant to interpret, extend, or change the provisions of your Plan in any way. The provisions of your Plan may only be determined accurately by reading the actual Plan document.

A copy of your Plan is on file at your Employer's office and may be read by you, your beneficiaries, or your legal representatives at any reasonable time. If you have any questions regarding either your Plan or this Summary Plan Description, you should ask your Plan's Administrator. In the event of any discrepancy between this Summary Plan Description and the actual provisions of the Plan, the Plan shall govern.

1

II

GENERAL INFORMATION ABOUT YOUR PROFIT SHARING PLAN

There is certain general information which you may need to know about your Plan. This information has been summarized for you in this section.

1. General Plan Information

The name of your Plan is Louis Levine Agency, Inc. Profit-sharing Plan & Trust.

The original Plan name was Louis Levine Agency, Inc. Profit Sharing Trust.

Your Employer has assigned Plan Number 001 to your Plan.

The amended provisions of your Plan become effective on January 1, 1984.

Your Plan's records are maintained on a twelve-month period of time. This is known as the Plan Year. The Plan Year begins on January 1st and ends on December 31st.

Certain valuations and distributions are made on the Anniversary Date of your Plan. This date is December 31st.

The contributions made to your Plan by your Employer shall be held and invested by the Trustee of your Plan.

Your Plan and Trust shall be governed by the laws of the State of Connecticut.

2. Employer Information

Your Employer's name, address, and identification number are:

Louis Levine Agency, Inc.
203 Boston Post Road
Waterford, Connecticut 06385
06-0859007

Your Plan allows other employers to adopt its provisions. You or your beneficiaries may examine or obtain a complete list of employers, if any, who have adopted your Plan by making a written request to the Administrator.

2

3. Plan Administrator Information

The name, address, and business telephone number of your Plan's Administrator are:

Louis Levine
Agency, Inc.
203 Boston Post Road
Waterford, Connecticut 06385
(203) 447-1735

Your Plan's Administrator keeps the records for the Plan and is responsible for the administration of the Plan. Your Plan's Administrator will also answer any questions you may have about your Plan.

4. Plan Trustee Information

The names of your Plan's Trustees are:

Herbert Levine
Michael Levine
Daniel M. Carter

The Trustees shall collectively be referred to as Trustee throughout this Summary Plan Description.

The principal place of business of your Plan's Trustee is:

203 Boston Post Road
Waterford, Connecticut  06385

Your Plan's Trustee has been designated to hold and invest Plan assets for the benefit of you and other Plan participants.

5. Service of Legal Process

The name and address of your Plan's agent for service of legal process are:

Louis Levine Agency, Inc.
203 Boston Post Road
Waterford, Connecticut  06385

3