# EXHIBIT K

LLIA, Inc.
914 Hartford Turnpike
Waterford, Connecticut 06385

March 1, 1995

Mr. Barry B. Levine

New London, Connecticut 06320

Dear Mr. Levine:

As you are aware, LLIA, Inc. (the "Corporation") and Barry B. Levine ("Levine") are parties to a certain Employment Agreement made effective as of January 1, 1993 (the "Employment Agreement").

Paragraph 5 of the Employment Agreement requires the Corporation to provide Levine with fringe benefits comparable to the fringe benefits provided to executive officers of the Corporation, including but not limited to disability insurance coverage. Levine was removed from the Corporation's long-term disability policy maintained by the Connecticut Business Industry Association/Aetna Insurance Company. It has come to our attention that Levine may be disabled.

In that connection, the Corporation and Levine have mutually agreed to the following terms:

1. The Corporation will agree to submit or allow Levine to submit a claim to its general liability carrier and/or its errors and omissions carrier concerning damages arising from the inadvertent removal of Levine from the disability insurance plan. Further, the Corporation agrees to cooperate with the processing of the claim. *[handwritten: TO BE SUBMITTED TO EMPLOYEE BENEFITS CARRIER - TRAVELER, 3/3/95]*

2. If either carrier accepts coverage and pays damages, then the Corporation shall be entitled to reduce its next owing and subsequent payments to Levine pursuant to the Employment Agreement according to the following schedule:

Mr. Barry B. Levine
March 1, 1995
Page 2

|     | Net Damages Paid | Reduction Under Employment Agreement |
| --- | --- | --- |
| (a) | $54,000 or more | $18,000 |
| (b) | Less than $54,000 but more than $36,000 | The Corporation shall be entitled to a dollar for dollar reduction of any net amounts paid by the carrier in excess of $36,000, but in no event shall such reduction exceed $18,000. |

As used in this Paragraph 2, "net" damages means the gross damages paid by the carrier reduced by costs and expenses incurred by Levine in the course of collecting such damages.

3. If the carrier refuses coverage, or, if the net damages are less than $36,000, then the Corporation shall increase the compensation paid to Levine under the Employment Agreement by $36,000 less the net damages paid by the carrier and shall pay such amount to Levine in thirty-six (36) equal monthly installments commencing after the final payment to Levine under the Employment Agreement.

4. If the carrier does not deny coverage of any claimed disability, but Levine is unable to prove to the satisfaction of such carrier that Levine is disabled, the Corporation shall have no liability to Levine in excess of the amounts currently owed to Levine pursuant to the Employment Agreement.

In consideration of the foregoing, Levine, for himself, his heirs, executors, administrators, successors and assigns, hereby remise, release, covenant not to sue and forever discharge the Corporation, its affiliates, subsidiaries, officers, agents, employees, attorneys, insurers, directors, shareholders, representatives, predecessors, successors and assigns, jointly and severally, from all actions, claims, counterclaims, causes of action whatsoever, and all suits, expenses, setoffs, rights, losses, debts, dues, sums of money, accounts, reckonings, damages, executions, claims and demands whatsoever, at law or in equity, now existing or hereafter arising or resulting from the Corporation's failure to provide Levine with disability insurance coverage pursuant to Paragraph 5 of the Employment Agreement.

Except as modified by the foregoing, the Employment Agreement remains in full force and effect unmodified by the terms hereof; provided, however, that Levine understands that no long-

Mr. Barry B. Levine
March 1, 1995
Page 3

term disability coverage will be provided to Levine in the future pursuant to Paragraph 5 of the Employment Agreement.

By accepting this letter, Levine hereby acknowledges the following: (i) the Corporation has advised Levine to obtain legal counsel to review this letter, and in fact Levine has engaged such counsel for such purpose; (ii) Levine and his counsel have read, understood and agreed to this letter after careful reflection; and (iii) Levine and his counsel have had a copy of this letter for at least one (1) week prior to accepting its terms.

Assuming the foregoing correctly sets forth our mutual understanding concerning this matter, please indicate acceptance by executing on the line below.

Very truly yours,

LLIA, Inc.

By: _____
    Gerald U. Levine, President

READ, ACCEPTED AND AGREED TO:

_____                        Date: March 2, 1994
BARRY B. LEVINE

g:\steve\levine\corp\barr0301.95

## EMPLOYMENT AGREEMENT

Agreement made effective as of January 1, 1993, by and between LLIA, Inc., a Connecticut corporation (the "Company"), and BARRY B. LEVINE, of New London, Connecticut (the "Employee").

## W I T N E S S E T H

WHEREAS, the Company desires to employ the Employee for the period and on the terms and conditions hereinafter set forth; and

WHEREAS, Employee desires to be employed by the Company as described below;

NOW, THEREFORE, in consideration of the mutual covenants and promises of the parties as set forth in this Agreement, the Company and the Employee agree as follows:

1. **Employment**. The Company employs Employee to be available to render miscellaneous services to the Company as may be requested by the Company relative to investment and insurance products.

2. **Term of Employment**. The term of this Agreement shall commence on January 1, 1993 and shall continue for a period of seven (7) years.

3. **Compensation**.

(a) In consideration for his availability and performance of services, the Company shall pay to Employee during the term of this Agreement a salary of $45,760.00 per year payable in equal installments of $880.00 per week. The Company may, in its sole discretion, pay Employee's salary in other periodic installments but no less frequently than monthly. In the event the Company elects to pay Employee less frequently than weekly, the Company shall notify Employee in writing of the time of payment. In the event the Company shall not pay Employee within ten (10) days of the payment therefor, the Company shall be in default under this Agreement.

(b) Notwithstanding the foregoing, beginning with the first weekly salary due Employee on or after April 1, 1994, and continuing for the next 51 weekly payments thereafter, which payments shall be made over the period running from approximately April 1, 1994 through March 31, 1995, and for this period only, the Company shall pay to Employee an annual salary of $28,288.00. Such salary shall be paid in equal installments of $543.00 per week, or in other periodic payments, but no less frequently than monthly, subject to the terms and conditions of the preceding paragraph. Employee's compensation hereunder shall not be reduced on account of payments required to be made to the Employee under Section (4) hereof.

4. **Stock Purchase.** On or before February 28, 1994, the Company shall redeem, and Employee shall surrender, all of Employee's legal and beneficial interests in all stock and stock rights in the Company subject to payment of the purchase price of $16,295.00 therefor and the fulfillment by the Company of the terms and conditions of this Agreement. In addition to Employee's weekly salary, the Company shall pay to Employee the purchase price for such stock, in weekly installments, with interest on the unpaid balance at the rate of 9% per annum compounded monthly. Such purchase price shall be paid in equal installments of $337.00, per week. The first such payment shall be made at the same time as and with the payment of compensation to Employee under Section 3(b) hereof, and continuing with each such payment of compensation, until such purchase price is paid in full.

5. **Benefits.** In consideration for his services hereunder, the Company agrees to pay Employee fringe benefits comparable to the fringe benefits provided to executive officers of the Company, including group health, dental, accident, life and disability insurance for Employee, and, as applicable, his dependents, and malpractice insurance for Employee, including deductibles, throughout the term of this Agreement.

6. **Expenses.** The Company shall pay all fees, costs and expenses associated with the Employee's licenses which may be required for the sale or servicing of investment and insurance products and shall pay 50% of Employee's CLU dues each year.

7. **Additional Provisions.** Employee shall work at his own schedule with no restrictions and at such location as Employee shall select. There shall be no fixed policy on vacation or sick leave and Employee shall be paid his salary irrespective of the number of hours worked hereunder.

8. **Alternate Employment.** Employee is expressly authorized to engage in alternate employment either as a sole proprietor, an independent contractor or employee of any other company, at any time, and from time to time, during the term of this Agreement. There is to be no non-competition clause in this Agreement.

9. **Revised Compensation.** If, at any time, the Company and Employee shall agree in writing to the employment of Employee on a full time basis of more than thirty (30) hours per week with specifically identified duties and responsibilities for the sales or servicing of investment and insurance products, Employee shall be entitled to receive such compensation as shall be at such time negotiated, but in no event shall such compensation be less than the amount provided hereunder.

10. **Termination.** Except as provided in Section 11, this Agreement shall not be terminated by the Company at any time of for

any reason during the term hereof. Employee may terminate this Agreement at any time by the delivery of written notice to the President of LLIA, Inc. as provided in the notice provision hereunder.

11. **Death**. Upon the death of Employee, Employee's employment shall terminate; provided, however, that his compensation and the fringe benefits applicable to his dependents shall continue for the term of this Agreement: Such compensation shall be paid to Employee's estate, or to such beneficiaries as may be listed on a Schedule A delivered to the Company and attached hereto.

12. **Indemnification**. The indemnification provisions set forth in an Indemnification Agreement entered into by and among Employee, the Company, its subsidiaries and affiliates dated February 28, 1994, are expressly incorporated herein, and made a part hereof.

13. **Confidentiality**. Except as the Company may otherwise permit or direct in writing, Employee shall not disclose any information, knowledge or data concerning the Company which he has obtained from the Company during the term or in his previous employment by the Company if that information, knowledge or data is treated as confidential by the Company or any of its subsidiaries and is not otherwise in the public domain or required by law to be disclosed.

14. **Miscellaneous**.

(a) This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the Company and shall inure to the benefit of the heirs, next-of-kin, executors and legal representatives of Employee. This Agreement may not be assigned.

(b) This Agreement may not be amended, supplemented, canceled or discharged except by written instrument duly executed by the Company and Employee.

(c) If any provision of this Agreement, as applied to either party or to any circumstances shall be finally determined by a court to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Agreement or the validity or enforceability of this Agreement.

(d) Any notice, request or other communication required or permitted under this Agreement shall be in writing and given or made by physical delivery, electronic transmission or by registered or certified mail, postage prepaid, return receipt requested or by overnight carrier addressed to the other party. All such notices shall be addressed as follows:

3

If to Employee:

Barry B. Levine
~~597 Pequot Avenue~~ P.O. BOX 576
~~New London, Connecticut 06320~~ WATERFORD, CT 06385

If to Company:

LLIA, Inc.
914 Hartford Turnpike
Waterford, Connecticut 06385
Attention: Gerald Levine

Any party may change the persons and addresses to which notice, requests or other communications are to be sent by giving written notice of such change to the other party in the manner provided herein for giving notice. Notices shall be effective upon the receipt in the case of physical delivery, overnight carrier or electronic transmission and three (3) days after receipt deposit in the U.S. mails in the case of mailing.

(e) The waiver by either party hereto of the breach of any provision of this Agreement by the other party hereto shall not operate to be construed as a waiver of any subsequent breach of such other party.

(f) This Agreement is to be governed by and interpreted in accordance with the laws of the State of Connecticut applicable to agreements made and to be performed within that State.

(g) The headings contained in this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

(h) This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

(i) Neither the expiration of the Term or the termination of this Agreement shall impair or otherwise affect any obligations which have accrued prior thereto (including any right to sue for damages or injunctive relief). The provisions of Sections 8, 12 and 13 shall survive the fulfillment of the parties' other obligations pursuant to this Agreement and/or termination of this Agreement for any reason.

(j) Subject to Section 12 hereof, any dispute between the parties hereto or Employee's heirs, executors or personal representatives arising out of or in connection with this Agreement or any breach of this Agreement may be determined and settled by arbitration in the State of Connecticut (or any other state in

4

which the Company may at any time otherwise be incorporated) and in accordance with the rules then in effect of the American Arbitration Association. In the event of any such arbitration or in the event that any such dispute is submitted to a court of competent jurisdiction, the prevailing party in any such action shall be promptly reimbursed in full by the other party for all legal fees and expenses incurred by the prevailing party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

WITNESSETH:

LLIA, INC.

By _____
Name: Geir's lene
Title: President

By _____
Barry B. Levine

5