# EXHIBIT L

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT, is to be effective as of January 1, 1992 (the "Agreement") by and between LLIA, Inc., a Connecticut corporation with its executive offices at 914 Hartford Turnpike, Waterford, Connecticut (the "Company"), and MICHAEL LEVINE, residing at 747 Pequot Avenue, New London, Connecticut ("Levine").

## WITNESSETH

WHEREAS, Levine is a shareholder of the Company, and an insurance agent/broker engaged in the sale of individual and group property, casualty, life, health and accident insurance and in estate planning and other activities related thereto; and

WHEREAS, Levine is retiring as a full-time employee of the Company, and in connection therewith, the Company, in accordance with the Stock Redemption Agreement dated as of January 1, 1993, by and among Levine, the Company, Herbert Levine, Gerald Levine, Daniel M. Carter, Andrew Levine, Barry Levine, Louis Levine Agency, Inc., Levine Financial Services, Inc. f/k/a Levine Life Associates, Inc., Northeast Surety, Inc. and Benefit Services, Inc. (the "Stock Redemption Agreement") is purchasing all of Levine's shares of stock in the Company; and

WHEREAS, the Company desires to retain Levine's services for the period and on the terms and conditions hereinafter provided; and

WHEREAS, Levine is agreeable to provide services for the Company for the period and on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises and covenants herein contained and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Company and Levine agree as follows:

1.    Employment.

    (a)    The Company hereby engages Levine as an employee of the Company ("Employment") and Levine hereby accepts the Employment.    Levine agrees to (i) render such services and (ii) perform such duties for and with respect to the Company and its present and future parents, subsidiaries and divisions and entities directly or indirectly controlled by the Company (the "Affiliated Entities"), for the period and upon the terms and conditions set forth in this Agreement.

CONFIDENTIAL

000975

(b)   Levine shall have absolute discretion to select the products and services he will sell and the entity that will supply such products and services to his customers. Levine shall not be obligated to sell any designated amount of any products or services or to sell products or services which are provided by any particular entity; provided, however, Levine cannot obligate the Company without their permission in regards to any commitment to a general agency contract. Notwithstanding the foregoing, so long as this Agreement shall not have been terminated by either party, Levine will represent himself as an employee of the Company and place all business in the Company's name with Levine identified as producing agent; except for group insurance which is to be placed in the name of the Employer Health Care Coalition with Levine as producing agent.

(c)   In order to induce the Company to enter into this Agreement on the terms and conditions set forth herein, Levine hereby represents and warrants to the Company that he is not a party to, or bound by, an agreement, arrangement, or understanding, written or otherwise, which prohibits or in any manner restricts his ability to enter into and fulfill his obligations under this Agreement and/or to be employed by the Company.

2.   Term.   This Agreement shall commence as of January 1, 1992 and, unless otherwise extended or sooner terminated as provided herein, shall continue for a period of three (3) years.   Upon the termination of the initial term, this Agreement shall continue for consecutive one year terms, unless and until either party terminates this Agreement, as provided herein.

3.   Place of Employment.   The principal place of employment of Levine shall be at 914 Hartford Turnpike, Waterford, Connecticut.

4.   Compensation and Related Matters.

(a)   The Company shall pay Levine no base salary.

(b)   The Company shall pay Levine a commission (the "Commission Payments") equal to 50% of the Company Commission (as defined herein) for all products and services initiated and sold by Levine from January 1, 1992 forward.   The Company's obligation to pay Levine Commission Payments shall survive the expiration of the Term, and any extension thereof, or termination of this Agreement for any reason whatsoever (including, but not limited to, resignation by Levine, or his death or disability), and shall not be diminished or reduced for any reason whatsoever following the expiration of the Term

2

CONFIDENTIAL

000976

or termination of this Agreement, but shall continue to be in an amount equal to 50% of Company Commissions.

If Levine terminates employment other than by death or disability, all cases initiated and\or sold by Levine from January 1, 1992 forward shall be considered Levine's cases and not those of the Company. If any of these cases are term life insurance and are converted by Levine to universal or whole life insurance, then 66.67% of the Company Commission, both first year and renewal, shall belong to Levine. If such cases are converted by the Company, its agents or employees, but not by Levine, then 25% of the Company Commission, both first year and renewal, shall belong to Levine.

On the other hand, if any of these cases are converted to universal or whole life after Levine's death or disability, then 25% of the Company Commission, both first year and renewal, shall belong to Levine.

In the event of Levine's death, the Commission Payments shall be paid to Levine's estate or his beneficiaries, as listed on Exhibit A. For purposes of this Agreement, "Company Commission" shall mean the aggregate commissions, including, but not limited to, first year and renewal commissions, paid to the Company from any and all sources in respect of any products sold by Levine during the Term plus any group cases sold prior to the effective date of this Agreement or listed under Exhibit B. Levine and/or his beneficiaries are to be given monthly copies of all the commission statements for the previous month.

(c)    In addition to the Commission Payments to Levine during the Term hereof, the Company shall pay for Levine's fringe benefits. Such fringe benefits shall be comparable to those provided to executive officers of the Company, from time to time, including, without limitation, life, health, accident, disability, malpractice deductibles and dental insurance benefits.

(d)    During the first two years of the Term, the Company shall continue to provide Levine with the 1991 Mercedes Model 300 Automobile owned by the Company and previously provided to Levine in his capacity as an employee of the Company. After the second year and thereafter on the first day of every fifth year, the Company shall provide Levine with the use of a new automobile, selected by Levine, having a replacement value equal to $30,000 including trade; provided, however, if Levine so elects, the Company shall provide Levine with a new automobile of value in excess of $30,000 upon receipt by the Company from Levine of any amount in excess of $30,000. If Levine elects a replacement vehicle having a value in excess

3

CONFIDENTIAL

000977

of $30,000, the Company shall place title of the automobile in the name of both Levine and the Company, based upon their respective interests in the automobile. Notwithstanding the foregoing, the Company shall not be responsible for a delay in providing such car if such delay was caused by factors outside of the Company's control, including, without limitation, the inability of the dealership to provide the car to the Company on a timely basis. Within two weeks of the presentation of appropriate receipts therefor, the Company shall pay (i) all reasonable and ordinary costs and expenses for the maintenance, including, but not limited to, insurance, for such automobile and its operation and (ii) all gasoline expenses and the cost, not to exceed $75.00 per month, of a car telephone and related car telephone expenses. If the Company leases the car for Levine, then upon the termination as stated above, Levine shall receive as bonus compensation the equivalent book value for such automobile.

Upon termination of Levine's employment or the expiration or termination of the Term, for any reason whatsoever, including, but not limited to, resignation by Levine, the Company shall convey to Levine good and marketable title to the automobile then provided to Levine, free and clear of any liens and encumbrances or other similar restrictions. Upon the death of Levine, the Company shall convey to Levine's estate good and marketable title to the automobile then provided to Levine, free and clear of any liens, encumbrances or other similar restrictions.

(e)    It is contemplated that, in connection with his Employment hereunder, Levine may be required to incur business, entertainment and travel expenses. The Company agrees to reimburse promptly Levine in full for all reasonable out-of-pocket business, entertainment and other related expenses (including all expenses of travel and living expenses while away from home on business or at the request of, and in the service of, the Company) incurred or expended by Levine during the Term incident to the performance of his duties hereunder.

(f)    Levine shall work at his own schedule, with no restrictions.

(g)    The Company shall pay for Levine's licenses, dues, continuing education /seminars and other items of such nature.

(h)    The Company shall provide to Levine and his spouse, at any time and notwithstanding the termination of Levine's Employment for any reason, the unqualified right to purchase from the Company, or any of its affiliates, life, health, disability, casualty, and liability insurance, on Levine or

4

**CONFIDENTIAL**

000978

his spouse, or any property they or either one may own, net and free from all commissions typically collected by the Company, or any or its affiliates. This provision shall remain valid and in force notwithstanding the termination of this Agreement, for the lifetimes of Levine and his spouse, and the survivor.

5.    <u>Termination by the Company or by Levine</u>

(a)    The Company shall have the right, at any time, to terminate Levine's Employment for any reason. Levine shall have the right, at any time, to resign his Employment hereunder; provided, however, that if Herbert Levine is employed by the Company, then Levine's Employment shall not be terminated on or before Herbert Levine's employment shall be terminated.

(b)    In the event Levine's Employment is terminated for any reason whatsoever, or he resigns, Levine shall be entitled, at the Company's expense, to copies of all files, records, data and the like, including financial information regarding premiums and payments, relating to customers and cases serviced by Levine at any time prior to his termination or resignation including his previous employment with the Company and with Levine Life Associates, Inc. and Levine Financial Services, Inc. (the "Levine Files"). In the event that the Company or any holder of the Levine Files shall fail to deliver the Levine Files to Levine within 15 days of the termination of Levine's Employment, or his resignation hereunder, the Company agrees that Levine shall be entitled to all relief, in law or in equity, to obtain immediate access to such files, including the entry of one or more court orders for seizure of such records, specific performance in the delivery of such records, and a temporary restraining order and injunctive relief against the transfer, wrongful withholding or destruction of such records, as further provided in paragraph 10 hereunder.

In the event that the Company is a party to any employment or consulting agreement with Herbert Levine entered into in connection with the redemption of Herbert Levine's shares of stock in the Company, the Company shall be required to enter into a consulting agreement with Levine, which consulting agreement shall provide for terms (including, but not limited to, compensation) substantially the same as, and in no event less favorable than, the terms of the employment or consulting agreement entered into between the Company and Herbert Levine.

If Herbert Levine is provided benefits, specifically, but not limited to, health insurance, Levine shall, if Levine's

5

CONFIDENTIAL

000979

Employment is terminated, or if Levine resigns, be provided the same benefits for the same period of time as the Company shall provide to Herbert Levine.

Notwithstanding the foregoing, Levine and his spouse shall be provided health insurance, which shall include, but not be limited to, medical and dental insurance coverage, which is the same as any corporate executive for a period of no less than five (5) years from January 1, 1993.

6. **Confidentiality**. Except as the Company may otherwise permit or direct in writing, Levine will not disclose any information, knowledge or data concerning the Company, which he has obtained from the Company during the Term, or in his previous employment by the Company, if that information, knowledge or data is treated as confidential by the Company or any of its subsidiaries and is not otherwise in the public domain or required by law to be disclosed. Notwithstanding the foregoing, upon the termination of Levine's employment by the Company or Levine, Levine shall owe no obligation to the Company to keep the Levine Files confidential, and the Company shall have no claim against Levine arising out of Levine's use of such files.

7. **Non-Competition**. The parties, for their heirs, successors and assigns, acknowledge and agree that there is no non-competition clause in this Agreement.

8. **Redemption or Purchase of Herbert Levine's Stock**. In the event that during the Term, the Company redeems Herbert Levine's stock in the Company and the Company enters into an employment or consulting agreement with Herbert Levine, which agreement contains terms more favorable than the terms contained in this Agreement, then such terms which are more favorable shall automatically, and without the need for additional action or writing, be incorporated into this Agreement in favor of Levine, and this Agreement shall be deemed to have been so amended.

9. **Indemnification**. The indemnification provisions set forth in the Indemnification Agreement entered into by and among the Employee, Company, its subsidiaries and affiliates dated February 28, 1994, are expressly incorporated herein, and made a part hereof.

10. **Liquidated Damages/Specific Performance**. The Company recognizes that irreparable harm would be caused to Levine if the Company shall breach any term or condition of this Agreement, or violate any covenant, and that damages would be difficult to determine, and/or that in addition to monetary damages, injunctive relief, or specific performance

6

CONFIDENTIAL

000980

may be necessary to remedy the violation of any such terms, conditions or covenants. The Company agrees that the following shall be appropriate remedies in the event of a violation of this Agreement:

(a)    In the event that the Company shall fail to pay to Levine Commission Payments, as provided in paragraph (4), or make any other payments required under the provisions of this Agreement within 21 days of the date for payment therefor, the Company shall pay as liquidated damages interest on such suspended Commission Payments, from the date such amounts are payable to Levine, until such payments are made to Levine, interest at the rate equal to the greater of (i) 9%, or (ii) the applicable federal rate of interest as published by the United States Department of Treasury, or such successor index.

(b)    In the event that the Company shall fail to provide to Levine copies of all Levine Files within 21 days of the termination of Levine's Employment, other than by death or disability, the Company hereby agrees and consents to the seizure by Levine of all Levine Files.  The Company further agrees to waive all claims for damages or injunctive relief on account of such seizure, and to consent to and not contest all legal and equitable relief which Levine, in his sole discretion, deems necessary or advisable so as to obtain the Levine Files, including, but not limited to the entry of an order for injunctive relief, both Temporary, and permanent, or specific performance.  The Company agrees that any such action by Levine shall be an appropriate remedy for its breach of paragraph 5 (b).

11.   Miscellaneous.

(a)    This Agreement shall be binding upon and shall inure to the benefit of the successor and assigns of the Company and shall inure to the benefit of the heirs, next-of-kin, executors and any legal representatives of Levine.  This Agreement may not be assigned by Levine, except as to the rights and remedies which pass to Levine's heirs, executors, administrators and beneficiaries hereunder.

(b)    This Agreement may not be amended, supplemented, canceled or discharged except by a written instrument duly executed by the Company and Levine.

(c)    If any provision of this Agreement, as applied to either party or to any circumstances, shall be finally determined by a court to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provisions of this Agreement or the validity or enforceability of this Agreement.

7


CONFIDENTIAL

000981

(d)   Any notice, request or other communication required or permitted under this Agreement shall be in writing and given or made by physical delivery, electronic transmission or by registered or certified mail, postage prepaid, return receipt requested, or by overnight carrier addressed to the other party.  All such notices shall be addressed as follows:

If to Levine:

> Michael Levine
> 747 Pequot Avenue
> New London, CT   06320

If to the Company:

> LLIA, Inc.
> 914 Hartford Turnpike
> Waterford, CT   06385
> Attn:   Gerald U. Levine

Any party may change the person(s) and addresses to which notice, requests or other communications are to be sent by giving notice of such change to the other party in the manner provided herein for giving notice.    Notices shall be effective upon the receipt in the case of physical delivery, overnight carrier or electronic transmission and three (3) days after receipt deposit in the U.S. Mails, in the case of mailing.

(e)   The waiver by either party hereto of the breach of any provision of this Agreement by the other party hereto shall not operate to be construed as a waiver of any subsequent breach of such other party.

(f)   This Agreement is to be governed by and interpreted in accordance with the laws of the State of Connecticut applicable to agreements made and to be performed within that state.

(g)   The paragraph headings contained in this Agreement are for convenience of reference only and shall no affect the construction of any provision of this Agreement.

(h)    This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

(i)   Neither the expiration of the Term or termination of this Agreement shall impair or otherwise affect any obligations which have accrued prior thereto (including any right to due for damages or injunctive relief).   The provisions of Paragraphs (4) through (10) shall survive the

8

CONFIDENTIAL

000982

fulfillment of the parties' other obligations pursuant to this Agreement and/or termination of this Agreement for any reason.

(j)    Subject to Section 10 hereof, any dispute between the parties hereto or Levine's heirs, executors or personal representatives arising out of or in connection with this Agreement or any breach of this Agreement may be determined and settled by arbitration in the State of Connecticut and in accordance with the rules then in effect of the American Arbitration Association.

(k)    In the event of any arbitration or in the event that any such dispute is submitted to a court of competent jurisdiction, the prevailing party in any such action shall be promptly reimbursed in full by the other party for all legal fees and expenses incurred by the prevailing party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the __1st__ day of _____January_____, 1994.

WITNESSETH:                                LLIA, INC.

_____                   by: _____
                                           its: _____

_____                   _____
                                           MICHAEL LEVINE

CONFIDENTIAL

9

000983

## EXHIBIT A

BENEFICIARY:   Miriam Levine, wife of Michael Levine, if living, otherwise to Barry Levine, son, absolutely.



000984