# EXHIBIT 7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BARRY LEVINE | : | CIVIL ACTION NO. |
| | : | 3:03 CV 148 (SRU) |
|     Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| WEBSTER INSURANCE | : | |
| | : | |
|     Defendant | : | NOVEMBER 5, 2004 |

**DECLARATION OF BARRY LEVINE**

    1. It is possible that I did receive taxable income in lieu of my Profit Sharing Plan contribution in 1988 only (for the Plan year 1987), and if I did it was because I needed money for one of my condominium purchases, not because I was experiencing financial troubles.

    2. I considered Daniel Carter, not my father, Michael Levine, to be the person who made major decisions concerning the Profit Sharing Plan.

    3. During at least one of the times Daniel Carter approached me to have me sign waivers of my Profit Sharing Plan contributions, he told me that he and Gerald Levine were doing the same in order to financially strengthen the Levine companies.

    4. During my leave of absence from the Levine companies in 1992 up to the present day I have continued to advise insurance clients who frequently call me at home with questions.

    5. From the start of my leave of absence in 1992 throughout the 1990's I met personally with my father's insurance client's and advised them concerning their insurance needs.

6. I did not learn until February 2002, when my father gave me the Reallocation of Earnings document (which reflected that my account balance was short of what it should have been), that Daniel Carter and Gerald Levine had not waived for all the years Daniel Carter told me they had.

7. Neither Daniel Carter nor anyone at the Levine companies informed me of the existence of a 401(k) Plan until my father telephoned me in late 1996 and told me that the Levine companies had started the Plan.

      /s/ Barry Levine
BARRY LEVINE