**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

BARRY LEVINE : CIVIL ACTION NO.
: 3:03 CV 148 (SRU)
Plaintiff, :
:
V. :
:
WEBSTER INSURANCE, INC. :
:
Defendant : JANUARY 19, 2005

**PLAINTIFF'S REQUEST FOR LEAVE**
**TO AMEND COMPLAINT TO ADD DEFENDANT**
**UNDER F.R.CIV. P. 21**

## I. INTRODUCTION

Under Federal Rule 21, plaintiff Barry Levine requests leave to file his Amended Complaint, in the form attached, to add the Louis Levine Agency, Inc. as a defendant. For a year-and-a-half, Webster Insurance, Inc. defended Levine's lawsuit as if it were successor in interest to the Louis Levine Agency, Inc. Only now, on summary judgment, has Webster claimed Levine sued the wrong company. Webster's last minute attempt to sandbag Levine with this claim is especially devious considering the number of times it should have raised the issue.

Courts in the Second Circuit allow parties to amend pleadings in the absence of "undue prejudice" to the opponent or bad faith by the movant. Would Webster be *unduly* prejudiced if Levine were allowed to add the Agency as a defendant? No – Webster would not be prejudiced at all. It wouldn't have to conduct

additional discovery and case resolution would not be delayed. Did Levine act in bad faith by not moving to add the Agency sooner? No. From the administrative claim process throughout discovery he relied on Webster's representations that it was the proper defendant. So Levine asks the Court to let him add the Levine Agency.

**II. FACTS AND BACKGROUND**

Levine's suit is for breach of fiduciary duty and wrongful denial of benefits due under the Louis Levine Agency, Inc. Profit Sharing Plan & Trust and the Levine Company Salary Savings Plan (a 401(k) plan). In January 2003, Levine sued Webster Insurance, Inc. as successor in interest to the Louis Levine Agency, Inc., fiduciary of the Levine Plans.

While Levine worked at the Levine Agency, Daniel Carter, an agent of the Profit Sharing Plan's administrator, misled him about contributions the Agency was required to make to Levine's Profit Sharing Plan account. Over about a ten year period, Carter led Levine to believe that he (Carter) and Levine's uncle, Gerald Levine, were waiving the Agency's contributions to their accounts. In February 2002, Levine learned that Carter lied, and that Levine was the only one of the three not receiving contributions. So while Carter and Gerald Levine got their money, Barry Levine lost approximately $230,000 in Plan contributions, exclusive of any investment earnings on that amount.

When the Agency established a 401(k) plan in 1996, it also wrongfully excluded Levine from participation by not telling him of its existence. This caused him to miss out on roughly three years of tax deferred contributions to the 401(k) plan and matching amounts the Agency would have made to his account under the plan's terms.

Discovery lasted throughout 2003. On September 17, 2004, Webster moved for summary judgment. The Motion was fully briefed as of December 7, 2004.

**III. LAW AND ARGUMENT**

Although Rule 15 concerns amendment of pleadings in general, as the Eastern District of New York said in 1973 in *Holtzman v. Richardson,* the "[a]ddition of parties is not governed by F.R.Civ.P. 15 [. . .] but [by] F.R.Civ.P. 21 [. . . .]."[1] Rule 21 says:

**Rule 21. Misjoinder and Non-Joinder of Parties**

> Misjoinder of parties is not ground for dismissal of an action. *Parties may be* dropped or *added* by order of the court on motion of any party or of its own initiative *at any stage of the action* and on such terms as are just [. . . .]

(emphasis added). Even though Rule 15 doesn't apply directly to adding parties, as the Southern District of New York said in *Kaminsky v. Abrams* in 1966, "the

[1] 361 F. Supp. 544, 552 (E.D.N.Y. 1973). *See Sheldon v. PHH Corp.*, 1997 U.S. Dist. LEXIS 2217, No. 96 Civ. 1666 (LAK), 1997 WL 91280, at *3 (S.D.N.Y. Mar 4, 1997)("[A] broad reading of Rule 15 would permit amendments for any purpose, including changes of parties. . . . Nevertheless, the *preferred method* is to consider such motions under Fed. R. Civ. P. 21, which specifically allows for the addition and elimination of parties."), *aff'd on other grounds*, 135 F.3d 848 (2d Cir. 1998)(emphasis added).

liberal standards upon which amendments are to be granted when leave of the Court is required under Rule 15(a) should guide the Court on motions to add parties under Rule 21."[2] Those liberal standards were explained by the Supreme Court as early as 1962 in *Foman v. Davis*:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-- the leave should, as the rules require, 'be freely given.'[3]

The Southern District of New York echoed this in *Eickhorst v. E.F. Hutton Group* in 1990 when it observed, "[U]nless there is good reason to deny a motion to amend, failure to grant it is an abuse of discretion."[4]

But Rule 21 isn't the only rule that applies. As the Southern District of New York said in 1962 in *United States v. Commercial Bank of North America*, "Rule 21 cannot be read alone, but must be read in light of Rules 18, 19, and 20 since [. . .] Rule 21 governs the situation when one or more of [those] rules has been violated."[5] Rule 19 says:

> **Rule 19. Joinder of Persons Needed for Just Adjudication**
>
> **(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action *shall be joined as a*

---

[2] 41 F.R.D. 168, 170 (S.D.N.Y. 1966).
[3] 371 U.S. 178,182, 9 L.Ed. 2d 222, 83 S. Ct. 227 (1962).
[4] 763 F. Supp. 1196, 1203-1204 (S.D.N.Y. 1990).
[5] 31 F.R.D. 133, 135 (S.D.N.Y. 1962).

> *party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties* [. . . .]

(emphasis added). The Southern District of New York held in 1975 in *Robertson v. National Basketball Association* that as a general rule "[D]etermination of whether a party should or must be joined [under Rule 19] can only be arrived at in the context of the particular litigation; a flexible case by case approach must be employed consonant with what the equities and facts require."[6] And in *Freeman v. Midland Bank – New York* in 1976 the Eastern District of New York held specifically that the "basic objectives of [Rule 19] are (1) avoidance of unnecessary or multiple litigation [and] (2) providing complete relief to the parties before the court [. . . .]"[7]

In cases such as *State Teachers Retirement Bd. v. Fluor Corp.*[8] and *MacDraw, Inc. v. CIT Equip. Fin., Inc.*,[9] the Second Circuit has adopted the Supreme Court's liberal *Foman* view allowing amendments absent bad faith or "*undue* prejudice to the opposing party."[10] "Undue prejudice" means, according to the Second Circuit in its 1986 decision *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau*,[11] forcing an opponent to spend time and money on additional discovery. Delay might also cause undue prejudice. The Second Circuit held in

---

6 389 F. Supp. 867, 879 (S.D.N.Y. 1975).
7 419 F. Supp. 440, 451 (E.D.N.Y. 1976).
8 654 F.2d 843, 856 (2d Cir. 1981).
9 157 F.3d 956, 962 (2d Cir. 1998).
10 *Foman* at 182 (emphasis added).
11 786 F.2d 101, 103 (2d Cir. 1986).

1998 in *Krumme v. WestPoint Stevens Inc.* that a delay in the "final disposition of the action" caused by an amendment might be unduly prejudicial.[12] So might a moving party's "unexplained delay" in seeking to amend, as the Second Circuit held in *Evans v. Syracuse City Sch. Dist.*, in 1986.[13] But the Court also pointed out in *Fluor* that a movant's "delay [alone] absent a showing of bad faith" is not enough for a Court to deny the right to amend.[14]

Here Levine's delay was reasonable. Because of its conduct during the administrative claim process Levine sued Webster "as successor in interest to the Louis Levine Agency, Inc. [. . . .]".[15] Throughout the process, Webster's counsel wrote repeatedly that it was the Profit Sharing Plan's "Plan Administrator."[16] Webster never denied liability for the Administrator's actions. Instead, it focused on what it claimed was Levine's inadequate proof that Carter lied to him and Levine's supposed ineligibility to participate in the 401(k) plan.[17] Indeed, during an October 22, 2002 hearing, Webster's counsel said that Levine's "claim was denied *by Webster*," and that denial was a "decision of the administrator."[18] At the hearing, Frederick Erikson, in-house counsel for Webster, said that deciding

[12] 143 F.3d 71, 88 (2d Cir. 1998).
[13] 704 F.2d 44, 47 (2d Cir. 1983).
[14] 654 F.2d 843, 856 (2d Cir. 1981).
[15] January 20, 2003 Complaint at 1.
[16] August 21, 2002 letter from C. Corcoran to T. Moukawsher; October 4, 2002 letter from C. Corcoran to T. Moukawsher; October 18, 2002 letter from C. Corcoran to T. Moukawsher (collectively Exhibit 1).
[17] *Id.*
[18] October 22, 2002 Claim of Barry Levine, hearing transcript at 7-8 (emphasis added). (Exhibit 2).

Levine's benefit claim was "*our* job as administrators."[19] Although the two plans' SPDs name the Louis Levine Agency, Inc. as plan administrator, Webster's conduct prior to Levine's suit reasonably led him to believe that it was the successor in interest to the Agency, and was acting as plan administrator for his claim. And throughout approximately a year-and-a-half of litigation, until its September 17, 2004 Motion for Summary Judgment, Webster did not deny that it was the successor in interest, but rather vigorously defended Levine's suit as if it were the correct defendant.

In Parties' March 26, 2003 Rule 26(f) Report, for instance, Webster never stated that Levine sued the wrong entity. Webster included in its "Defenses and Claims" section only that it

> Denies all of Plaintiff's allegations of fraudulent conduct; denies plaintiff's claim that he was at all relevant times an employee of the Levine Agency; denies Plaintiff's claim that he was an eligible participant in the Levine 401(k) Plan; alleges that Plaintiff knowingly and freely waived contributions to the Plans in question; and alleges that the applicable statutes of limitation have run on all of Plaintiff's claims herein.

Rule 26(f) requires parties to include the "nature and basis of their claims and defenses" in the Report, but Webster never said it had an improper party defense. Webster also could have moved to dismiss Levine's Complaint – the proper procedure for a defendant to follow when sued for the actions of a "separate and

---

[19] *Id.* at 30. (emphasis added).

distinct"[20] corporation. Instead, when Webster answered Levine's Complaint on March 28, 2003 it listed the following Affirmative Defenses:

> **FIRST AFFIRMATIVE DEFENSE**
> The plaintiff lacks authority to maintain claims against Levine Agency as an ERISA-plan administrator for breach of fiduciary duties because plaintiff has sued in his own interest only and not for the benefit of the plan as required by 29 U.S.C. 1104(a)(1).
>
> **SECOND AFFIRMATIVE DEFENSE**
> The plaintiff's claims are not timely brought pursuant to ERISA § 413, 29 U.S.C. §1113 and, therefore, are barred.
>
> **THIRD AFFIRMATIVE DEFENSE**
> The plaintiff fails to state a cause of action upon which relief can be granted.

Interestingly, in its First Affirmative Defense, Webster refers to Levine's supposed "lack of authority" to maintain claims against the Levine Agency in his individual capacity, but again doesn't say that Webster can't be liable for the Agency's breach of fiduciary duty.

Levine's belief that he sued the correct entity was reinforced during Carter's December 19, 2003 deposition when Levine's counsel questioned Carter about Webster's successor liability. What Carter, a former Levine Agency employee and current Senior Vice President at Webster, revealed confirmed that Webster was the

[20] Webster's September 17, 2004 Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 10, 12, 13.

proper defendant: Carter said that Damman Associates, which is now owned by Webster, acquired the Agency's assets *and liabilities* in 2000.[21]

Based on Carter's revelation, on December 29, 2003 Levine moved to compel the production of a February 2000 stock purchase agreement among Webster Financial Corporation (Webster's parent company) and the numerous Levine companies to determine "the *extent of* Webster's successor liability following Webster's purchase of the Levine Agency."[22] Webster ignored another chance to claim that Levine sued the wrong defendant. It instead stated in its objection that the agreement was "completely irrelevant" and "production [of it] would divulge confidential business information developed or acquired after *the association between the Plaintiff and Defendant* had ended."[23] On April 16, 2004, the Court ordered Webster to produce the agreement, which indicates, at best, that the Levine Companies are not liable for the administration of the 401(k) plan.[24] It does not say that Webster is free from liabilities associated with the administration of the Profit Sharing Plan.[25]

Only when Webster moved for summary judgment did it claim it wasn't liable for the Agency's actions by saying that the Agency was a "legally separate

---

21 December 19, 2003 Deposition of Daniel Carter at 69. (Exhibit 3).
22 Levine's December 29, 2003 Memorandum in Support of Plaintiff's Motion to Compel Discovery at 3. (emphasis added).
23 Webster's January 7, 2004 Objection to Plaintiff's Motion to Compel at 4. (emphasis added).
24 Stock Purchase Agreement at 15, ¶3.11 (Bates #015920). (Exhibit 4).
25 *Id.*

and distinct" subsidiary of Webster.[26] Interestingly, Webster says in its motion for summary judgment that Levine was "never an employee of Webster"[27] despite having recognized, five months earlier in its objection to Levine's motion to compel, that there had been an "association between" him and Webster.

Because of Webster's representations and conduct before and during litigation, Levine maintains that it is a proper defendant. But assuming for argument's sake that Webster is right and it isn't a proper defendant, Levine should be allowed to join the Louis Levine Agency, Inc. as a party because Webster would suffer no prejudice from the amendment.

Webster states in its reply brief that "to allow Plaintiff to amend his Complaint at this late hour would certainly be highly prejudicial to Webster."[28] But Webster doesn't give any reason why adding the Levine Agency would prejudice it at all – let alone unduly prejudice it. The amendment wouldn't change the facts of Levine's claims and wouldn't burden either party with further discovery. The resolution of the case wouldn't be delayed. Webster may say that Levine delayed in adding the Agency, and should have discovered (somehow) long ago that it was a "legally separate and distinct corporation" without responsibility for the Agency. But because of its own conduct, Webster cannot claim that

---

[26] Webster's September 17, 2004 Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 10, 12, 13.
[27] *Id.* at 9.
[28] Webster's December 7, 2004 Reply Brief in Support of its Motion for Summary Judgment at 4.

Levine's delay was "unexplained" or in "bad faith." Indeed, if the Levine Agency is the correct defendant, Webster should welcome its addition, for shifting liability to it would be beneficial, not prejudicial, to Webster.

Courts in the Second Circuit commonly allow plaintiffs to add defendants in the absence of undue prejudice. In the 1991 District of Connecticut case *Charles Lyte v. Sara Lee Corporation*, Lyte sued Sara Lee. However, he didn't sue its subsidiary, Electrolux, even though he "identified [Electrolux] in the text of the complaint as being responsible for the alleged discriminatory acts [. . . .]"[29] The Court allowed Lyte to add Electrolux and said that plaintiff's

> failure to sue Electrolux was due to his *reasonable* though mistaken assumption that Sara Lee had *assumed all liabilities* of Electrolux. Plaintiff claims that this assumption *was based on the conduct and representations of Sara Lee's counsel* who was also acting as counsel for Electrolux.[30]

In 2001 in *Rush v. Artuz*, the Southern District of New York allowed a plaintiff in a civil rights action to add a defendant, noting that "[a]lthough the amendment [. . .] would add additional parties, the proposed claims against [the new defendants] do not raise factual claims unrelated to the events in the first Amended Complaint."[31] The Court noted further that the claims against the new defendants would be "identical" to those raised against the original defendant.[32] Like plaintiff Lyte,

---

29 1991 U.S. Dist. LEXIS 2055 at *2.
30 *Id.* at *5. (emphasis added).
31 2001 U.S. Dist. LEXIS 17480 at *21.
32 *Id.*

Levine reasonably relied on Webster's representations about liability, and like Rush he does not now seek to add new factual claims.

Often, Second Circuit Courts permit plaintiffs to add parties years into litigation and after discovery has ended. In 1999 in *Messier et al. v. Southbury Training School, et al.*, the District of Connecticut allowed plaintiffs to add a new plaintiff while summary judgment was pending.[33] Although they moved to amend four years into litigation and after discovery was "substantially complete[ ]," the Court noted that they had a "satisfactory explanation for the delay."[34] Most significantly, the Court said that the addition would cause defendants "little prejudice," force them spend no "additional resources" to conduct discovery, nor "delay [the case's] resolution."[35] In the 1996 Southern District of New York case, *Mason Tenders v. Hazardous Waste Engineering*, a group of retirement funds sued various entities for asset mismanagement.[36] Three years into litigation and after discovery had ended, plaintiffs moved to amend their complaint after discovering the "interrelatedness" of one of the original defendants and the two proposed defendants, a parent company and a subsidiary of Hazardous Waste.[37] The Court allowed plaintiffs to add the companies because they amended shortly after discovering the parties' relationships to Hazardous Waste; there was no "undue

[33] 1999 U.S. Dist. LEXIS 6992 at *13.
[34] *Id.* at *1, 12.
[35] *Id.*
[36] 1996 U.S. Dist. LEXIS 12284 at *3.
[37] *Id.* at *3,5,8.

delay."[38] The Court noted further that even if plaintiffs had delayed, this alone would not be reason to deny their motion because defendants couldn't show bad faith or prejudice.[39]

The few cases in the District of Connecticut in which Courts prohibited joinder of defendants are easily distinguishable from Levine's case. In the 1990 case *LaRosa v. CPC Int'l., Inc.*, CPC had hired commercial drivers from LaRosa's employer, Midwest, which LaRosa sought to add.[40] The Court denied LaRosa's motion because he included allegations about Midwest's actions in his complaint, but failed to name it as a defendant.[41] *LaRosa* isn't like this case. Midwest was not a subsidiary of CPC, and CPC did not defend LaRosa's action for years before suddenly claiming it was not the correct defendant. The Court noted that LaRosa had "not labor[ed] under a mistake of identity" when he "asserted conduct by defendants" he now sought to add but instead "intentionally [. . . .] refrained" from suing them.[42] The *LaRosa* Court would view Levine's decision to thus far "refrain from" suing the Levine Agency as a justifiable mistake considering Webster's vigorous defense of Levine's allegations.

---

38 *Id.* at *8.
39 *Id.* at *8-9.
40 1990 U.S. Dist. LEXIS 11560 at *1, 3-4.
41 *Id.* at *7.
42 *Id.* at *6. (The Court in *Lyte* and *LaRosa* applied the Supreme Court's four part "relation back" test for amendments under Rule 15, as set forth by the Supreme Court in *Schiavone v. Time, Inc.*, 477 U.S. 21, 31 (1986). While Levine's proposed addition of a defendant would pass muster under Rule 15, he is moving under Rule 21, the preferred method, as discussed above.)

The 1990 District of Connecticut case *Essex Engineering v. Credit Vending*[43] is, like *LaRosa*, distinguishable from Levine's situation. In *Essex*, four years after it filed suit, Essex learned that defendant owned no individual property from which a judgment against him could be satisfied under Arizona's community property laws.[44] Plaintiff sought to add defendant's wife, but the Court denied the request citing that plaintiff counsel's having "just learned of" Arizona's property laws is insufficient reason to grant leave to amend.[45] The Court also noted that it was "doubtful that personal jurisdiction over [the] wife could be found."[46]

**IV. CONCLUSION**

Before Levine sued Webster and throughout discovery Webster acted as if it were successor in interest to the Louis Levine Agency, Inc. On summary judgment, it did an about face. Levine's delay was in good faith and Webster would not be prejudiced by this amendment, so Levine should be allowed to add the Agency as a defendant.

For the foregoing reasons Levine requests that the Court grant his Motion.

---

43 732 F. Supp. 311 (D. Conn. 1990).
44 *Id.* at 311.
45 *Id.*
46 *Id.*

THE PLAINTIFF
BARRY LEVINE

By /s/ Ian O. Smith ____________________
Thomas G. Moukawsher (ct08940)
Ian O. Smith (ct24135)
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06016
(860) 278-7000
tmoukawsher@mwlawgroup.com
ismith@mwlawgroup.com

## CERTIFICATION

I hereby certify that on January 19, 2005, a copy of foregoing Plaintiff's Objection to Defendant's Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Kristi Dawn Aalberg
Carmody & Torrance
50 Leavenworth St., Po Box 1110
Waterbury, CT 06721-1110
kaalberg@carmodylaw.com

Charles F. Corcoran, III
Carmody & Torrance
195 Church St., PO Box 1950, 18th Floor
New Haven, CT 06509-1950
ccorcoran@carmodylaw.com

THE PLAINTIFF
BARRY LEVINE

/s/ Ian O. Smith
Thomas G. Moukawsher (ct08940)
Ian O. Smith (ct24135)
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06016
(860) 278-7000
tmoukawsher@mwlawgroup.com
ismith@mwlawgroup.com