# EXHIBIT #1

195 Church Street
Post Office Box 1950
New Haven, Connecticut
06509-1950

Telephone: 203 777-5501
Facsimile: 203 784-3199

# CARMODY & TORRANCE LLP
Attorneys at Law

Charles F. Corcoran, III

Direct Dial: 203 784-3115
ccorcoran@carmodylaw.com

August 21, 2002

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Thomas G. Moukawsher, Esq.
Moukawsher & Walsh, L.L.C.
328 Mitchell Street
P.O. Box 966
Groton, CT 06340

      Re:    Claim of Barry Levine

Dear Mr. Moukawsher:

      This responds to your letter of June 3, 2002, setting forth claims of Barry Levine for benefits under the Louis Levine Agency, Inc. Profit Sharing Plan & Trust and the Levine Companies Salary Savings Plan. We write to you on behalf of the Plan Administrator. Your claims relating to the Company's Profit Sharing Plan and the Company's 401(k) Plan are addressed individually:

### A.    **Profit Sharing Plan**

      You have claimed that during his employment at the Levine Agency, Barry Levine was a participant in the Company's Profit Sharing Plan and that he "became the victim of fraudulent conduct by the Plan administrators" with respect to contributions which you allege were required to be made to his account between 1982 and 1992 under the terms of the Plan, but were not; you have further claimed that to convince Barry Levine that it was "acceptable and correct" to refrain from making certain contributions to his account, Profit Sharing Plan Administrators falsely led Barry Levine to believe that all other similarly situated agency owners were also being asked to "waive off" required contributions, that all of them did so, and that contributions were therefore not made to their accounts, either.

      Your letter also alleges that in February of 2002 Barry Levine came to believe that such representations were false, and that at that same time he concluded that he was the only person in the Agency on whose behalf such contributions were not being made. You claim that Barry Levine has lost approximately $230,000.00 in contributions to his Profit Sharing Plan account, together with earnings which would have accrued thereon.

{N0690265;2}

CARMODY & TORRANCE LLP

Thomas G. Moukawsher, Esq.
August 21, 2002
Page 2

We have reviewed the terms of the Profit Sharing Plan as well as certain other relevant documents. The Profit Sharing Plan provides that an employee may, subject to the approval of the Employer, elect not to participate in the Profit Sharing Plan. Records show that Barry Levine waived participation in the Profit Sharing Plan in the form of numerous executed waiver forms for the years in question. Barry Levine also signed blanket waiver forms relating to such participation. Barry Levine also executed releases and indemnifications in connection with his waiver of Profit Sharing Plan contributions.

We find no evidence of any fraud or misrepresentations to Barry Levine as he has claimed. We find no evidence that Profit Sharing Plan Administrators misled Barry Levine regarding the Profit Sharing Plan; we find no evidence that Profit Sharing Plan representatives told Barry Levine that he and all other similarly situated Agency owners were being asked to "waive off" required contributions; we find no evidence that Barry Levine was the sole participant waiving such contributions; to the contrary, records reveal that at least one other employee also waived Profit Sharing Plan contributions during the period in question.

Further, Barry Levine's claims with respect to the Profit Sharing Plan are unreasonably late and untimely, and the statute of limitations has run on all of Barry Levine's claims respecting the Profit Sharing Plan.

**B.     401(k) Salary Savings Plan**

You have also claimed that Plan Administrators "misrepresented to Levine that he was ineligible to participate in the 401k Plan" and thereby deprived Barry Levine of the opportunity to make approximately three years of tax deferred contributions to the 401(k) Salary Savings Plan and lost him the matching amounts that would have had to be paid to his 401(k) Salary Savings account under the terms of that Plan. It is your claim that "because of his status as an employee" Barry Levine was eligible to participate in that Plan.

Under Article III of the Plan, a copy of which we enclose herewith, an individual must meet certain eligibility and participation requirements before becoming a member or a participant in the Levine Companies' 401(k) Salary Savings Plan. Barry Levine did not meet those requirements: during the period at issue he was not an "employee" of the Company and he failed to meet the Eligibility Requirements set forth in Article III Sections 1 and 2 and the "Service Rules" set forth in Article VI. Further, Barry Levine's claims with respect to the 401(k) Salary Savings Plan are unreasonably late and untimely, and the statute of limitations has run on all of Barry Levine's claims respecting the 401(k) Salary Savings Plan.

{N0690265;2}

CARMODY & TORRANCE LLP

Thomas G. Moukawsher, Esq.
August 21, 2002
Page 3


    For the foregoing reasons, the claims of Barry Levine for benefits, as set forth in your letter of June 3, 2002, are hereby denied.


### C.    Requests for Information

    With respect to your requests for information: Barry Levine has previously been provided with copies of the summary Plan descriptions at issue, which describe benefits under the Plans and establish procedures for claim review.  Further, as indicated below, the Plan Administrator will make available to Barry Levine and to you as his counsel those documents in the possession of the Administrator which are relevant to the claims at issue and their disallowance.  With respect to your request at paragraph seven on page three that the Plan Administrator identify by name, address, telephone number and title each Plan agent, servant or employee including retained experts who assisted with this claim and citing 29 C.F.R. 2560.503-1(g)(1)(ii): we are unaware of any requirement under the statutes, regulations or Plans which would require such identification at this point in the proceedings. We have reviewed 29 C.F.R. 2560.503-1(g)(1)(ii), which you cite as authority for this claim, and find no support therein. Please advise promptly as to the basis for your claim that Barry Levine is entitled to such information at this point and we will respond.


### D.    Appeal Process

    If Barry Levine wishes to file an appeal of this determination, Barry Levine (or you as his counsel) must write to us within 60 days of this letter, clearly stating Barry Levine's position. Further, under the Claims Review Procedures set forth in Article II, Barry Levine is entitled to request a hearing on this decision.  Any such request must also be in writing, stating the reasons why Barry Levine contends that the claim or claims should be allowed, and must be made within sixty days after Barry Levine's receipt of this denial of his claims. The  Administrator will schedule a hearing, hold that hearing and rule on the appeal of Barry Levine, all within sixty days after receipt of such request. If Barry Levine or you as his counsel are in possession of any additional information which you or he believe might affect the determination of the Plan Administrator, please forward it promptly to the undersigned or bring it to the hearing, in the event that Barry Levine elects to request one.

    At the hearing or prior thereto (upon five business days' written notice to the Administrator) Barry Levine may review documents in the possession of the Administrator which are relevant to the claim at issue and its disallowance.  Barry Levine may be represented by counsel at the hearing, and he may submit written and oral evidence in support of his claim.  A court reporter may be present and may record the proceedings, in which case a transcript shall be prepared and distributed to each party. The full expense of

{N0690265;2}

CARMODY & TORRANCE L.L.P.

Thomas G. Moukawsher, Esq.
August 21, 2002
Page 4

any court reporter and such transcripts shall be borne by the party causing the court reporter to attend the hearing. The Administrator's time for decision may be extended by sixty additional days due to special circumstances, provided that the delay and the special circumstances occasioning it are communicated to Barry Levine within the original sixty-day period.

Very truly yours,

Charles F. Corcoran, III

Enclosure

III
PARTICIPATION IN YOUR PLAN

Before you become a member or a "participant" in the Plan, there are certain eligibility and participation rules which you must meet. These rules are explained in this section.

1.  Eligibility Requirements

You will be eligible to participate in the Plan if you have completed one (1) Year of Service and have attained age 21.

You should review the Article in this Summary entitled "SERVICE RULES" for a further explanation of these eligibility requirements.

2.  Participation Requirements

Once you have satisfied your Plan's eligibility requirements, your next step will be to actually become a member or a "participant" in the Plan. You will become a participant on a specified day of the Plan Year. This day is called the Effective Date of Participation.

You will become a participant on the first day of the month coinciding with or next following the date you satisfy the eligibility requirements.

3.  Excluded Employees

There are certain employees of Louis Levine Agency, Inc. who will not be eligible to participate in your Plan. Those employees are:

    (a)  employees who are leased employees.

    (b)  employees whose employment is governed by a collective bargaining agreement under which retirement benefits were the subject of good faith bargaining, unless such agreement expressly provides for participation in this Plan.

    (c)  certain nonresident aliens who have no earned income from sources within the United States.

195 Church Street
Post Office Box 1950
New Haven, Connecticut
06509-1950

Telephone: 203 777-5501
Facsimile: 203 784-3199

# CARMODY & TORRANCE LLP

Attorneys at Law

Charles F. Corcoran, III

Direct Dial: 203 784-3115
ccorcoran@carmodylaw.com

October 4, 2002

## *VIA FACSIMILE*
## *AND REGULAR MAIL*

Thomas G. Moukawsher, Esq.
Moukawsher & Walsh, L.L.C.
328 Mitchell Street
P.O. Box 966
Groton, CT 06340

Re:    Claim of Barry Levine

Dear Tom:

This acknowledges your letter of October 1, in which you ask Webster to provide you with additional documentation and to answer interrogatories relating to Mr. Levine's claim. Webster has provided you with all relevant material in its possession. We find in the materials available to us, which have now been sent to you, no evidence that misrepresentations were made to Mr. Levine, nor do we see evidence to show that after his departure from the Agency in 1992 Mr. Levine was ever an employee eligible to participate in the plans at issue. If you have found any such evidence in the materials we have provided to you, please advise us immediately and we will review it promptly.

As we have requested previously and now repeat, we need from you any evidence in Mr. Levine's possession to refute the Administrator's conclusions. Mr. Levine, not the Administrator, has the burden of proving his claim. If he has any statement or recording or memorandum of any kind evidencing that during the period at issue he was in fact an employee eligible to participate in the Plans, please produce it as soon as possible for review and consideration by the Administrator; similarly, if he has any such evidence to show that the claimed misrepresentations were in fact made to him, please produce it as soon as possible for review and consideration by the Administrator.

There is nothing in our file to support such claims, and considerable documentation to refute them. See, for example, Bate stamped page 176, captioned "Rationale for the Termination of Barry Levine", which alleges that Barry Levine was guilty of fraudulent conduct which, combined with his previously documented inappropriate behavior, was sufficient justification for his dismissal. The page concludes with the comment, "The time has come to remove Barry from the organization before his

CARMODY & TORRANCE LLP

Thomas G. Moukawsher, Esq.
October 4, 2002
Page 2

actions bring it down." We find no documentary evidence that subsequent to this Mr. Levine ever qualified as an eligible employee under the terms of the Plans. If you have any such evidence, please bring it to our attention immediately.

Please also note that according to our files (Bate Nos. 500-507) in July of 1994 Mr. Levine filed a claim for unemployment compensation, naming the Louis Levine Agency, Inc. as his former employer. Mr Levine is alleged to have stated in support of his claim for unemployment compensation that he had been discharged by the Agency with no reason given. Bate 501, from the Employment Security Division of the Unemployment Compensation Department of the Labor Department, indicates that Barry Levine was paid $317.00 unemployment compensation each week for the weeks from October 1, 1994 through December 24, 1994. Certainly this would indicate that Mr. Levine stated that he was not employed at the Agency and in consequence asked for and received unemployment compensation. If you have any evidence to refute this, please bring it to our attention immediately.

Your letter also contains a number of individually posed, specific interrogatories concerning the Administrator's deliberations process and conclusions. As we have stated previously, we are aware of no evidence to support Mr. Levine's claims and request that you immediately provide us with any such documentation in your possession. Further, we are aware of no authority in the Plans, the statute or the regulations to provide for compliance in these proceedings with such individual items of discovery. If you have any such authority, we respectfully request that you communicate it to us forthwith and we will consider it promptly and respond.

Very truly yours,

Charles F. Corcoran, III

195 Church Street
Post Office Box 1950
New Haven, Connecticut
06509-1950

Telephone: 203 777-5501
Facsimile:  203 784-3199

# CARMODY & TORRANCE LLP
Attorneys at Law

Charles F. Corcoran, III

Direct Dial: 203 784-3115
ccorcoran@carmodylaw.com

October 18, 2002

### *VIA FACSIMILE*
### *AND REGULAR MAIL*

Thomas G. Moukawsher, Esq.
Moukawsher & Walsh, L.L.C.
328 Mitchell Street
P.O. Box 966
Groton, CT  06340

Re:     Claim of Barry Levine

Dear Tom:

        In our letter of September 26 we provided you, pursuant to the applicable Plans, statutes and regulations, with photocopies of the materials which Webster reviewed and on which it relied in denying Mr. Levine's claims, and we indicated what we believe each of those documents establishes.  We represented to you, and now repeat, that Webster has provided you with all relevant material in its possession. Then, in our letter of October 4, we directed your personal and individual attention to certain highly specific and damaging examples of evidence in our file, now in yours, which directly refute Mr. Levine's claims and which negatively impact his credibility.   We have, for example, drawn your attention to a detailed description in the contemporaneous records of the Agency of Mr. Levine's "termination" and the reasons therefor; we have also pointed to evidence that Mr. Levine applied for and received unemployment compensation during the precise period when you are claiming that he was "employed" by the Agency.  We have also asked you to identify any authority for compliance in these proceedings with inquiries directed to the Administrator's deliberations process and conclusions. You have not responded to any of this; rather, you have simply sent another version of your prior correspondence.

        We remind you that the purpose of the hearing on October 22 is to allow Mr. Levine, through you if he so elects, to submit written and oral evidence in support of his claim, not to obtain discovery. You have been provided with all relevant evidence in Webster's possession.  The Administrator will listen to and consider your arguments, but will not respond to substantive interrogatories. Please produce any evidence in Mr. Levine's possession to refute the Administrator's conclusions. If Mr. Levine has any

{N0693540}

CARMODY & TORRANCE LLP

Thomas G. Moukawsher, Esq.
October 18, 2002
Page 2


statement or recording or memorandum of any kind evidencing that during the period at issue he was in fact an employee eligible to participate in the Plans, please produce it for review and consideration; similarly, if he has any such evidence to show that the claimed misrepresentations were in fact made to him, please produce it for the Administrator.

We look forward to seeing you on October 22.


Very truly yours,


Charles F. Corcoran, III


{N0693540}

# EXHIBIT #2

```
- - - - - - - - - - - - - - - - -X
                                  :
CLAIM OF BARRY LEVINE --          :
                                  :
WEBSTER INSURANCE, INC.           :
                                  :
- - - - - - - - - - - - - - - - -X
```

COPY

    Hearing taken at the offices of
Carmody & Torrance, 50 Leavenworth Street,
Waterbury, Connecticut  06721-1110, before
San Edwards, RPR, LSR, Connecticut License
No. 0057, a Professional Shorthand
Reporter and Notary Public, in and for the
State of Connecticut on October 22, 2002,
at 2:13 p.m.

1          Mr. Levine's claim that he lost $230,000

2     in contributions to his profit sharing

3     account, plus earnings, which would have

4     accrued, if any.  The claim letter states

5     that when the agency's 401K was

6     established in August of 1996, Mr. Levine

7     was falsely told that he was ineligible to

8     participate and that, as a result, he lost

9     three years of tax-deferred contributions

10    and matching amounts.

11         The claim was denied by Webster on

12    August 21st, 2002.  And Mr. -- and

13    Mr. Levine and his counsel have been

14    notified by Webster in writing with

15    respect to the specific reasons for the

16    denial, the specific provisions of the

17    plan on which the denial has been

18    based.  And Webster has requested from

19    Mr. Levine and his counsel any

20    additional, specific information or

21    material necessary for reconsideration of

22    his claim.

23         Webster has provided Mr. Levine with

24    the appropriate information as to the

25    steps to be taken.  If he wishes to submit

1        his claim for review, which he has now

2        done, Mr. Levine has appealed the

3        denial.  Webster has forwarded to him 690

4        pages of documents comprising all relevant

5        materials and has indicated those

6        documents on which Webster has

7        specifically relied in making its decision

8        to deny his claims.

9            Webster, having provided with --

10       Mr. Levine with all relevant materials in

11       its possession, finds, in those

12       materials, no evidence to support

13       Mr. Levine's claim that misrepresentations

14       were made to him.  Nor does Webster

15       see, in those materials, any evidence to

16       show that after his departure from the

17       agency, in 1992, Mr. Levine was ever an

18       employee eligible to participate in the

19       plans at issue.

20           If Mr. Levine has found, in the

21       materials which Webster has provided to

22       him or in any other materials, any

23       evidence to support his claims and to

24       counter the decision of the

25       administrator, we need to see it from you

1    contrary.  We can take our own testimony

2    and make a determination.

3        MR. MOUKAWSHER:  And not share it

4    with the claimant, I take it?

5        MR. FREDERIK:  And make a

6    determination.  That is our job as

7    administrators.

8        MR. MOUKAWSHER:  I take it, you don't

9    have to share it with the claimant --

10        MR. CORCORAN:  Okay -- let's --

11    let's -- we -- let me make a statement

12    here.

13        MR. MOUKAWSHER:  If you have

14    statements.

15        Do you have statements -- written

16    statements?

17        MR. CORCORAN:  We've -- we've -- we

18    are -- we have given you everything

19    relevant.  I'd like to adjourn for a

20    moment in response to your

21    suggestion --

22        MR. MOUKAWSHER:  Well --

23        MR. CORCORAN:  -- that if this is all

24    going to become cumulative, maybe we

25    should and consider that.

# EXHIBIT #3

1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


BARRY LEVINE

VS                                    CV 3:03CV148(SRU)

WEBSTER INSURANCE




     Deposition of DANIEL CARTER taken in accordance

with the Connecticut Practice Book at the Law Offices of

Carmody & Torrance LLP, 195 Church Street, New Haven,

Connecticut, before Deborah Gentile, LSR, a Licensed

Shorthand Reporter and Notary Public, in and for the

State of Connecticut on December 19, 2003, at 1:32 p.m.




DEBORAH GENTILE, LSR
LSR NO. 419




DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE          100 PEARL STREET,14th FLOOR
MADISON, CT 06443         HARTFORD, CT 06103-4506
 203 245-9583               800 839-6867

68

```
 1                    THE WITNESS:  I don't know.

 2   BY MR. MOUKAWSHER:

 3        Q     What about it --

 4        A     I don't know the implications of, quote, All

 5   Levine Agency's assets and liabilities.

 6        Q     I want to know about your belief.  Is it your

 7   brief that in the year 2000 Webster Insurance, Inc.,

 8   acquired all the Levine Agency assets and liabilities?

 9        A     No, not technically.

10        Q     Okay.  Why not?

11        A     Because it was Webster Financial Corporation.

12        Q     All right.  And in the year 2000 --

13        A     I correct that.  I believe it was actually

14   Damman Insurance Associates that purchased Levine Agency.

15        Q     What is the relationship, if any, between Damman

16   Associates and Webster Insurance, Inc.?

17                    MR. CORCORAN, III:  Did you say Damman

18              Insurance Associates?

19                    THE WITNESS:  I'm not sure if that's the

20              correct name or not.  Damman Insurance, let's

21              call it that.

22   BY MR. MOUKAWSHER:

23        Q     What's Damman Insurance?

24        A     Damman Insurance is an agency that was purchased

25   by Webster Financial Corporation.
```

69

1  Q So it was owned -- it was an entity owned by

2 Webster, correct?

3  A Correct.

4  Q That entity owned by Webster acquired the Levine

5 Agency's assets and liabilities in 2000, right?

6  A To the best of my knowledge, yes.

7  Q Did Damman then transfer all those assets and

8 liabilities to Webster Insurance, Inc., when it was

9 formed?

10  A I do not know.

11  Q To the best of your knowledge, does Damman

12 Associates currently own the Levine Agency's assets and

13 liabilities?

14  A I do not know.

15  Q What -- tell me about Webster Insurance, Inc.

16 What is it?

17  A It's a -- to my knowledge -- I'm not clear on

18 the legalities of this.  It's a wholly owned subsidiary of

19 Webster Financial Corporation.  I don't know how they

20 structured their acquisitions of Damman originally.

21  Q But Webster one way or the other owns Damman,

22 correct?

23  A That is correct.

24  Q And Damman owned or at least -- owned or owns

25 Levine, right?

70

1      A    Correct.

2      Q    Mr. Carter, have you had discussions with Gerald

3  Levine about this lawsuit?

4      A    Yes.

5      Q    When did you first discuss it?

6      A    When we were first notified of it.

7      Q    How many times have you discussed it with him?

8      A    Numerous.

9      Q    When was the last time you discussed it with

10  him?

11     A    Ten minutes ago.

12          MR. CORCORAN, III:  For the record, if you

13          had discussions with Mr. Levine in the presence

14          of counsel, they're privileged and I'll instruct

15          you not to testify with respect to that.

16          However, discussions with Mr. Levine not in the

17          presence of counsel to the extent that you

18          recall, if you know.

19          MR. MOUKAWSHER:  The existence of the

20          conversation was the only question that he's

21          been asked and answered, and I'm not going to

22          ask him the substance of what that particular

23          question was.

24          MR. CORCORAN, III:  Great.

25

# EXHIBIT #4

STOCK PURCHASE AGREEMENT

by and among

WEBSTER FINANCIAL CORPORATION
and
DAMMAN ASSOCIATES, INC.,

and

LLIA, INC.,
LOUIS LEVINE AGENCY, INC.,
RETIREMENT PLANNING ASSOCIATES, INC.,
LEVINE FINANCIAL SERVICES, INC.,
RELIGIOUS BENEFIT SERVICES, INC.
and
LEVINE SURETY, INC.

and

GERALD U. LEVINE,
DANIEL CARTER,
DAVID PUGLIESE
and
CHRISTOPHER BRODEUR

Dated as of February _1_, 2000

015906

3.8    Levine Financial Statements.  Levine has previously provided to Parent a true and correct copy of those consolidated balance sheets and profit and loss statements of Levine and all of the Levine Subsidiaries, except for RPA, as to which separate statements have been provided, all of which are listed in Schedule 3.8 (including the notes thereto, collectively, the "Levine Financial Statements"), and the Levine Financial Statements have been prepared from the books and records of Levine and all of the Levine Subsidiaries in accordance with GAAP consistently applied over the periods in question, and present fairly the financial position and results of operations of the Levine Companies at the dates, and for the periods, stated therein.  In the case of interim periods, all adjustments, consisting of only normal recurring items, have been made, except for year end adjustments and except that interim statements do not contain any footnote disclosures.

3.9    Absence of Certain Changes.  Except as disclosed on Schedule 3.9, since December 31, 1998, the business of the Levine Companies has been conducted only in the ordinary course consistent with past practice, and, to Levine's and the Stockholders' knowledge, there has not been: (i) any event or development that, individually or in the aggregate, has or is reasonably likely to result in a Material Adverse Effect; or (ii) any transaction or commitment made, or any contract or agreement entered into which would have required Parent's consent under Section 5.1 were this Agreement binding at such time.

3.10    Liens.  Except as set forth on Schedule 3.10, none of the Levine Companies' properties or assets is subject to any Liens.

3.11    No Material Undisclosed Liabilities.  Except as set forth on Schedule 3.11, there are no debts, obligations or liabilities of any of the Levine Companies of any kind, character or description, whether known or unknown, accrued, absolute, contingent or otherwise in excess of $10,000 in the aggregate other than: (i) debts, obligations or liabilities set forth on the most recent balance sheet included in the Levine Financial Statements; or (ii) debts, obligations or liabilities incurred in the ordinary course of business, consistent in amount and similar in kind to those reflected in the most recent balance sheet included in the Levine Financial Statements.   Notwithstanding anything contained herein to the contrary, in no event shall any of the Levine Companies have any liabilities or obligations in connection with or arising as a result of the administration of The Levine Companies Salary Savings Plan.

3.12    Litigation and Other Proceedings.  Except as listed on Schedule 3.12 (i) there is no action, suit, investigation or proceeding of any kind pending against, or, to Levine's and the Stockholders' knowledge, threatened against or in connection with any of the Levine Companies, either directly or in its capacity as an agent or fiduciary, before any Governmental Authority; (ii) there are no outstanding orders, writs, injunctions, judgments, decrees, regulations, directives, consent agreements or memoranda of understanding issued by any Governmental Authority against or with the consent of any of the Levine Companies that materially and adversely affect the condition (financial or otherwise), assets, liabilities, business, operations or future prospects of the Levine Companies or that in any material manner restrict the right of any of the Levine Companies to carry on its business as presently conducted taken as a whole; and (iii) none of the Levine Companies is aware of any fact or condition presently existing that might give rise to any litigation, investigation or proceeding which, if determined adversely to any of the Levine Companies, would have a Material Adverse Effect on the Levine Companies or would restrict in any material manner the right of any of the Levine Companies to carry on its

015920