Westlaw.

333 F.Supp.2d 14                                                                 Page 1
333 F.Supp.2d 14, 34 Employee Benefits Cas. 1104
**(Cite as: 333 F.Supp.2d 14)**

H

**Motions, Pleadings and Filings**

United States District Court,
D. Connecticut.
Karen B. COAN, Individually and on behalf of the
K.L.C. Inc. 401(k) Profit
Sharing Plan, Plaintiffs,
v.
Alan H. KAUFMAN, et al., Defendants
No. 3:01CV1737(MRK).

Aug. 30, 2004.

**Background:** Former employee brought Employee Retirement Income Security Act (ERISA) action against former co-trustees of profit-sharing plans, alleging breaches of fiduciary duty. Former co-trustees moved for summary judgment.

**Holdings:** The District Court, Kravitz, J., held that:
(1) claim was for individual relief, and thus could not be brought under ERISA provision authorizing participant to bring action "for appropriate relief" under ERISA section providing for liability for breach of fiduciary duty, and
(2) remedy sought was equitable in nature, and thus was not available under ERISA provision authorizing "other appropriate equitable relief."
Motion granted.

West Headnotes

**[1] Federal Civil Procedure** ⟜2547.1
170Ak2547.1 Most Cited Cases
Factual assertions in defendants' statement of undisputed material facts would be deemed admitted for purposes of summary judgment motion, where plaintiff simply responded "[a]dmitted" or "[d]enied" with respect to each of defendants' assertions of undisputed facts. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.; U.S.Dist.Ct.Rules D.Conn. Rule 56(a)1, 2, 3.

**[2] Federal Civil Procedure** ⟜2497.1
170Ak2497.1 Most Cited Cases
Genuine issues of material fact existed as to whether co-trustees of profit-sharing plan breached their fiduciary duties in connection with their investment decisions, precluding summary judgment on such basis in ERISA action. Employee Retirement Income Security Act of 1974, § 404(a)(1)(C), 29 U.S.C.A. § 1104(a)(1)(C); Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[3] Labor and Employment** ⟜646
231Hk646 Most Cited Cases
With respect to a determination whether a former employee has participant standing to sue for a breach of fiduciary duty under ERISA, when the plans in question have been terminated and their assets have been disbursed, the crucial point is whether the former employee received the full extent of the vested benefits. Employee Retirement Income Security Act of 1974, § 404(a)(1)(C), 29 U.S.C.A. § 1104(a)(1)(C).

**[4] Labor and Employment** ⟜632
231Hk632 Most Cited Cases
Plaintiffs seeking individual relief may not sue for recovery under the ERISA provision authorizing a participant to bring a civil action "for appropriate relief" for breach of fiduciary duty. Employee Retirement Income Security Act of 1974, §§ 409(a), 502(a)(2), 29 U.S.C.A. §§ 1109(a), 1132(a)(2).

**[5] Labor and Employment** ⟜646
231Hk646 Most Cited Cases
Former employee's claim against plan co-trustees was claim for individual relief, not derivative claim in representative capacity, and thus could not be brought under ERISA provision authorizing participant to bring action "for appropriate relief" for breach of fiduciary duty, where she did not join other participants, move to certify class, take steps to assert derivative suit, or otherwise invoke any procedural device to ensure that interests of absent former participants would be protected, and class action or joinder was especially vital given that plans at issue no longer existed. Employee

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

333 F.Supp.2d 14
333 F.Supp.2d 14, 34 Employee Benefits Cas. 1104
**(Cite as: 333 F.Supp.2d 14)**

Retirement Income Security Act of 1974, §§ 409(a), 502(a)(2), 29 U.S.C.A. §§ 1109(a), 1132(a)(2).

**[6] Labor and Employment** ⬅⬆639
231Hk639 Most Cited Cases
The catch-all ERISA provision authorizing "other appropriate equitable relief" does not authorize recovery for damages, which is a form of legal relief, but only relief that is traditionally equitable. Employee Retirement Income Security Act of 1974, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

**[7] Implied and Constructive Contracts** ⬅⬆4
205Hk4 Most Cited Cases
For restitution to lie in equity, the action generally must seek not to impose personal liability on the defendants, but to restore to the plaintiff particular funds or property in the defendants' possession.

**[8] Labor and Employment** ⬅⬆660
231Hk660 Most Cited Cases
Remedy sought by former employee in bringing claim for breach of fiduciary duty, consisting of injunction requiring that terminated profit-sharing funds be resurrected, and that funds be augmented by cash supplied by co-trustees for sole purpose of distributing that additional money to former employee, was equitable in nature, and thus was not available under catch-all ERISA provision authorizing "other appropriate equitable relief." Employee Retirement Income Security Act of 1974, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

**[9] Labor and Employment** ⬅⬆660
231Hk660 Most Cited Cases
Individualized equitable relief for breach of fiduciary duty is available under the catch-all ERISA provision authorizing "other appropriate equitable relief." Employee Retirement Income Security Act of 1974, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

**[10] Labor and Employment** ⬅⬆662
231Hk662 Most Cited Cases
The mere payment of money does not necessarily render an award compensatory money damages, for purposes of determining whether a claim may be brought under the catch-all ERISA provision authorizing "other appropriate equitable relief." Employee Retirement Income Security Act of 1974, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

**\*15** Jeffrey M. Sklarz, Zeisler & Zeisler, P.C., Bridgeport, CT, Thomas G. Moukawsher, Ian O. Smith, Moukawsher & **\*16** Walsh Capitol Place, Hartford, CT, for Plaintiffs.

Glenn William Dowd, Daniel Adam Schwartz, Kristin Thomas, Day, Berry & Howard Cityplace, Hartford, CT, David L. Gussak, Reiner, Reiner & Bendett, Farmington, CT, for Defendants.

### *MEMORANDUM OF DECISION*

KRAVITZ, District Judge.

Plaintiff Karen B. Coan brought this suit individually and allegedly on behalf of the K.L.C., Inc. 401(k) Profit Sharing Plan against Defendants Alan H. Kaufman and Edgar W. Lee (the "Former Trustees"), former co-trustees of the 401(k) Plan. Complaint [doc. # 1] ("Compl.") at 1. Ms. Coan brings this action pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1), to recover financial damages resulting from Defendants' alleged breach of their fiduciary duties. *Id.* Pending before the Court is Defendants' Motion for Summary Judgment [doc. # 51]. For the reasons set forth below, the Motion for Summary Judgment [doc. # 51] is GRANTED.

### I. Factual Background

[1] The facts relevant to the pending motion are not in dispute. [FN1] K.L.C., Inc. ("KLC") was a commercial equipment leasing company founded by Defendants in or around 1975. Compl. ¶ 5. Mr. Kaufman served as the company's President from its formation in 1976 until its dissolution in 2001. Pl.'s Mem. in Opp'n to Summ. J. at 2. Mr. Lee served as Vice President from the company's formation until his retirement in 2000. *Id.* Ms. Coan became a KLC employee in 1977 and ultimately served as the company's Controller until 2000. *Id.* ¶ 6.

> FN1. The facts are drawn from the Complaint [doc. # 1], Defendants' Local Rule 56(a)1 Statement of Undisputed Material Facts [doc. # 51] ("Defs.' 56(a)1 Statement"); Plaintiff's Substitute Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment [doc. # 64] ("Pl.'s Mem. in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Opp'n to Summ. J.") and Plaintiffs' Substitute Local Rule Civ. P. 56(a)2 Statement [doc. # 65] ("Pl.'s 56(a)2 Statement"). Ms. Coan's Local Rule 56(a)2 Statement [doc. # 65] is not in compliance with Local Rule 56(a)3. With respect to each of the Defendants' assertions of undisputed facts in their Local Rule 56(a)1 statement, Ms. Coan simply responds with either "Admitted" or "Denied." Local Rule 56(a) 2 requires that "[e]ach denial ... in an opponent's Local Rule 56(a) 2 Statement, must be followed by a specific citation to (1) the affidavits of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. R. 56(a)3. Since, "all material facts set forth in [the movant's Rule 56(a)1 Statement] will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2," D. Conn. L. Civ. R. 56(a)1, the Defendants' factual assertions in their Rule 56(a)1 will be deemed admitted for the purposes of this motion. *See S.E.C. v. Global Telecom Services, L.L.C.,* No. 3:03 Civ. 418(PCD), 2004 WL 1638045, at *7 (D.Conn.2004). "Absent such a rule, the court is left to dig through a voluminous record, searching for material issues of fact without the aid of the parties." *Id.* In fact, "Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Id.* That said, the material and operative facts in this case are not in dispute, and the questions before the Court are solely legal in nature.

In 1996, the Former Trustees established a defined contribution employee benefit plan (the "401(k) Plan"), consisting of three components: (a) a profit-sharing fund requiring contributions from KLC and its employees (the "401(k) Fund"); (b) a profit-sharing fund originally established in 1987 under which contributions were made solely by KLC (the "Profit-Sharing Fund"); and, (c) assets rolled over from a previous KLC defined benefit plan by *17 KLC in approximately 1989 (the

"Rollover Fund"). Compl. ¶ 7. [FN2] As discussed below, the only funds that are at issue in this case are the Profit-Sharing Fund and Rollover Fund. In addition, the parties do not contest that Mr. Kaufman and Mr. Lee were the sole trustees of the 401(k) Plan.

FN2. Ms. Coan indicated that since the investments in the 401(k) Fund were not determined by Defendants, the performance of the 401(k) Fund is not at issue. Mem. in Opp'n to Summ. J. at 3.

In 1998, KLC was acquired by Unicapital and, as a part of that acquisition, Unicapital directed KLC to terminate its 401(k) Plan and to forward the assets to Unicapital to be administered as a part of its own 401(k) plan. Defs.' 56(a)1 Statement ¶ 14; Pl.'s 56(a)2 Statement ¶ 14. KLC, through the Defendants, forwarded the 401(k) Fund component of the 401(k) Plan as directed by Unicapital. Defs.' 56(a)1 Statement ¶ 15; Pl.'s 56(a)2 Statement ¶ 15. Defendants were aware that the Profit-Sharing Fund and the Rollover Fund would eventually be terminated as part of the Unicapital acquisition. Defs.' 56(a)1 Statement ¶ 16. However, concerned that Unicapital's 401(k) plan did not offer its participants opportunities as beneficial as those offered by KLC's 401(k) Plan, Defendants held back the assets in the Profit-Sharing and Rollover Funds during the pendency of the Unicapital acquisition. Defs,' 56(a)1 Statement ¶ 15. At the time, Defendants were uncertain how long the acquisition process would take before the Profit-Sharing and Rollover Funds would be terminated. Defs.' 56(a)1 Statement ¶ 23; Pl.'s 56(a)2 Statement ¶ 23.

Unicapital initially continued to employ Ms. Coan as a controller following the 1998 acquisition of KLC. Defs.' 56(a)1 Statement ¶ 28; Pl.'s 56(a)2 Statement ¶ 28. In or about July of 2000, Kelly Seymour, the regional manager from Unicapital Florida, who was in the area for a visit, met with Ms. Coan to notify her that Unicapital was terminating all of its controllers throughout Unicapital and its subsidiaries. Deposition of Karen B. Coan [doc. # 52], Ex. B, at 156 ("Coan Depo."). Ms. Coan has not been employed by either KLC or Unicapital since 2000. Defs.' 56(a)1 Statement ¶ 30; Pl.'s 56(a)2 Statement ¶ 30. Following her

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

333 F.Supp.2d 14
333 F.Supp.2d 14, 34 Employee Benefits Cas. 1104
(Cite as: 333 F.Supp.2d 14)

Page 4

dismissal from employment at Unicapital, Ms. Coan was hired on a consulting basis by a company called Pension Consultants to assist in the calculation and disbursement of both the KLC Profit-Sharing Fund and the KLC Rollover Fund. Coan Depo. at 97-98. As a consultant, Ms. Coan was the principal person responsible for administering the termination of these funds. *Id.* at 97.

The termination and dissolution of the Profit-Sharing and the Rollover Funds was completed during 2001. Compl. ¶ 11; Mem. in Supp. of Mot. for Summ. J. at 14. The Rollover Fund was liquidated in March 2001. [FN3] Pl.'s Mem. in Opp'n to Summ. J. at 15. From 1999 through the termination of the Profit-Sharing and Rollover Funds in 2001, Defendants' investment decisions resulted in losses to both funds.. Compl. ¶¶ 9, 10; Defs.' 56(a)1 Statement ¶ 24.

> FN3. The record does not offer a more precise date of termination of the Profit-Sharing Fund.

On September 10, 2001, Ms. Coan brought this suit against Defendants for their allegedly imprudent investment decisions from 1999-2000 in violation of ERISA § 404(B) and for their alleged failure to diversify the investments of the Profit-Sharing and Rollover Funds in violation of ERISA § 405(C). Compl. ¶¶ 12, 13; Pl's Mem. in Opp'n to Mot. for Summ. *18 J. at 11. Ms. Coan claims that the Defendants' investment decisions from 1999-2000 resulted in losses to the funds totaling $542,750. She argues that if Defendants had, for instance, invested in a passive blend of 60% equities and 40% fixed-income--which Ms. Coan asserts is "widely accepted in the investment profession as the prudent asset allocation for long-term investment horizons"--then the funds would have yielded gains, or at the very least, would not have suffered the losses they did. Pl's Mem. in Opp'n to Mot. for Summ. J. at 9, 10, 15.

Defendants moved for summary judgment [doc. # 51], and the parties appeared before the Court for argument upon the filing of their briefs. [FN4]

> FN4. The parties filed the following briefs: Plaintiff's Substitute Memorandum of Law in Opposition to Defendants' Motion for

Summary Judgment [doc. # 64] ("Mem. in Opp'n to Mot. for Summ. J."); and Defendants' Reply in Support of Their Motion for Summary Judgment [doc. # 68] ("Defs.' Reply"). Upon leave of the Court, Defendants filed a supplemental memorandum responding to several cases Ms. Coan cited as authority for the first time at oral argument. *See* Memorandum in Support of Motion for Summary Judgment [doc. # 77].

### II. Summary Judgment Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(b). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must draw all ambiguities and inferences in favor of the plaintiffs. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50, 106 S.Ct. 2505.

[2] Defendants do not deny that they were "fiduciaries" within the meaning of ERISA, 29 U.S.C. § 1021(21)(A), when they made investment decisions for the KLC funds from 1999-2000. Also, because there are genuine issues of material

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

333 F.Supp.2d 14
333 F.Supp.2d 14, 34 Employee Benefits Cas. 1104
**(Cite as: 333 F.Supp.2d 14)**

fact regarding whether Defendants breached their fiduciary duties in connection with their investment decisions, *see* 29 U.S.C. § 1104(a)(1)(C), Defendants have properly conceded in their briefs as well as at argument that the Court must assume for the purposes of their summary judgment motion that they did, in fact, breach their fiduciary duties. [FN5] *See* Mem. of Law in *19 Supp. of Mot. for Summ. J. at 11 n. 6; *see also* Defs.' Reply at 2. Nevertheless, Defendants contend that Ms. Coan's suit is deficient as a matter of law for two principal reasons: (1) Ms. Coan does not have participant standing under ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1), to bring this suit against Defendants; and (2) even assuming she does have standing, Ms. Coan cannot obtain the remedy she seeks under either ERISA § 502(a)(2) or § 502(a)(3). 29 U.S.C. § 1132(a)(2); 29 U.S.C. § 1132(a)(3). The Court will discuss each argument in turn.

> FN5. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (citation omitted) ("Fiduciaries are assigned a number of detailed duties and responsibilities, which include 'the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest.' "); *see also* 29 U.S.C. § 1104(a). "Section 409(a), 29 U.S.C. § 1109(a), makes fiduciaries liable for breach of these duties, and specifies the remedies available against them: The fiduciary is personally liable for damages ('to make good to [the] plan any losses to the plan resulting from each such breach'), for restitution ('to restore to [the] plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary'), and for 'such other equitable or remedial relief as the court may deem appropriate.' " *Mertens*, 508 U.S. at 252, 113 S.Ct. 2063.

### III. "Participant" Standing Under ERISA § 502(a)

Defendants contend that Ms. Coan lacks standing to bring her suit because she does not qualify as a "participant" for the purposes of ERISA. Under ERISA, a civil enforcement action may, in pertinent part, be brought:

> (1) by a participant or beneficiary--
> (A) for the relief provided for in subsection (c) of this section.

29 U.S.C. § 1132. [FN6] Under 29 U.S.C. § 1002(7), "participant" is defined as:

> FN6. Ms. Coan does not claim "beneficiary" status; *see also* she asserts that she qualifies as a "participant" entitled to the protections and remedies of ERISA.

"[A]ny employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ..."

Defendants conceded at oral argument that as an employee or former employee, Ms. Coan would have been qualified to bring this suit against Defendants prior to termination and disbursement of the Profit-Sharing and Rollover Funds. However, the funds having been terminated and disbursed, Defendants assert that Ms. Coan is no longer a participant because she is not now, and is not likely in the future to become, "eligible to receive a benefit of any type from" the terminated funds. In support of their argument that Ms. Coan lacks participant standing, Defendants make the following points.

First, Defendants argue that Ms. Coan received a lump sum distribution of the benefits to which she was entitled at the time the funds in question were terminated and all of their assets disbursed. Mem. in Supp. of Mot. for Summ. J. at 14-16. Ms. Coan does not contend otherwise. As a consequence, Defendants insist, Ms. Coan "has no claim, colorable or otherwise, to vested benefits under the KLC Plan." Mem. in Supp. of Mot. for Summ. J. at 14.

[3] Though the Second Circuit has not yet expressly addressed this issue, many federal courts have denied participant standing to former employees such as Ms. Coan where the plans in question have been terminated and their assets have been fully disbursed via lump sum distributions. *See Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1535 (10th Cir.1993) ("We held in *Mitchell* that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

333 F.Supp.2d 14
333 F.Supp.2d 14, 34 Employee Benefits Cas. 1104
**(Cite as: 333 F.Supp.2d 14)**

[the definition of 'participant' in 29 U.S.C. § 1002(7) and *Firestone* ] simply 'excludes ... former employees who have received a lump-sum payment of their vested benefits because **\*20** erstwhile participants have already received the full extent of their benefits and are no longer eligible to receive future payments.' ") (quoting *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 474 (10th Cir.1990)); *see also Nishimoto v. Federman-Bachrach & Assocs.,* 903 F.2d 709, 714 (9th Cir.1990) ("[F]ormer employees whose vested benefits under a plan have already been distributed in a lump sum at the time they file suit are not 'participants' within the meaning of section 1002(7)"); *O'Connell v. Kenney,* No. 3:03CV0845 (DJS), 2003 WL 22991732, at \*2 (D.Conn. Dec. 15, 2003) ("Once an individual has received a lump sum payment of his or her vested pension benefits, he or she is typically no longer a participant under ERISA."); *Evaristo v. Rendeiro,* No. 91 Civ. 7950(LMM), 1995 WL 390327, at \*6 (S.D.N.Y. June 30, 1995) ("Plaintiffs have no standing to bring [their] claims because as of the date of the amendment, TAP had terminated the Plan and distributed the accrued benefits and employee-derived residual assets."); *compare Gray v. Briggs,* No. 97 Civ. 6252(DLC), 1998 WL 386177 at \*4 (S.D.N.Y. July 7, 1998) ("Where as here, the plaintiffs allege that the distributions they received were less than they were entitled to on account of the defendants' wrongful conduct during the term of the plaintiffs' employment, the plaintiffs' claim is for 'vested benefits.' In other words, the plaintiffs seek benefits to which they were entitled at or before the time of their termination, but which they did not receive because of the defendants' wrongdoing."); *cf. Yancy v. Am. Petrofina, Inc.,* 768 F.2d 707, 708 (5th Cir.1985) (finding that the definition of participant under § 1002(7) as "an employee or former employee who is or may be eligible to receive benefits under the plan ... excludes retirees who have accepted the payments of everything owed to them in a lump sum, because these erstwhile participants have already received the full extent of their benefits and are no longer eligible to receive future payments ... [Plaintiff] lost his right to challenge this change by accepting his payment without dispute ... The term 'participant' encompasses only those former employees who are owed vested benefits ... [but plaintiff] has already received all benefits vested in him prior to his retirement"). As the Tenth Circuit succinctly put it,

"[t]he crucial point is the receipt of the 'full extent' of their vested benefits.' " *Raymond,* 983 F.2d at 1536.

Second, Defendants note, having received her share of the KLC Funds in 2001, Ms. Coan does not allege that the amount she received at the time of the distribution was miscalculated or improperly distributed. Mem. in Supp. of Mot. for Summ. J. at 14, 17. Courts have found participant standing when a former employee claims an error in a distribution. *See, e.g., O'Connell,* 2003 WL 22991732, at \*2 ("An individual may regain standing as a participant [ ] if he or she claims that his or her employer miscalculated his or her benefit."); *Sommers Drug Stores Employee Profit Sharing Trust v. Corrigan,* 883 F.2d 345, 348-49 (5th Cir.1989) ("[P]laintiffs making claims based on miscalculation of a lump-sum payment have standing as participants because they may become eligible for additional vested benefits."). The Fifth Circuit's decision in *Sommers* is instructive. There, the plaintiffs asserted that they did not receive the full amount of benefits to which they were entitled at the time the benefits were distributed, and the court held that they had standing to pursue their claim because they claimed "that the amount received was not the full amount of vested benefits due under the terms of the profit sharing plan, but was less, because the amount received for the shares was less than fair market value.... In other words, the representatives have a **\*21** claim for an ascertainable amount allegedly owed them at the time they received their lump sum." *Id.* at 350. Ms. Coan makes no such claim in this case.

Third, Defendants assert, and Ms. Coan acknowledged at argument, that she does not claim to have lost her participant status as a result of any misrepresentations or other malfeasance on the part of Defendants. This is significant because in *Mullins v. Pfizer,* 23 F.3d 663 (2d Cir.1994), the Second Circuit adopted a "but for" test for ERISA participant standing which affords a plaintiff standing when the plaintiff can demonstrate that but for a fiduciary's misrepresentations, she would still be a participant. *Id.* at 667-68; *see Vartanian v. Monsanto Co.,* 14 F.3d 697, 702 (1st Cir.1994). Here, however, Ms. Coan concedes that she can make no such claim.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

333 F.Supp.2d 14
333 F.Supp.2d 14, 34 Employee Benefits Cas. 1104
(Cite as: 333 F.Supp.2d 14)

Fourth, Defendants argue that the undisputed facts show that they "took no steps to prevent [Ms.] Coan from learning precisely how they had invested Plan assets," Defs.' Reply at 5. In *Gray,* the plaintiffs, who were former employees, alleged that the defendant-employer concealed his breach of duties from plaintiffs, and that plaintiffs did not become aware of the defendant's breach until after they accepted their payments. 1998 WL 386177, at *5. Applying the Second Circuit's logic in *Mullins,* the court granted the former employees participant standing under ERISA, stating that "wherever, as here, a defendant's wrongful conduct prevents a claimant from learning of the breach until after he has received payment, it would defeat the purposes of ERISA to deny standing." *Id.* at *6. However, in this case, Ms. Coan admits that she can make no claim that Defendants concealed their conduct. To the contrary, at argument, counsel for Ms. Coan conceded that since she was KLC's Controller and was involved in the administration of the funds until they were terminated and distributed, she knew (or should have known) all the information she needed to determine that Defendants had breached their fiduciary duties via their investment decisions in the 1999-2001 time period. It is undisputed that Defendants made no attempt to hide the losses or their investment decisions.

Fifth, and finally, Defendants also point out that Ms. Coan is no longer an employee of KLC, and has no expectation of returning to employment at KLC since it has long since been acquired by Unicapital, which terminated her employment. *See* Mem. in Supp. of Mot. for Summ. J. at 14.

In sum, Defendants argue that no court has recognized participant standing when, as here: the plan has been terminated; the benefits have been distributed in a lump sum to all participants without a challenge to the calculation or asset apportionment; there are no allegations that the fiduciaries engaged in malfeasance or misrepresentations that either resulted in plaintiff losing her status as a participant or in her inability to bring an action before losing participant status; and plaintiff is no longer an employee and has no expectation of returning to employment.

Ms. Coan responds that while these factors may be relevant to the standing inquiry, they are not determinative. Rather, she argues that all that is required to confer participant standing is that a plaintiff has alleged, as Ms. Coan has alleged here, a colorable claim of a violation of ERISA and that the plaintiff has brought suit within three years of the alleged violations--that is within the relevant statute of limitations.

While it would seem sensible to this Court to require a plaintiff such as Ms. Coan in a case like this to bring her lawsuit before she ceased employment and before the plans in question were terminated *22 and she accepted a lump sum distribution under the plans, there is support in Second Circuit case law for Ms. Coan's broad "zone of interests" approach to ERISA standing. Thus, in *Mullins,* the Second Circuit considered "whether an employee who alleges that he voluntarily retired because of affirmative material misrepresentations by an administrator of an employee benefits plan has standing to sue under ERISA ..." *Id.* at 664. The Second Circuit answered in the affirmative, in no small part because "to hold otherwise would have the anomalous effect of allowing a fiduciary 'through its own malfeasance to defeat the employee's standing.' " *Id.* at 668 (quoting *Christopher,* 950 F.2d at 1221 (5th Cir.1992)). However, the *Mullins* court began its analysis with the Supreme Court's language in *Firestone* that

> [i]n order to establish that he or she may become eligible for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.

*Firestone,* 489 U.S. at 117-18, 109 S.Ct. 948. Declaring the standing question in *Mullins* as one of first impression on which other circuits have split, the Second Circuit explicitly adopted the First Circuit's approach in *Vartanian* to ERISA standing.

While the factual setting in *Mullins* is distinguishable from the present case, *Mullins* appears to have taken a rather expansive view of participant standing. Thus, the court relied, for example, on the following excerpt from the legislative record for ERISA:

> The intent of the [Senate Labor and Public Welfare] Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due to participants.
*Mullins,* 23 F.3d at 668 (quoting S.Rep. No. 93-127 (1974)), reprinted in 1974 U.S.C.C.A.N. 4639, 4871. In addition, the Second Circuit explicitly endorsed the First Circuit's statement that "the basic standing issue is whether the plaintiff is ' *within the zone of interests ERISA was intended to protect.*' " *Mullins,* 23 F.3d at 668 (quoting *Vartanian,* 14 F.3d at 701) (emphasis in original).

Ms. Coan has asserted colorable claims of breaches of fiduciary duty by Defendants that fall well within the zone of interests that ERISA is intended to remedy. In those circumstances, denying ERISA standing to Ms. Coan--who could not pursue her breach of fiduciary claims under state law because of ERISA preemption, [FN7] who has alleged conduct that is violative of ERISA, who unquestionably was a participant and employee at the time of the breaches of fiduciary duty that are alleged in this case, and who brought suit to remedy those breaches within the relevant statute of limitations for such claims-- would appear to run counter to Congress' intent to "remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under *23 state law or recovery of benefits due to participants." *Mullins,* 23 F.3d at 668 (quoting S.Rep. No. 93-127 (1974)).

> FN7. *See, e.g., HMI Mech. Sys., Inc. v. McGowan,* 266 F.3d 142, 148 (2d Cir.2001) (citation omitted); *Gen. Elec. Co. v. New York State Dep't of Labor,* 891 F.2d 25, 29 (2d Cir.1989) ("Congress intended ERISA to occupy and regulate the field of employee benefit plans" and "sought to preempt all state laws that relate to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA.") (citations omitted).

For purposes of the present motion, this Court need not resolve this issue and can assume that Ms. Coan has standing to pursue her ERISA claims against Defendants. For Ms. Coan's entitlement to participant standing does not necessarily entitle her

to a remedy under the applicable ERISA provisions. That inquiry requires the Court to consider whether Ms. Coan's claim fits under either § 502(a)(2) or § 502(a)(3). For the reasons stated below, the Court concludes that Ms. Coan's claims fit under neither, regardless whether she has participant standing or not.

### IV. Individual Capacity Suits and § 502(a)(2)
Section 409 of ERISA states that a fiduciary who breaches his duty "shall be personally liable to make good to [the] plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a). Section 502(a)(2) authorizes a participant to bring a civil action "for appropriate relief" under § 409. 29 U.S.C. § 1132(a)(2); *Communications Worker of Am. v. Nynex Corp.,* No. 93 Civ. 5329(LLS), 1995 WL 590871, at *3 (S.D.N.Y. Oct. 5, 1995). Ms. Coan seeks relief under § 502(a)(2) of ERISA.

[4] It is unmistakably clear under relevant case law, however, that plaintiffs seeking individual relief may not sue for recovery under § 502(a)(2). As the Supreme Court observed in *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 141, 105 S.Ct. 3085. "Consistent with this objective, § 502(a)(2), the enforcement provision for § 409, authorizes suits by four classes of party-plaintiffs: the Secretary of Labor, participants, beneficiaries, and fiduciaries. Inclusion of the Secretary of Labor is indicative of Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole. Indeed, the common interest shared by all four classes is in the financial integrity of the plan." *Id.* at 141 n. 9, 105 S.Ct. 3085. Construing *Russell,* the Second Circuit has explained that the "Supreme Court held that the fiduciary duties imposed by Section 409 run to a plan and not to individual beneficiaries," and *Russell* therefore bars plaintiffs from suing under Section 502(a)(2) [where] plaintiffs are seeking damages on their own behalf, not on behalf of the Plan." *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993); *see also Bixler v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

333 F.Supp.2d 14                                                                                                   Page 9
333 F.Supp.2d 14, 34 Employee Benefits Cas. 1104
(Cite as: 333 F.Supp.2d 14)

*Cent. Pennsylvania Teamsters Health and Welfare Fund,* 12 F.3d 1292, 1298 (3d Cir.1993) ("In full agreement that § 409 does not authorize recovery to an individual, Justice Brennan [, writing separately,] explained that individual recovery for breach of fiduciary duty is available elsewhere in the statute: the 'other appropriate equitable relief' clause of § 502(a)(3)."); *Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia, Inc.* 102 F.3d 712, 714 (4th Cir.1996) ("The Supreme Court in *Russell* clearly held that any recovery under section 502(a)(2) must be for the plan as a whole rather than for individual beneficiaries."); *Kishter v. Principal Life Ins. Co.,* 186 F.Supp.2d 438, 442 (S.D.N.Y.2002) ("[Section 502(a)(2) ] allows damages to be recovered only by the ERISA plan itself ... [and] does not provide a remedy for an individual plaintiff to recover for a breach of fiduciary duty.").

[5] Therefore, Ms. Coan cannot recover individually for the alleged breaches of *24 fiduciary duty under § 502(a)(2). Ms. Coan does not disagree with this proposition. Instead, she claims that she brings suit in this case under § 502(a)(2) on behalf of herself and on behalf of the Profit-Sharing and Rollover Funds. However, she acknowledged at oral argument, as she must, that she has never moved for class certification or attempted to join other former plan participants in this lawsuit. [FN8] Ms. Coan insists that she has brought this suit as a derivative action in a representative capacity and that § 502(a)(2) authorizes such lawsuits. Mem. in Opp'n to Mot. for Summ. J. at 44. Yet, regardless of how Ms. Coan now seeks to characterize her lawsuit, it is undisputed that in the three years since this case was filed, she has not sought to fulfill the requirement of Fed.R.Civ.P. 23.1 [FN9] or otherwise taken any of the antecedent steps required for a plaintiff to proceed in a representative capacity. That omission is both telling and fatal. For merely labeling one's lawsuit a "derivative suit" or "representative action" does not make it so.

> FN8. In arguing that she need not bring an action on behalf of all the former participants in the Profit-Sharing and Rollover Funds, Ms. Coan's references to *Kuper v. Iovenko,* 66 F.3d 1447 (6th Cir.1995) do not support her position. The Sixth Circuit's holding in *Kuper* is more

limited than what Ms. Coan proposes, holding only that a subclass of plan participants may sue for breach of fiduciary duty. *Id.* at 1453. Ms. Coan has not attempted to certify a class, much less a subclass, of former participants.

> FN9. This rule, entitled "Derivative Action by Shareholders," states, in pertinent part, that:
> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.
> Fed.R.Civ.P. 23.1.

"Congress enacted ERISA to 'protect ... the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.' " *Aetna Health Inc. v. Davila,* --- U.S. ----, 124 S.Ct. 2488, 2495, 159 L.Ed.2d 312 (2004); *see* 29 U.S.C. § 1001(b). A class action or joinder of other participants is especially vital in this case to protect the interests of those participants since the Profit-Sharing and Rollover Funds no longer exist. Therefore, there is no guarantee, aside from Ms. Coan's personal assurances, that the former participants will benefit from any possible recovery; nor has Ms. Coan taken any steps to ensure that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

333 F.Supp.2d 14
333 F.Supp.2d 14, 34 Employee Benefits Cas. 1104
(Cite as: 333 F.Supp.2d 14)

interests of the former participants who are absent from this action will be protected during the prosecution of this lawsuit.

The Federal Rules provide ample means to allow a participant to sue in a representative capacity to vindicate the interests of others. Since Ms. Coan has not joined other plan participants, moved to certify a class of participants, taken the necessary steps to assert a derivative suit against Defendants, or otherwise invoked any procedural device to ensure that the interests of absent former participants are protected and that any potential recovery would *25 inure to their benefit, the Court concludes that Ms. Coan's suit is, in fact, an individual lawsuit seeking an individual recovery for Ms. Coan. *See Bixler,* 12 F.3d at 1298. As such, the Supreme Court's decision in *Russell* bars her claims under § 502(a)(2). *See Russell,* 473 U.S. at 140, 105 S.Ct. 3085.

**V. Equitable Relief Under § 502(a)(3)**
[6][7] Ms Coan also seeks relief under ERISA § 502(a)(3), which is a "catch-all" remedial section. *Varity Corp. v. Howe,* 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Under § 502(a)(3), a "participant, beneficiary, or fiduciary" is empowered to bring a civil suit "to obtain other appropriate equitable relief (i) to redress [ ] violations or (ii) to enforce any provisions of ... the terms of the plan." 29 U.S.C. § 1132(a)(3). It is well settled that § 502(a)(3) does not authorize recovery for damages--a form of legal relief--but only relief that is traditionally equitable. *See Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *see also Mathews v. Chevron Corp.,* 362 F.3d 1172, 1185 (9th Cir.2004). And in *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), the Supreme Court made it clear that an individual cannot evade this restriction on damage claims by characterizing one's request for monetary relief as "restitution." *Id.* at 214, 122 S.Ct. 708. As the Supreme Court explained, for "restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant[s], but to restore to the plaintiff particular funds or property in the defendant[s]' possession." *Id.*

[8][9] As a consequence, Ms. Coan conceded at

oral argument that her claim for restitution pursuant § 502(a)(3) is no longer proper in view of *Great-West. See* Mem. in Opp'n to Mot. for Summ. J. at 45 n. 14. Nevertheless, Ms. Coan contends that "[r]egardless whether [Ms.] Coan can seek a traditional form of equitable restitution, [Ms.] Coan can seek an injunction ordering plan reinstatement and the payment of additional benefits lost through a breach of fiduciary duty." Mem. in Opp'n to Mot. for Summ. J. at 46. Individualized equitable relief for breach of fiduciary duty is available under ERISA § 502(a)(3). *See Chappel v. Lab. Corp. of Am.,* 232 F.3d 719, 727 (9th Cir.2000) ("When a fiduciary breaches its duty and relief is not otherwise available under the statute, § 502(a)(3) of ERISA provides for individual equitable relief."). However, the Court rejects Ms. Coan's claim that the remedy she now requests--an order resurrecting the long-since-terminated Profit-Sharing and Rollover Funds and requiring that those funds be augmented by cash to be supplied from the pockets of Defendants for the sole purpose of then distributing that additional money to Ms. Coan--is equitable in nature. It is abundantly clear to the Court that Ms. Coan is simply seeking to accomplish indirectly that which *Great-West* prevents her from obtaining directly. [FN10]

> FN10. In *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138 (2d Cir.1999), the Second Circuit commented that "the plaintiff's claim is based on the alleged breach of a fiduciary duty, a claim that always has been within the exclusive jurisdiction of equity." 202 F.3d at 145. While the Second Circuit has not revisited its decision in *Strom* since the Supreme Court's decision in *Great-West,* a number of district courts in this circuit have interpreted *Great-West* as effectively overruling *Strom. See Kishter v. Principal Life Ins. Co.,* 186 F.Supp.2d 438, 443 (S.D.N.Y.2002); *Augienello v. Coast-to-Coast Fin. Corp.,* No. 01 Civ. 11608(RWS), 2002 WL 1822926, at *6 (S.D.N.Y. Aug. 7, 2002); *Bona v. Barasch,* No. 01 Civ. 2289(MBM), 2003 WL 1395932, at *11 (S.D.N.Y. Mar. 20, 2003); *De Pace v. Matsushita Electric Corporation of America,* 257 F.Supp.2d 543, 563 (E.D.N.Y.2003).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

333 F.Supp.2d 14
333 F.Supp.2d 14, 34 Employee Benefits Cas. 1104
(Cite as: 333 F.Supp.2d 14)

**\*26** **[10]** "[I]n determining whether an action for equitable relief is properly brought under ERISA, [courts] look to the substance of the remedy sought ... rather than the label placed on that remedy." *Mathews,* 362 F.3d at 1185. And while "the mere payment of money does not necessarily render the award compensatory 'money damages,' " *id.* at 1186, the substance of the remedy Ms. Coan seeks is not equitable in nature. Instead, she seeks damages from Defendants for injuries she believes she suffered as a result of their breaches of their fiduciary duties. Requesting the intermediate step of reviving long-terminated funds solely for the purpose of channeling funds from Defendants' bank accounts into Ms. Coan's pockets does not transform what is effectively a money damages request into equitable relief. This is particularly true since Ms. Coan does not seek "money or property identified as belonging in good conscience to the plaintiff [that] could clearly be traced to particular funds or property in the defendant's possession." *Great-West,* 534 U.S. at 213, 122 S.Ct. 708. As the Supreme Court observed in *Great-West,* "Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant[s] to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id.* at 210, 122 S.Ct. 708; *see Caffey v. UNUM Life Ins. Co.,* 302 F.3d 576, 583 (6th Cir.2002) (rejecting plaintiff's claim for "equitable relief," including reinstatement of her health and life insurance benefits, finding that plaintiff's claim was actually one for "consequential losses she experienced as a result of UNUM's failure to perform under the Plan," and, therefore "not within the scope of 'appropriate equitable relief' under 29 U.S.C. § 1132(a)(3)"); *see also De Pace,* 257 F.Supp.2d at 565 (finding that plaintiffs' argument that the specific property they sought was identifiable and were in the defendant's hands could not "overcome the fact that plaintiffs' claim is essentially one for money damages as a result of defendant's breach of legal duty").

Ms. Coan relies on *Varity Corp.* as an example of the form of relief she seeks, which, she argues, is distinguishable from the relief rejected in *Great-West.* Ms. Coan asserts that applying

*Great-West* to this case is inappropriate because *Great-West* involved a breach of contract and Ms. Coan's claims involve breach of fiduciary duties. *See* Pl.'s Mem. in Opp'n to Summ. at 46. Furthermore, Ms. Coan posits that, under *Varity Corp.,* "[R]egardless [of] whether she can seek a traditional form of equitable restitution, [she] can seek an injunction ordering plan reinstatement and the payment of additional benefits lost through a breach of fiduciary duty." *Id.* The Court disagrees.

The plaintiffs in *Varity Corp.* were beneficiaries of a welfare benefit plan who sued the plan's administrator, claiming that the administrator, who was also the employer, through duplicitous means, led them to withdraw from the plan and to forfeit their benefits. 516 U.S. at 491-92, 116 S.Ct. 1065. They sought, among other things, an order reinstating them as participants in the employer's ERISA plan. *Id.* at 492, 116 S.Ct. 1065. The precise question before the Court with respect to ERISA § 502(a)(3) was whether that provision authorized the individualized equitable relief sought by plaintiffs. *Id.* at 507, 116 S.Ct. 1065. While the Supreme Court affirmed the lower court's judgment in favor of **\*27** plaintiffs and endorsed the availability of individualized equitable relief under § 502(a)(3), *id.* at 515, 116 S.Ct. 1065, the Court did not thereby reinstate the *plan*--rather, the plaintiffs sought reinstatement as participants in an existing ERISA plan from which they had withdrawn based on misrepresentations. *Varity Corp.,* 516 U.S. at 492, 116 S.Ct. 1065. Thus, in contrast to this case, the plan into which the plaintiffs in *Varity Corp.* sought reinstatement was extant when plaintiffs filed their suit, as was the employer who administered the plan. Unlike Ms. Coan, the plaintiffs in *Varity Corp.* did not ask the Court to order individual defendants to make cash contributions into a long-terminated plan for the sole purpose of distributing those contributions back out to the plaintiff and then terminating, once again, the defunct plan.

Ms. Coan's reference to *Mathews* also does not support her position. In that case, the district court granted plaintiffs' request pursuant to § 503(a)(3) for an injunction requiring defendant Chevron Corporation to modify the records of its existing retirement plan to reflect that they had been involuntarily terminated and thus were eligible for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

333 F.Supp.2d 14
333 F.Supp.2d 14, 34 Employee Benefits Cas. 1104
**(Cite as: 333 F.Supp.2d 14)**

Page 12

payment of a "Special Involuntary Termination Enhancement" ("SITE") benefit. 362 F.3d at 1176. In affirming the injunctive relief Ninth Circuit commented that:

> On its face, an order to modify plan records is not an award of monetary damages. More importantly, the relief granted by the district court here is also equitable in substance. To instate the plaintiffs retroactively into SITE simply puts them in the position they would have been had Chevron not breached its fiduciary duty ...

*Id.* at 1186. The Court emphasized that plaintiffs could receive sums of money as a result of the district court's remedy, but that it was significant that SITE candidates were not automatically entitled to benefits. *Id.*

*Mathews* illustrates why Ms. Coan's requested remedy is not equitable: unlike the plaintiffs in *Mathews,* Ms. Coan seeks reestablishment of the defunct funds specifically and solely for the purposes of obtaining money from Defendants to compensate her for her alleged losses. Also, in *Mathews,* rectifying the fiduciary's breach merely resulted in restoring plaintiffs into a plan--it neither required the resurrection of a terminated plan nor mandated as an ancillary matter the payment of money into the plan by the fiduciary.

The remedy Ms. Coan seeks in this case is not equitable in form or substance. Instead, the relief she seeks is an individual award of money damages for her alleged losses. Unfortunately, however, the Supreme Court has held that such relief is not available under the catch-all provision of § 503(a)(3). Therefore, Ms. Coan's claim fails as a matter of law.

### VI. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment [doc. # 51].

The Clerk is directed to close this case.

IT IS SO ORDERED.

333 F.Supp.2d 14, 34 Employee Benefits Cas. 1104

**Motions, Pleadings and Filings (Back to top)**

. 3:01CV01737 (Docket)

(Sep. 10, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.