# EXHIBIT D

Law Offices

# Moukawsher & Walsh, L.L.C.

Joseph E. Moukawsher
Michael J. Walsh*
Thomas G. Moukawsher
D. Lincoln Woodard
Jason Wastcott

*Also admitted in New York

328 Mitchell Street
P.O. Box 966
Groton, Connecticut 06340
(860) 445-1809

Fax (860) 446-8161

Capital Place
21 Oak Street
Hartford, CT 06106
(860) 549-8440
Fax (860) 549-8443

Reply To:

Groton

September 17, 2002

**VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED**
Charles F. Corcoran, III, Esquire
Carmody & Torrance LLP
195 Church Street
Post Office Box 1950
New Haven, CT 06509-1950

  RE: Claim of Barry Levine

Dear Mr. Corcoran,

  I have received your letter dated August 21, 2002 denying Mr. Levine's claim. Please accept this letter as an appeal of Webster's denial, the grounds for which are addressed in this letter as follows:

  1. Levine's Execution of Waivers and Releases

  2. Other Employees' Signing Waivers

  3. Evidence of Misrepresentations

  4. Statute of Limitations

  5. Levine's 401(k) Eligibility

  6. Requests for Information

Moukawsher & Walsh, LLC
Charles F. Corcoran, III, Esquire
September 17, 2002
PAGE TWO

### (1) Levine's Execution of Waivers and Releases

Webster states that under the terms of the Profit Sharing Plan, an employee may elect to not participate, and that Webster's records show that Barry Levine waived participation in the Plan by executing numerous waiver and "blanket waiver" forms. Levine does not deny that under the terms of the Plan an employee may elect to not participate. Nor does he deny that he completed the waiver forms customarily submitted by those who choose to waive contributions. Levine agrees that he took *all* of the steps necessary to "waive off" contributions to the Profit Sharing Plan.

However, unlike a Plan participant whose choice to waive contributions is made freely and fairly, Mr. Levine made his decision because he was deceived by plan administrators. That he willingly signed the necessary contribution waiver forms does not weaken Mr. Levine's claim. Rather, it underscores that he *believed* the Plan administrators' misrepresentations that similarly situated Agency owners agreed to "waive off" contributions to their accounts.

Webster also points out that Levine executed releases and indemnifications "in connection with" his waiver of Profit Sharing Plan contributions. While signing such forms may give one unfamiliar with the facts the impression that Mr. Levine has given up a legal remedy, these documents have no legal effect given that they were fraudulently induced.

### (2) Other Employees Signing Waivers

Webster states that it has found no evidence that Barry Levine was the sole participant waiving contributions, and that records reveal "at least one other-employee" who waived Plan contributions during the period in question. That one other employee chose to "waive off" contributions to the Profit Sharing Plan is irrelevant to Mr. Levine's claim that he was deceived. Mr. Levine claims that the other Agency owners deceived him into waiving off by assuring him that they too were doing so. The balance in their accounts plainly reflects that these representations were false and they did not waive off as promised

### (3) Evidence of Misrepresentations

Webster states that it finds evidence of neither fraud nor misrepresentations made to Barry Levine by Profit Sharing Plan Administrators, and that it finds no evidence that

Moukawsher & Walsh, LLC

Charles F. Corcoran, III, Esquire
September 17, 2002
PAGE THREE

+Plan representatives told Barry Levine that he and all other similarly situated Agency owners were being asked to "waive off" required contributions. Certainly, if Webster never looked for such evidence, its failure to find any is no support for its conclusion. If Webster did look for such evidence. Levine cannot refute the evidence because Webster does not cite any evidence whatsoever in support of its contention. Levine hereby requests that you supply him with all statements and evidence upon which Webster relies for this presently unsupported conclusion.

**(4) Statute of Limitations**

Webster is mistaken when it states that Mr. Levine's claims with respect to the Profit Sharing Plan are "unreasonably late and untimely," and that the statute of limitations has run on all of Barry Levine's claims respecting the profit sharing plan. The statute of limitations has *not run* on any of Levine's claims enumerated in his June 3, 2002 claim letter. Mr. Levine's claims are based on the Plan administrators and fiduciaries' breaches of their fiduciary duties. The statute of limitations with respect to breach of fiduciary duty is covered by ERISA §413(2), which states that an action must be brought no more than three years after the date on which the plaintiff had actual knowledge of the breach or violation. As set forth in his claim letter, Mr. Levine did not have actual knowledge of a breach by fiduciaries of the Plan until February of 2002, a date which is within the three-year time limit.

Moreover, the statute of limitations dictated by ERISA for cases of fraud or concealment provides that an action may be commenced not later than six years after the date of discovery of the breach or violation. Mr. Levine learned in February of 2002, a date within the six-year time limit, that the Plan administrators' representations regarding other Agency owners' waiving of their contributions were false.

**(5) Levine's 401(k) Eligibility**

With respect to Plan administrators' misrepresentation about Levine's eligibility to participate in the 401(k) plan, Webster states that Mr. Levine was "not an employee" of the Company during the period at issue. Mr. Levine was an employee of the Levine Agency from April 1, 1975 to December 31, 1999, and continuously during these years he received a salary from the Agency. The Levine Companies Salary Savings Plan Summary Plan Description ("SPD") provides a definition of "excluded employees," who *may not* participate in the 401(k) plan. These three categories of employees are (a) leased employees; (b) those whose employment is governed by a collective bargaining agreement under which retirement benefits were the subject of good faith bargaining; and (c) certain nonresident aliens. Mr. Levine does not fall into any of these categories.

Moukawsher & Walsh, LLC
Charles F. Corcoran, III, Esquire
September 17, 2002
PAGE FOUR

Article III, Section 1, of the SPD, which Webster cites as authority for denying Levine's 401(k) eligibility, states, "You will be eligible to participate in the Plan if you have completed one (1) Year of Service and have attained age 21." When the Agency's 401(k) plan was established in August of 1996, Mr. Levine had been an employee for over twenty years, and had reached the age of 41, thus satisfying both elements of Section 1.

Webster also cites the "Service Rules" of Article VI of the SPD as support for Levine's ineligibility to participate in the 401(k) plan. Section 1 of this Article explains the process by which an employee gets "credited with" 1000 Hours of Service, the point at which one will have completed a "Year of Service," and thus be eligible to participate in the 401(k) plan. An employee "will," according to Section 2, Subsection (a), "be credited with an Hour of Service for each hour for which [he is] directly or indirectly compensated by [his] Employer for the performance of duties during the Plan Year." Under this rule, Levine would have been eligible for participation in the 401(k) plan in 1996, as long as he had been *compensated* for 1000 hours of work during the period of April 1, 1975 through March 31, 1976, his first year of service with the Agency. Because Mr. Levine was compensated for in excess of 1000 hours of work during that period, he did complete his required Year of Service, and was eligible for participation under Article VI, Sections 1 and 2.

Article VI, Section 3 addresses the "Break in Service," a concept which may affect an employee's eligibility to participate if he or she has not completed more than 500 hours of service within the first 12 months of employment. This section does not affect Mr. Levine's eligibility, since, as stated above, he completed more than 1000 hours of service during his first year with the Agency. Finally, Article VI, Section 4 concerns the Uniformed Service Employment and Reemployment Act, which addresses military service and its effect on Plan eligibility. This Section does not apply to Levine because he did not serve in the military during his employment with the Agency.

**(6) Requests for Information**

Webster states that it finds no support in 29 C.F.R. 2560.503-1(g)(1)(ii) for Levine's request that the Plan Administrator identify by name, address, telephone number and title each Plan agent, servant or employee, including retained experts who assisted with Mr. Levine's claim. This section of the Code of Federal Regulations addresses pension benefit administration and enforcement under ERISA. The part relied on by Levine provides that:

> "[T]he plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. . . . The notification shall set


Moukawsher & Walsh, LLC
Charles F. Corcoran, III, Esquire
September 17, 2002
PAGE FIVE

forth, in a manner calculated to be understood by the claimant — (ii) Reference to the specific plan provisions on which the determination is based."

Id.

Levine's Request for information is also supported by 29 C.F.R. 2560.503-1(g)(1)(iii), which, like (ii) above, describes the information which must be included in the plan administrator's notification to the claimant:

"A description of *any additional material or information* necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." [emphasis added].

Webster's refusal to provide Levine with the material and information that supports the bald conclusions in its denial letter either reflects that there is no support for those contentions or that Webster has violated the applicable regulations requiring this material or information to be described. If such information and material exists, particularly in the form of information and material gathered from witnesses, and Webster is withholding it, doing so violates ERISA and hinders Levine's attempt to perfect his claim. Only by knowing what material Webster relied upon can Levine know what additional material he should submit to rebut it. Please provide responsive information to demand numbers 5 and 7 of Levine's June 5, 2002 claim letter.

For all of the reasons set forth above, Levine appeals Webster's denial of his claim and demands a hearing as offered in the claim denial letter.

Very truly yours,

Thomas G. Moukawsher

TGM:tba
c: Barry Levine